UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR MEDICARE ADVOCACY, )
 INC.,                        )
                              )
      Plaintiff,              )
                              )
      v.                      )     Civil Action No. 05-2266 (RBW)
                              )
UNITED STATES DEPARTMENT OF   )
 HEALTH AND HUMAN SERVICES,   )
                              )
      Defendant.              )
_____)

DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendant, by its undersigned attorneys, hereby moves the
Court, pursuant to Rule 56 of the Federal Rules of Civil
Procedure, for summary judgment on the grounds that no genuine
issue of material fact exists and that defendant is entitled to
judgment as a matter of law.  In support of this motion, the
Court is respectfully referred to the Declarations of Robert
Eckert, Director of the Freedom of Information/Privacy Acts
Division, Office of the Assistant Secretary for Public Affairs,
Department of Health and Human Services (HHS), Patricia Mantoan,
Attorney, General Law Division, Office of the General Counsel,
HHS, and Ethel Burrows, Social Insurance Specialist, Office of
Public Disclosure, Social Security Administration (SSA); to the
HHS and SSA Vaughn Indexes; to the Statement of Material Facts as
to Which There Is No Genuine Issue; and to the Memorandum of
Points and Authorities in Opposition to Plaintiff's Motion for

-2-

Injunction and in Support of Defendant's Cross-Motion for Summary Judgment, all filed herewith.  A proposed order is attached.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar No. 434122)
Assistant United States Attorney


                                   _____/s/_____
Dated:  September 12, 2006    MICHAEL J. SHERMAN
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Ave., NW, Suite 11050
                              Washington, DC  20530-0001
                              (202) 616-5501

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR MEDICARE ADVOCACY, )
 INC.,                        )
                             )
      Plaintiff,             )
                             )
      v.                     )    Civil Action No. 05-2266 (RBW)
                             )
UNITED STATES DEPARTMENT OF  )
 HEALTH AND HUMAN SERVICES,  )
                             )
      Defendant.             )
_____)

STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS NO GENUINE ISSUE, PURSUANT TO LOCAL RULE 7(h)

Pursuant to Local Rule 7(h), defendant submits the following statement of material facts as to which there is no genuine issue:

1.  By letter dated August 25, 2005, plaintiff made a request to the Department of Health and Human Services (HHS), pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. III 2003), for all records pertaining to the design and establishment of Medicare administrative hearings by videoconferencing technology.  (See Declaration of Robert Eckert, Director, Freedom of Information/Privacy Acts Division, Office of the Assistant Secretary for Public Affairs, Department of Health and Human Services [hereinafter Eckert Decl.] ¶ 4 & Ex. 1.) Plaintiff further requested that defendant waive any applicable fees associated with the request (see id.), and asked that defendant process plaintiff's request on an expedited basis, (see id.).

-2-

2.  By letter dated October 3, 2005, defendant acknowledged receipt of plaintiff's request.  (See id. ¶ 5 & Ex. 2.) Defendant also requested that plaintiff provide further information concerning its request for a fee waiver so as to enable defendant to make a determination on plaintiff's request. (See id.)

3.  By letter dated October 31, 2005, plaintiff, not having received a reply from defendant to its initial request, appealed defendant's constructive denial of its request.  (See id. ¶ 6 & Ex. 3.)  In its letter, plaintiff also informed defendant that it was treating defendant's request for additional information regarding plaintiff's fee waiver request as a denial of the fee waiver, and it appealed this denial.  (See id.)

4.  By letter dated November 16, 2005, defendant acknowledged receipt of plaintiff's October 31, 2005 letter. (See id. ¶ 7 & Ex. 4.)

5.  On November 23, 2005, plaintiff commenced the instant action.

6.  By letter dated December 27, 2005, defendant informed plaintiff that its request had been referred to Robert Eckert, Director of HHS's Freedom of Information/Privacy Acts Division, Office of the Assistant Secretary for Public Affairs.  (See id. ¶ 10 & Ex. 5.)  This letter further informed plaintiff that Mr.

-3-

Eckert's office would respond both to plaintiff's request for records and to its request for a fee waiver.  (See id.)

7.  On January 18, 2006, defendant filed its Answer to plaintiff's Complaint.

8.  By letter dated January 19, 2006, defendant mailed plaintiff its first interim response to plaintiff's request. (See id. ¶ 11 & Ex. 6.)  In this letter, defendant informed plaintiff that, to date, it had reviewed thirty-seven pages of responsive records and had determined that thirty-three pages could be released in full and that an additional page could be released in part.  The remaining portion of this page was withheld pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), as were the remaining three pages of records.  (See id.)  Defendant further informed plaintiff that it had determined that of the records that it had reviewed, ten full pages and portions of an additional page contained information originating with the Social Security Administration (SSA).  (See id.) Defendant informed plaintiff that these records were being referred to another agency, the Social Security Administration, for processing and direct response to plaintiff.  (See id.) Defendant's letter also informed plaintiff that it was denying plaintiff's requests for a fee waiver and for expedited processing.  (See id.)

-4-

9.  By letter dated February 21, 2006, plaintiff again appealed this fee waiver denial.  (See id. ¶ 12 & Ex. 7.)

10.  By letter dated March 2, 2006, SSA informed plaintiff that it was withholding in full the ten full pages and one partial page referred to it by defendant, pursuant to Exemption 5 of the FOIA.  (See Declaration of Ethel Burrows, Social Insurance Specialist, Office of Public Disclosure, SSA [hereinafter Burrows Decl.] ¶ 6 & Ex. iii.)

11.  On March 8, 2006, defendant made its second interim response to plaintiff's request.  (See Eckert Decl. ¶ 13 & Ex. 8.)  In this response, defendant released 250 pages in full to plaintiff and withheld more than 7159 pages pursuant to Exemption 5 of the FOIA.  (See id.)

12.  By letter dated March 8, 2006, plaintiff appealed SSA's withholding of documents referred to it by defendant.  (See Burrows Decl. ¶ 7 & Ex. iv.)

13.  By letter dated March 20, 2006, defendant informed plaintiff that it had received plaintiff's appeal of the fee waiver denial.  (See Eckert Decl. ¶ 14 & Ex. 9.)  Defendant's letter further informed plaintiff that it had identified an additional 425 pages of responsive records that could be released to plaintiff.  When combined with the 284 pages previously released by defendant on January 19 and March 8, 2006 (see id. ¶¶ 8, 11, supra), this meant that plaintiff's fee for the

-5-

processing of its request came to $60.90, this amount being computed by charging ten cents per page after providing the initial 100 pages for free.  (<u>See</u> <u>id.</u> ¶ 14 & Ex. 9.)  Defendant stated that plaintiff would have to agree to pay applicable fees before defendant completed any further processing of the request. (<u>See</u> <u>id.</u>)

14.  By letter dated April 7, 2006, plaintiff appealed the withholdings made by defendant in its second interim release. (<u>See</u> <u>id.</u> ¶ 15 & Ex. 10.)

15.  On April 13, 2006, plaintiff filed a "Motion for Injunction," seeking release of all responsive documents, a <u>Vaughn</u> Index describing the withheld documents, a fee waiver, and attorney fees.  (<u>See</u> Pl.'s Mot. for Injunction, filed with the Court on April 13, 2006, at 1.)

16.  By letter dated April 17, 2006, SSA denied plaintiff's administrative appeal regarding its withholding of all of the documents that it had received from defendant in defendant's initial referral to SSA.  (<u>See</u> Burrows Decl. ¶ 8 & Ex. v.)

17.  By letter dated May 15, 2006, defendant denied plaintiff's administrative appeal regarding its denial of plaintiff's fee waiver request.  (<u>See</u> Eckert Decl. ¶ 16 & Ex. 11.)  This administrative appeal decision outlined the standards it uses to adjudicate fee waiver requests, including evaluating (1) whether the requested documents pertain to activities of the

-6-

federal government; (2) whether disclosure would reveal
meaningful information about government operations that is not
already public knowledge; (3) will the disclosure advance
knowledge to the public at large, as opposed to just a narrow
segment of the public; and (4) whether the contribution to public
knowledge will be significant.  (See id. ¶ 17 & Ex. 11.)  It then
explained the ways in which plaintiff failed to meet these
standards.  (See id. ¶¶ 18-21 & Ex. 11.)  Plaintiff's request
failed for numerous reasons.  (See id.)  Some of the responsive
records did not concern government operations or activities.
(See id. ¶ 18 & Ex. 11.)  It further noted that because the vast
majority of records released to plaintiff at this point were
already publicly available, plaintiff had not shown how its
further dissemination of the documents to it would provide a
significant benefit to the public.  (See id. ¶ 19 & Ex. 11.)
Finally, defendant's letter explained that because some of the
responsive records concerned mere internal HHS administrative
matters, those records likewise would not enlighten the public in
a signficant way about the operations or activities of the
government.  (See id. ¶ 20 & Ex. 11.)  Because plaintiff had
failed to satisfy factors (1), (2), and (4), as listed above, its
request for a waiver was denied.  (See id. ¶ 21 & Ex. 11.)[1]

---

[1] As defendant's letter also explained, because plaintiff
had failed to meet the public interest portion of the fee waiver
(continued...)

-7-

18.  By e-mail dated June 29, 2006, plaintiff agreed to pay applicable fees in the event that defendant's fee waiver denial was upheld by the Court.  (See id. ¶ 23. & Ex. 13.)

19.  On July 10, 2006, defendant issued a further interim release to plaintiff's request.  (See id. ¶¶ 23-24 & Ex. 13.)  In this response, defendant released in full to plaintiff 319 pages of documents.  (See id. )  Defendant withheld a portion of one page pursuant to FOIA Exemption 6.  (See id.)  It also withheld portions of two pages and ninety-nine pages in full pursuant to FOIA Exemption 5.  (See id.)  Additionally, defendant informed plaintiff that it had referred 251 pages of responsive documents that had originated with SSA to that agency for processing and direct response to plaintiff.  (See id.)  Defendant informed plaintiff that based upon this new release, plaintiff now owed $359.70 in fees.  (See id.)  Finally, this letter corrected inadvertent mistakes in the page counts associated with defendant's prior releases to plaintiff.  (See id.)

20.  On July 12, 2006, defendant completed its processing of the documents responsive to plaintiff's request.  (See id. ¶ 25 & Ex. 14.)  Defendant released ten pages in full to plaintiff and withheld 459 pages pursuant to FOIA Exemption 5.  (See id.)

---

[1](...continued)
test, it was unnecessary for defendant to evaluate whether plaintiff had any commercial interest in release of the responsive records.  (See id. ¶ 21 n.1 & Ex. 11.)

-8-

Because of the small number of additional pages released, defendant informed plaintiff that no additional fees would be charged. (See id.)

21. On July 13, 2006, SSA informed plaintiff of the results of the processing that it had undertaken of the second set of documents referred to it by defendant. (See Burrows Decl. ¶ 10 & Ex. vii.) SSA released in full to plaintiff seventy pages of documents, released in part three pages of documents, and withheld in full 178 pages of documents. (See id.) Documents were withheld from plaintiff pursuant to Exemptions 5 and 6 of the FOIA. (See id.)

22. In preparing its Vaughn Index, defendant determined that some of the records it had previously withheld from plaintiff could be released. As a result, it made three supplemental releases to plaintiff through defendant's principal counsel, with sixty-five pages released either in full or in part and some information still withheld pursuant to Exemption 5 of the FOIA. (See Eckert Decl. ¶ 30.)

23. Among the documents responsive to plaintiff's request were draft documents created by the Government Accountability Office (GAO) that were in defendant's files. (See Declaration of Patricia Mantoan, Attorney, General Law Division, Office of the General Counsel, HHS, ¶ 4.) In cover letters accompanying these documents, GAO specifically instructed defendant that these

-9-

drafts remained the property of GAO, their contents were not to be shared or released for any purposes, and that upon request all copies of the documents were to be either destroyed or returned to GAO.  (See id. & Ex. a.)

24.  Both defendant and SSA withheld documents pursuant to Exemption 5 of the FOIA based upon the deliberative process privilege.  (See Eckert Decl. ¶¶ 31-33; Burrows Decl. ¶¶ 13-14.) The withheld documents consist of drafts, proposals, recommendations, and requests for advice concerning the transfer of the Medicare appeals hearing process and the use of videoconferencing technology.  (See Eckert Decl. ¶¶ 32-33; Burrows Decl. ¶¶ 13-14.)  The documents withheld by defendant are internal HHS documents, are documents exchanged between defendant and another Executive Branch agency, or are documents exchanged between defendant and a contractor that had performed a feasibility study for defendant.  (See Eckert Decl. ¶ 32.)  The contractor was asked to provide its expert opinion on the subject of defendant's use of videoconferencing technology.  (See id.) All of the records withheld by SSA either are internal SSA documents or documents exchanged between SSA and defendant HHS. (See Burrows Decl. ¶ 12.)

25.  Defendant also withheld documents pursuant to Exemption 5 of the FOIA based upon the attorney-client privilege.  (See Eckert Decl. ¶ 34.)  The withheld documents reflect the exchange

-10-

of confidential facts between the agency-client and advice based upon these facts that was rendered by agency counsel.  (<u>See</u> <u>id.</u>)

26.  In summary, defendant released to plaintiff 1102 pages in full and four pages in part, while withholding in full 7720 pages.  SSA released to plaintiff fifty-seven pages in full, fifteen pages in part, and withheld in full 149 pages.

27.  Both defendant and SSA reviewed every page of withheld records to ascertain whether any nonexempt information could be segregated out from protected material and released to plaintiff.  (<u>See</u> Eckert Decl. ¶ 34, Burrows Decl. ¶ 11.)  In each case,

-11-

defendant and SSA determined that all nonexempt, reasonably

segregable material has been released to plaintiff.

Respectfully submitted,


_____
KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney


_____
RUDOLPH CONTRERAS
(DC Bar No. 434122)
Assistant United States Attorney


                                       _____/s/_____
Dated:  September 12, 2006             MICHAEL J. SHERMAN
                                       Attorney-Advisor
                                       Office of Information and Privacy
                                       United States Department of Justice
                                       1425 New York Ave., NW, Suite 11050
                                       Washington, DC  20530-0001
                                       (202) 616-5501

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR MEDICARE ADVOCACY, )
 INC.,                        )
                              )
     Plaintiff,               )
                              )
     v.                       )  Civil Action No. 05-2266 (RBW)
                              )
UNITED STATES DEPARTMENT OF   )
 HEALTH AND HUMAN SERVICES,   )
                              )
     Defendant.               )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION
TO PLAINTIFF'S MOTION FOR INJUNCTION AND IN
SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

     Plaintiff commenced this action on November 23, 2005, under

the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 &

Supp. III 2003), seeking the disclosure of all records pertaining

to the design and establishment of Medicare administrative

hearings by videoconferencing technology.  It subsequently filed

a "Motion for Injunction," seeking release of all responsive

records, a Vaughn Index describing the withheld records, a fee

waiver, and attorney fees.  (See Plaintiff's Motion for

Injunction, filed Apr. 13, 2006 [hereinafter Pl.'s Mot.], at 1.)

Defendant has treated this motion as a motion for summary

judgment.  (See Defendant's Unopposed Motion for Enlargement of

Time, filed Apr. 26, 2006, at 2.)

     In support of its cross-motion for summary judgment, and in

opposition to plaintiff's motion, defendant has filed herewith

the Declarations of Robert Eckert, Director of the Freedom of

-2-

Information/Privacy Acts Division, Office of the Assistant
Secretary for Public Affairs, Department of Health and Human
Services (HHS) [hereinafter Eckert Declaration], Patricia
Mantoan, Attorney, General Law Division, Office of the General
Counsel, HHS [hereinafter Mantoan Declaration], and Ethel
Burrows, Social Insurance Specialist, Office of Public Disclosure
of the Social Security Administration (SSA) [hereinafter Burrows
Declaration].  These declarations detail the chronology of the
administrative correspondence relating to plaintiff's request.
They also detail the compilation of responsive records (including
documents originating with SSA, which accordingly were referred
to that agency for processing and direct response to plaintiff);
itemize the responsive documents (i.e., both the Eckert and
Burrows declarations have accompanying Vaughn Indexes), including
the documents in which excisions were made and those that were
withheld in full (and whose withholding plaintiff continues to
challenge[1]); and explain the bases upon which records or portions
of the records at issue were withheld pursuant to Exemptions 5

_____

[1] By joint agreement between the parties, defendant
previously submitted to plaintiff a series of informal indexes
describing the withheld records.  (See Joint Statement of the
Parties Filed Pursuant to Rule 16.3(c), filed on June 12, 2006
[hereinafter Joint Statement].)  After considering these indexes,
plaintiff submitted to defendant a list of withheld records whose
withholding plaintiff no longer wished to contest.  Using this
procedure, the parties were able to effectively eliminate 110
pages from the Court's review.

-3-

and 6 of the FOIA,[2] 5 U.S.C. § 552(b)(5) and (b)(6), or for a
group of records were determined not to be agency records subject
to the FOIA.

Based upon these declarations and the entire record herein,
and for the reasons set forth below, defendant respectfully
submits that there exists no genuine issue of material fact and
that defendant is entitled to judgment as a matter of law
pursuant to Rule 56 of the Federal Rules of Civil Procedure.

<u>Factual and Procedural Background</u>

By letter dated August 25, 2005, plaintiff made a request to
defendant HHS pursuant to the FOIA for all records pertaining to
the design and establishment of Medicare administrative hearings
by videoconferencing technology. (<u>See</u> Eckert Decl. ¶ 4 & Ex. 1.)
Plaintiff further requested that defendant waive any applicable
fees associated with the request (<u>see</u> <u>id.</u>) and asked that
defendant process plaintiff's request on an expedited basis (<u>see</u>
<u>id.</u>).

By letter dated October 3, 2005, defendant informed
plaintiff that plaintiff had not provided sufficient information
in its request letter for defendant to make a judgment on
plaintiff's request for a fee waiver. (<u>See</u> <u>id.</u>)

---

[2] Both defendant and SSA invoked Exemption 6 to withhold
information from one of each of their responsive documents. (<u>See</u>
Eckert Decl. ¶ 24; Burrows Decl. ¶ 10.)  However, plaintiff does
not challenge either of these withholdings. (<u>See</u> <u>id.</u>)

-4-

By letter dated October 31, 2005, plaintiff appealed defendant's constructive denial of its request.  (See id. ¶ 6 & Ex. 6.)  In its letter, plaintiff also appealed defendant's implied denial of a fee waiver.  (See id.)  On November 23, 2005, plaintiff commenced the current action.

Defendant has made several releases of documents to plaintiff, totaling 1102 pages of documents released in full and four pages released part.  (See id. ¶¶ 11, 13, 24, 25, 30 & Exs. 6, 8, 14, 15.)  It has also withheld from plaintiff 7720 pages of records pursuant to Exemptions 5 and 6 of the FOIA.  (See id.)  Defendant also denied a fee waiver for the records released.  (See id. ¶ 16 & Ex. 11.)

In its processing of records pursuant to plaintiff's request, defendant found 221 pages of records in its files that originated with SSA.  (See id. ¶¶ 11 & 24 & Exs. 6 & 14.)  These records were referred (in two transmittals) to SSA for processing and direct response to plaintiff.  (See id.)  In response to these two referrals, SSA made two responses to plaintiff.  In the first, it informed plaintiff that it was withholding in full the entirety of the first set of referred records, totaling eleven pages, pursuant to Exemption 5 of the FOIA.  (See Burrows Decl. ¶ 6 & Ex. iii.)  In the second, it informed plaintiff that it was releasing in full fifty-seven pages of the referred records, releasing in part fifteen pages, and withholding 138 pages

-5-

pursuant to Exemptions 5 and 6.  (See id. ¶ 10 & Ex. vii.)  As
noted above, SSA has submitted a declaration and Vaughn Index
detailing its actions, describing the withheld records, and
explaining the bases for all such withholdings.

Defendant HHS also determined that 121 pages of the records
responsive to plaintiff's request were not records belonging to
an agency within the Executive Branch, but were records belonging
to the Government Accountability Office (GAO), an entity of the
Legislative Branch.  (See Mantoan Decl. ¶ 4.)  Because these
records were specifically marked as being the property of GAO,
over which it retained control, and not being under the control
of defendant or any other Executive Branch agency, defendant
determined that these were not "agency records" subject to the
FOIA.  (See Mantoan Decl. ¶¶ 4-5 & Ex. a.)

On January 19, 2006, defendant filed its Answer to
plaintiff's Complaint.  On April 13, 2006, plaintiff filed its
"Motion for Injunction."

On June 12, 2006, plaintiff and defendant filed a joint
statement pursuant to Local Rule 16.3.  This statement set out a
proposed schedule to govern subsequent proceedings for this
action.  (See Joint Statement, at 2-3.)  By the terms of this
agreement, plaintiff committed to pay the fees associated with
its initial request while reserving the right to maintain its
request for a fee waiver.  (See id. at 2.)  Defendant agreed to

-6-

provide plaintiff with an informal index of the withheld records
(though it was established that this would not constitute
defendant's Vaughn Index) in an attempt to narrow the scope of
records at issue in this litigation.  (See id.)  In fulfilling
its obligations under the Joint Agreement, defendant provided
plaintiff with a total of three indexes.  (See Eckert Decl.
¶ 26.)  When sending plaintiff the second and third of these
indices, defendant also sent plaintiff additional records that it
had determined could be released to plaintiff, and it later made
a third such supplemental release to plaintiff.  (See id. ¶ 30.)
In response to these indexes, plaintiff identified a small number
of records whose withholding it no longer wished to challenge.
Defendant completed its processing of plaintiff's request on July
12, 2006.  (See id. ¶ 25.)

    In sum, defendant has released to plaintiff 1102 pages of
records in full and four pages in part, while withholding 7720
pages pursuant to Exemption 5 and (without challenge) Exemption 6
of the FOIA.  SSA has released to plaintiff a total of fifty-
seven pages in full and fifteen pages in part, while withholding
in full 149 pages pursuant to Exemption 5 and (without challenge)
Exemption 6.[3]  Defendant has assessed plaintiff a total of
$420.60 in applicable fees for the copying of records that it has

_____

    [3] As noted above, the withholdings made pursuant to
Exemption 6 are no longer at issue.

-7-

released to plaintiff, as well as for search time expended in
locating responsive records.  (<u>See</u> <u>id.</u> ¶ 14 & Exs. 9 & 13.)  Both
defendant HHS and SSA have withheld records from plaintiff under
Exemption 5 pursuant to the deliberative process privilege.
Defendant also has withheld records (a subset of the above)
pursuant to the attorney-client privilege.  Defendant denied
plaintiff's request for a fee waiver, determining that plaintiff
had failed to satisfy the applicable standard governing the
granting of fee waivers.  Finally, defendant determined that the
GAO records it located in its files were not "agency records"
subject to the FOIA.

<u>Argument</u>

SUMMARY JUDGMENT FOR DEFENDANT IS PROPER INASMUCH AS
NO INFORMATION HAS BEEN IMPROPERLY WITHHELD FROM
<u>PLAINTIFF AND BECAUSE PLAINTIFF IS NOT ENTITLED TO A FEE WAIVER</u>

Defendant's declarations, in conjunction with that submitted
by SSA, fully respond to plaintiff's claims in this action and,
in accordance with the statutory requirements of the FOIA and the
requirements of <u>Vaughn v. Rosen</u>, 484 F.2d 820, 827 (D.C. Cir.
1973), contain complete descriptions of, and justifications for,
all of the information withheld by defendant HHS and SSA pursuant
to Exemption 5 of the FOIA.  As defendant will demonstrate below,
the invocation of this exemption is entirely justified under the
law.  Defendant also will demonstrate that plaintiff has not

-8-

established an entitlement to a waiver of applicable fees.[4]
Finally, defendant will show that it properly treated the GAO
records as not subject to the FOIA as a threshold jurisdictional
matter.

> I. **Pursuant to 5 U.S.C. § 552(b)(5),
> HHS and SSA Have Properly Withheld
> Information Protected From
> Disclosure by the Deliberative
> Process and Attorney-Client Privileges**

Exemption 5 of the FOIA protects from mandatory disclosure
"inter-agency or intra-agency memorandums or letters which would
not be available by law to a party . . . in litigation with the
agency." 5 U.S.C. § 552(b)(5). The courts have interpreted
Exemption 5 as covering all records that would normally be
privileged in civil discovery, see, e.g., NLRB v. Sears, Roebuck
& Co., 421 U.S. 132, 149 (1975), including those covered by the
deliberative process privilege, see, e.g., Wolfe v. HHS, 839 F.2d
768, 773 (D.C. Cir. 1988) (en banc), and the attorney-client
privilege, see, e.g., Sears, 421 U.S. at 154; Mead Data Central,

---

[4] In its "Motion for Injunction," plaintiff alleged both
that defendant's use of FOIA exemptions was improper and that
defendant had failed to timely respond to plaintiff's FOIA
request and its accompanying request for a fee waiver. (See
Pl.'s Mot. at 2-10.) It asked for release of all responsive
records, a fee waiver, and attorney fees. (See Pl.'s Proposed
Order, filed on Apr. 13, 2006, at 1.) Plaintiff's allegations
regarding defendant's use of FOIA exemptions and its denial of
plaintiff's request for a fee waiver are addressed below.
Because defendant has now fully responded to plaintiff's request
for records and its request for a fee waiver, plaintiff's
allegations regarding defendant's failure to respond are moot.

-9-

Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 253 (D.C. Cir. 1977).

In the instant case, all of SSA's withholdings that plaintiff is challenging were made pursuant to Exemption 5, applying the deliberative process privilege.  (See Burrows Decl. ¶ 14.)  As well, all of defendant HHS's withholdings that plaintiff is challenging were made pursuant to the deliberative process privilege.  (See Eckert Decl. ¶ 32.)  In addition, most of the documents withheld by defendant HHS contain information withheld under the attorney-client privilege as well.  (See id. ¶ 34.)

All of the records withheld by SSA either are internal SSA documents or documents exchanged between SSA and defendant HHS. (See Burrows Decl. ¶ 12.)  The documents withheld by defendant are internal HHS documents, are documents exchanged between defendant and another Executive Branch agency, or are documents exchanged between defendant and a contractor that had performed a feasibility study for defendant.  (See Eckert Decl. ¶ 32.)

A.  All the Withheld Documents Meet
Exemption 5's Threshold Requirement

The threshold requirement under Exemption 5 is that records be "inter-agency or intra-agency memorandums."  As stated above, the withheld documents fall into three categories:  intra-agency documents, inter-agency documents, and documents exchanged between defendant and a private contractor.  As to the first two

-10-

categories, records created by a government agency and circulated within that agency, or between that agency and other agencies, mainifestly meet this threshold requirement.  See, e.g., Ryan v. U.S. Dep't of Justice, 617 F.2d 781, 790 (D.C. Cir. 1980).

The last category of documents, those exchanged between defendant and a private contractor, meet this threshold requirement here as well.  These records were exchanged between defendant and a private contractor in the course of the contractor's performance of a feasibility study for defendant. (See Eckert Decl. ¶ 32.)  The contractor was asked to provide defendant with its expert opinion on the subject of defendant's use of videoconferencing technology.  (See id.)

Under applicable case law, it is well established that certain records exchanged between an agency and an outside party can readily meet the threshold requirements of the Exemption 5 threshold.  As the Court of Appeals for this Circuit has noted, "Congress apparently did not intend 'inter-agency or intra-agency' to be rigidly exclusive terms."  Ryan, 617 F.2d at 790. This flexible approach is due largely to the fact that on occasion agencies, in the performance of their duties, have "a special need for the opinions and recommendations of temporary consultants."  Soucie v. David, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971); see also, e.g., Hoover v. U.S. Dep't of the Interior, 611 F.2d 1132, 1138 (5th Cir. 1980); Wu v. Nat'l Endowment for

-11-

the Humanities, 460 F.2d 1030, 1032 (5th Cir. 1972).
Contractors, such as the one involved here, fall within this
category.  See, e.g., Citizens Progressive Alliance v. U.S.
Bureau of Indian Affairs, 241 F. Supp. 2d 1342, 1355 (D.N.M
2002).

    To be sure, in Department of the Interior v. Klamath Water
Users Protective Ass'n, the Supreme Court ruled that an outside
party could not qualify as a "consultant" under the Exemption 5
threshold if the outside party was seeking a government benefit
at the expense of other parties.  See Klamath, 532 U.S. 1, 12
(2001).  Here, however, the contractor is not such an interested
party.  Instead, the contractor "was relied on solely for the
purposes of providing its expert opinion" and "was not soliciting
additional government business, nor was it seeking a government
benefit at the expense of other parties."  (Eckert Decl. ¶ 32.)
Indeed, the contractor in this case was simply providing its
neutral, expert advice in order to aid the agency's
decisionmaking.  (See id.)  See also Formaldehyde Institute v.
HHS, 889 F.2d 1118, 1123-24 (D.C. Cir. 1989).  This is precisely
the sort of outside consultant that has been included under the
flexible approach to the Exemption 5 threshold traditionally
taken by courts in this and other circuits in cases such as Ryan,
Hoover, Formaldehyde Institute, and Wu.

-12-

### B. HHS and SSA Properly Withheld Documents Under Exemption 5 Pursuant to the Deliberative Process Privilege

The deliberative process privilege protects the government's internal decisionmaking process by preserving the confidentiality of opinions, recommendations, and deliberations underlying government decisions and policies. See Jordan v. Dep't of Justice, 591 F.2d 753, 772 (D.C. Cir. 1978) (en banc). The purpose of Exemption 5's deliberative process privilege is to "prevent injury to the quality of agency decisions," Sears, 421 U.S. at 150-51, by encouraging agency employees to express their opinions frankly, without any inhibiting fear of publicity, see Bureau of Nat'l Affairs, Inc. v. Dep't of Justice, 742 F.2d 1484, 1497 (D.C. Cir. 1984). Thus, "[t]he privilege . . . covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

For information to be withheld properly pursuant to the deliberative process privilege under Exemption 5, the communications must be both "predecisional," (i.e., "antecedent to the adoption of an agency policy," Jordan, 591 F.2d at 774), and "deliberative" (i.e., "recommend[ing] or express[ing] opinions on legal or policy matters," Vaughn v. Rosen, 523 F.2d 1136, 1143-44 (D.C. Cir. 1975)). The documents withheld under

-13-

Exemption 5 in this case satisfy both of these requirements, as is made clear by the <u>Vaughn</u> Indexes and declarations.

As to the first part of this standard, the withheld documents were created while defendant HHS and SSA were engaged in the process of reaching final decisions on issues related to the subject of plaintiff's request, the use of videoconferencing in Medicare hearing appeals, and the related issue of the transfer of responsibility for these appeals from SSA to HHS. (<u>See</u> Eckert Decl. ¶¶ 32-33; Burrows Decl. ¶ 13.)  The declarations and <u>Vaughn</u> Indexes clearly attest to the fact that the withheld materials reflect discussions that took place prior to the final agency decisions on these issues.  (<u>See</u> <u>id.</u>)  As a further indication of the predecisional nature of the withheld documents, it should be noted that both agencies have either published (independent of plaintiff's FOIA request) or released to plaintiff documents that reflect these final agency decisions. (<u>See</u> Eckert Decl. ¶ 32; Burrows Decl. ¶ 15.)

As to the second element of protection under the deliberative process privilege, defendant and SSA both satisfy the requirement that the withheld documents must be deliberative in nature.  These deliberative documents in this case can be broken down into multiple categories.

As both the Eckert and Burrows Declarations and their accompanying <u>Vaughn</u> Indexes specify, a large portion of the

-14-

withheld documents consist of drafts of documents. (<u>See</u> Eckert
Decl. ¶ 32; Burrows Decl. ¶ 14.)  In the words of declarant
Eckert, "[t]he drafts at issue contained the authors'
recommendations about what the final documents should say."
(Eckert Decl. ¶ 32.)  As this Court has noted, "[d]rafts and
comments on drafts are squarely within the scope of Exemption 5."
<u>Judicial Watch, Inc. v. U.S. Dep't of Commerce</u>, 337 F. Supp. 2d
146, 174 (D.D.C. 2004) (internal citation omitted).  In further
fleshing out the contours of this privilege, the Court of Appeals
for this Circuit has explained that "[d]ocuments which are
protected by the privilege are those which would inaccurately
reflect or prematurely disclose the views of the agency,
suggesting as agency position that which is as yet only a
personal position." <u>Coastal States Gas Corp.</u>, 617 F.2d at 866.
Clearly, draft documents -- which by their very nature are
preliminary and represent, in the words of Mr. Eckert, "the
authors' recommendations about what the final document should
say" (<u>see</u> Eckert Decl. ¶ 32) -- meet the standard elucidated in
<u>Coastal States</u> and its progeny.[5]  <u>See, e.g.</u>, <u>City of Va. Beach v.
U.S. Dep't of Commerce</u>, 995 F.2d 1247, 1255 (4th Cir. 1993); <u>Town</u>

_____

    [5] This can change, of course, if a draft document itself
becomes a final statement of agency policy, is incorporated by
reference by the agency as the basis for a final policy, or comes
to be adopted by the agency as a statement of final agency
policy.  <u>See, e.g.</u>, <u>Nat'l Council of La Raza v. U.S. Dep't of
Justice</u>, 411 F.3d 350, 358 (2d Cir. 2005).  But that has not
occurred here.

-15-

of Norfolk v. U.S. Corps of Eng'rs, 968 F.2d 1438, 1458 (1st Cir.
1992).

In addition to the draft documents withheld by defendant and
by SSA, other documents were withheld in full or in part because
they contained recommendations related to the topic of transfer
of SSA's Medicare appeals function to HHS.  (See id. ¶ 33;
Burrows Decl. ¶ 13.)  Once again, such documents are precisely
the sorts of documents meant to be protected by Exemption 5
through the deliberative process privilege.  As the Supreme Court
has written, the privilege applies to documents which "reflect[]
advisory opinions, recommendations and deliberations comprising
part of a process by which governmental decisions and policies
are formulated."  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 150
(1975) (internal citation omitted).  The documents withheld by
both defendant HHS and SSA fit this description.  They "contain
deliberative information, including advice, recommendations,
suggestions opinions, and analysis about the proposed transfer of
the Medicare appeals function" (Eckert Decl. ¶ 33); they also
reflect "a great deal of back and forth amongst SSA employees"
(Burrows Decl. ¶ 13).  Thus, the withheld documents are the very
definition of "deliberative."

In explaining why it is necessary to protect documents of
this nature from release, the Court of Appeals in Coastal States
noted their release would "stifle honest and frank communication

-16-

within the agency."  617 F.2d at 686.  As the Eckert Declaration

further explains, "[c]oncern by an agency employee that his or

her views and analyses would be publicly disseminated would

result in a more timid, and hence less effective, performance of

his or her duties.  These effects would damage the decsion-making

process by stifling and chilling such exchanges."  (Eckert Decl.

¶ 33.)  The Burrows Declaration attests to similar harms:  "If

agency employees fear that their opinions, recommendations and

advice will be publicly disclosed, they will be unwilling to

speak freely, resulting in a less effective performance of their

duties.  This will certainly damage the agency's decision-making

process."  (Burrows Decl. ¶ 14.)

Because the documents withheld by defendant and SSA were

inter- or intra-agency documents that contained deliberative,

predecisional communications, they qualify for protection under

Exemption 5 of the FOIA.  As such, the decision to withhold these

documents from plaintiff was entirely appropriate.

C.  HHS Properly Withheld
    Information Under Exemption 5 Also
    Pursuant to the Attorney-Client Privilege

Among the other discovery privileges incorporated by

Exemption 5 of the FOIA is the attorney-client privilege.  The

attorney-client privilege permits the denial of access to

"confidential communications between an attorney and his client

relating to a legal matter for which the client has sought

-17-

professional advice." Mead Data Cent., Inc. 566 F.2d at 252.

This privilege exists because "sound legal advice or advocacy

serves public ends and . . . such advice or advocacy depends upon

the lawyer's being fully informed by the client." Upjohn Co. v.

United States, 449 U.S. 383, 389 (1981).  The privilege extends

not only to facts supplied by the client to an attorney, but the

attorney's advice to the client that is reflective of those

facts.  See, e.g., id. at 390 (explaining that privilege protects

information supplied to attorney in order for attorney to provide

"sound and informed advice"); Schlefer v. United States, 702 F.2d

233, 244 n.26 (D.C. Cir. 1983) (noting that privilege protects

attorney's advice in order to protect secrecy of underlying

facts); Hollar v. IRS, No. 95-1882, 1997 WL 732542, at *3 (D.D.C.

Aug. 7, 1997) ("The attorney-client privilege encompasses

information from a client to his or her attorney and advice from

an attorney to a client which reflects that information").[6]

The documents withheld here under the attorney-client

privilege, a subset of those withheld under the deliberative

process privilege, consist of communications between agency

_____

[6] When the client is an agency, as is frequently the case in
the FOIA context, the attorney-client privilege extends to
communications between attorneys and all employees of the
organization who are involved in the process of providing
information to agency counsel and seeking advice based upon that
information.  See Upjohn, 449 U.S. at 392-97 (outlining contours
of privilege); Mead Data, 566 F.2d at 253 n.24; Alexander v. FBI,
198 F.R.D. 306, 314 (D.D.C. 2000) (citing Upjohn).

-18-

employees and agency counsel.  (<u>See</u> Eckert Decl. ¶ 34.)  These
documents clearly meet the standards of the attorney-client
privilege because they contain confidential information regarding
the proposed transfer of the Medicare appeals function from SSA
to HHS and the proposed use of videoconferencing technology
supplied by the agency-client and/or advice from agency counsel
in light of this confidential information.  (<u>See</u> Eckert Decl.
¶ 34.)  Where such exchanges of confidential information and
advice based upon this information between the agency-client and
its counsel occurred (<u>see</u> <u>id.</u> & Ex. 16[7]), defendant appropriately
withheld these documents pursuant to the attorney-client
privilege.

> II.  Plaintiff Has Not Established That Its
> <u>Request Meets the Criteria for a Fee Waiver</u>

Under the FOIA, fee waivers will be granted to requesters
where "disclosure of the information is in the public interest
because it is likely to contribute significantly to public
understanding of the operations or activities of the government
and is not primarily in the commercial interest of the
requester."  5 U.S.C. § 552(a)(4)(A)(iii).  In applying this

---

[7] Exhibit 16 to the Eckert Declaration is defendant's <u>Vaughn</u>
Index.  (<u>See</u> <u>id.</u> ¶ 26.)  Its entries detail the documents for
which defendant invoked the attorney-client privilege, i.e.,
document numbers 1-2, 4-5, 7-12, 19-36, 38, 40-41, 47-51, 53-60,
62-71, 74-77, 82-86, 88-89, 91, 93, 95-103, 107-108, 111-112,
114-125, 127-129, 132-144, 146-170, 174-185, 188-209, 211-225,
231-232, 235, 239-240, 243, and 258.  (<u>See</u> <u>id.</u> ¶ 34.)

-19-

standard, this Court determines de novo the issue of whether plaintiff is entitled to a fee waiver. See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1311 (D.C. Cir. 2003). The burden is on the requester of such a waiver, however, to demonstrate that it is entitled to one. See, e.g., Larson v. CIA, 843 F.2d 1481, 1483 (D.C. Cir. 1988); Casad v. HHS, No. 01-1911, 2003 U.S. Dist. LEXIS 13007, at *20 (D.D.C. June 20, 2003); Schrecker v. Dep't of Justice, 970 F. Supp. 49, 50 (D.D.C. 1997). The Court's review, moreover, is limited to the administrative record that is before the agency at the time of its decision. See 5 U.S.C. § 552(a)(4)(A)(vii); Judicial Watch, 326 F.3d at 1311; Larson, 843 F.2d at 1483.

The administrative record in this instance consists of plaintiff's October 31, 2005 letter outlining its claim to meet the applicable standard for a fee waiver, as well as defendant's May 15, 2006 letter upholding defendant's initial denial of a fee waiver.[8] Because the section of plaintiff's October 31, 2005 letter which addresses its fee waiver claim is brief, defendant reprints it here in full for ease of reference:

> The Center for Medicare Advocacy, Inc., is a well known
> not-for-profit organization that educates and advocates

---

[8] By letter dated February 17, 2006, plaintiff filed an administrative appeal of defendant's fee waiver denial. (See Eckert Decl. ¶ 12 & Ex. 7.) This letter added no new justification for plaintiff's initial request for a waiver; instead it simply quoted the language from the October 31, 2005 letter printed below. (See id.)

-20-

> on behalf of Medicare beneficiaries nationwide.  In
> carrying out our mission we prepare materials and
> provide trainings for Medicare beneficiaries, advocates
> and attorneys, comment on proposed Medicare legislation
> and regulations, represent beneficiaries in the
> administrative appeals process, and bring individual
> and class action lawsuits on behalf of beneficiaries.
> We clearly meet the standard for waiver of fees set out
> at 45 C.F.R. Subpart D. § 5.45 because we will use the
> information requested concerning VTC hearings to
> further the interests of Medicare beneficiaries and
> their advocates who will be required to use the new
> hearing process.  The Center For Medicare Advocacy,
> Inc. has no commercial interest in the requested
> documents.

(Eckert Decl. ¶ 6 Ex. 3.)

As defendant explained to plaintiff in its May 15, 2006 letter, defendant may waive or reduce fees under the statute if two conditions are met:  (1) release of the documents is "likely to contribute significantly to public understanding of the operations of the government"; and (2) release of the documents is not primarily in the commercial interest of the requester. (See id. ¶ 17 & Ex. 11.)

In evaluating the first part of this test, referred to as the "public interest" requirement,[9] defendant considers four factors:

1.    Do the records in question pertain to the operations or
      activities of the federal government?

---

[9] See 5 U.S.C. § 552(a)(4)(A)(iii).

-21-

2.   Would release reveal meaningful information about government
     operations or activities? Will it reveal information that is
     not already public knowledge?

3.   Will disclosure advance such understanding to the general
     public, or to a narrow segment of interested parties?

4.   Will any contribution to public understanding of government
     operations be significant, and if so, will it be greater as
     a result of the disclosure?

45 C.F.R. § 5.45 (2006).

     As defendant noted in its May 15, 2006 letter to plaintiff,
plaintiff's fee waiver justification failed on multiple grounds.
Chiefly, plaintiff failed to meet factors 1, 2, and 4 of the
test.  (See Eckert Decl. ¶¶ 16-21 & Ex. 11.)

     As to the first factor, many of the records released by
defendant while responsive, do not, in fact, describe federal
government activity, but instead are brochures and pamphlets
submitted by private parties seeking to do business with the
federal government.  (See id. ¶ 18 & Ex. 11.)  As this Court has
ruled in analogous circumstances, this is insufficient.  See,
e.g., Judicial Watch, Inc. v. Reno, No. 00-0723, 2001 WL 1902811,
at *10 (D.D.C. Mar. 30, 2001) (upholding agency's denial of fee
waiver for reproduction of letters written by members of general
public concerning Elian Gonzales; while agency's response to

-22-

these letters would enlighten public as to activities of federal government, letters themselves do not do this).

As to the second and fourth portions of the fee waiver test, as defendant's May 15, 2006 letter pointed out, a substantial portion of the released records -- over 90% of what had been released -- consists of materials already readily available on the Internet or in the <u>Federal Register</u>.  (<u>See</u> <u>id.</u> ¶ 19 & Ex. 11.)  In a comparable case in this Circuit, the Court of Appeals denied a blanket fee waiver request to a FOIA plaintiff where the plaintiff could not counter the agency's determination that the records released to plaintiff were already publicly available and hence were unlikely to contribute significantly to the public's understanding of government operations.  <u>See</u> <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 365 F.3d 1108, 1126-27 (D.C. Cir. 2004).

This point is particularly pertinent here.  In a recent case where this Court granted a plaintiff's request for a fee waiver, it rejected the government's contention that the records in question were publicly available because of concern that the records were so diffuse (located, as they were, in all of the federal district courts) and in some cases difficult to locate (because of varying levels of computer sophistication in some district courts) as to belie the government's claim of public availability.  <u>See</u> <u>Prison Legal News v. Lappin</u>, 436 F. Supp. 2d 17, 24-25 (D.D.C. 2006).

-23-

The facts here are very different from those that concerned this Court in Prison Legal News, however, which further demonstrates the correctness of defendant's decision.  In this case, the publicly available records (which, as noted above, constitute the vast majority of records involved in this case) are not diffuse or hard to find.  (See Eckert Decl. ¶ 19 & Ex. 11.)  Rather, they are available through several Internet sites as well as the Federal Register.  (See id.)  Indeed, defendant's May 15, 2006 fee waiver decision letter even lists the Internet addresses where the documents can be located.  (See id.)  Not only are the records not diffuse or hard to locate, defendant has told plaintiff exactly where to find them.  (See id.)  Thus, unlike in Prison Legal News, plaintiff cannot claim that it will serve any public benefit by gathering the materials from a wide body of locations and grouping them in an easily available format, such as its Web site.  The government has already done this.

Finally, defendant's May 15, 2006 letter establishes that some of the responsive records, though technically responsive to plaintiff's request, contained no substantive connection to the overall subject of plaintiff's request, and instead dealt with mere administrative matters of no significance to the underlying subject of plaintiff's request.  (See Eckert Decl. ¶ 20 & Ex. 11.)  For example, one document in this category was an internal

-24-

HHS note which addressed the use of a government purchasing card
to secure videoconferencing sites.  (See id.)  Even if records
concerning the use of videoconferencing technology and the
transfer of the Medicare appeals process were found to meet this
standard, the releaseable portions of those records are
nonetheless sufficiently trivial so as to not meet this public
interest test.  Because release of these documents will not
reveal meaningful information about government activities, nor
will their release contribute significantly to public
understanding of government operations, as defendant found in the
administrative record (see id.), plaintiff also fails to satisfy
the second and fourth factors of the aforementioned fee waiver
test.

     In sum, it is clear that plaintiff's request for a fee
waiver, as laid out in the administrative record before the
Court, suffers from several critical flaws:  many of the
responsive records do not pertain to operations or activities of
the federal government, and many of those that do are already
publicly and readily available, meaning that their further
release by defendant (or any other government agency) will not
significantly add to the public's knowledge of government
activities, or are of a sufficiently trivial nature so as to not
meet the "public interest" test.  Because of these multiple

-25-

flaws, plaintiff's request for a fee waiver was properly
denied.[10]

     III.  <u>The GAO Documents Are Not Subject to the FOIA</u>

     The FOIA requires that an agency make "agency records"
available to the public upon request.  <u>See</u> 5 U.S.C.
§ 552(a)(3)(A).  As an arm of Congress, GAO records are
congressional records.  Because GAO is an agent of Congress, by
definition its records are not "agency records" for purposes of
this provision.  <u>See</u> 5 U.S.C. § 551(1)(A); 5 U.S.C. § 552(f)(1)-
(2).  It is well established that congressional records are not
subject to the FOIA.  <u>See, e.g.</u>, <u>United We Stand America v. IRS</u>,
359 F.3d 595, 597 (D.C. Cir. 2004), <u>Goland v. CIA</u>, 607 F.2d 339,
346 (D.C. Cir. 1978).  While the records in question were located
in defendant's files at the time of plaintiff's FOIA request, it
is also true that an agency's mere possession of a congressional
record does not automatically transform the record from a
congressional record to an agency record.  <u>See id.</u> at 346-47;
<u>Wash. Post Co. v. U.S. Dep't of Defense</u>, 766 F. Supp. 1, 16
(D.D.C. 1991).

     In determining whether congressional records in agency files
have become agency records, courts consider "whether under all
the facts of the case the document has passed from the control of

----

[10] Because plaintiff has failed to meet the first part of the
two-part fee waiver test, it was unnecessary to address the
commercial interest prong of the test.

-26-

Congress and become property subject to the free disposition of the agency with which the document resides." Goland, 607 F.2d at 347; see also Lykins v. U.S. Dep't of Justice, 725 F.2d 1455, 1459 (D.C. Cir. 1984) (citing Goland standard); Wash. Post Co., 766 F. Supp. at 16-17 (same). The Court of Appeals for this Circuit has also made clear that courts should consider whether there are sufficient indicia of congressional intent to maintain control of the records at issue. See United We Stand America, 359 F.3d at 600; Holy Spirit Ass'n v. CIA, 636 F.2d 838, 841 (D.C. Cir. 1980).

In this case, it could not be more clear that the GAO documents were not "subject to the free disposition" of defendant and that GAO intended to retain control of the draft documents it transmitted to defendant. The cover letters accompanying the transmissions of documents from GAO to HHS state explicitly that "[a]ll drafts remain the property of GAO." (Mantoan Decl. ¶ 5 & Ex. a.) These cover letters further instruct defendant not to release the contents of the transmissions for any purposes and also indicate that, upon GAO's request, all electronic copies of the transmitted drafts must be destroyed and all hard copies returned to GAO, thereby manifesting a clear intent by GAO "to control" the records in question. Holy Spirit Ass'n, 636 F.2d at 841; Goland, 607 F.2d at 347-48. (See Mantoan Decl. ¶ 5 & Ex. a.) Thus, it is beyond any reasonable dispute that GAO intended

-27-

to maintain control of the records, meaning that defendant lacked the necessary "free disposition" with regard to the documents in question to transform them into "agency records" subject to the FOIA as a threshold matter.  Instead, they remained congressional records, and hence were properly treated as not subject to the requirements of the FOIA when HHS identified them in responding to plaintiff's FOIA request but appropriately did not release them to plaintiff.

-28-

<u>Conclusion</u>

For the foregoing reasons, and based upon the entire record herein,[11] defendants respectfully request that their motion for summary judgment be granted and that plaintiff's motion be denied.

Respectfully submitted,

_____

KENNETH L. WAINSTEIN
(DC Bar #451058)
United States Attorney

_____

RUDOLPH CONTRERAS
(DC Bar No. 434122)
Assistant United States Attorney

/s/
_____

Dated:   September 12, 2006      MICHAEL J. SHERMAN
Attorney-Advisor
Office of Information and Privacy
United States Department of Justice
1425 New York Ave., NW, Suite 11050
Washington, DC  20530-0001
(202) 616-5501

_____

   [11] Lastly, the FOIA requires that if a record contains information that is exempt from disclosure, any reasonably segregable information must be disclosed after deleting the exempt information.  <u>See</u> 5 U.S.C. § 552(b).  Defendant HHS and SSA reviewed each page of the relevant documents to be sure that no reasonably segregable, nonexempt material was withheld (<u>see</u> Eckert Decl ¶ 34; Burrows Decl. ¶ 11), and each determined that all nonexempt, reasonably segregable material has been released to plaintiff.  (<u>See</u> <u>id.</u>)