UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR MEDICARE ADVOCACY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2266 |
| ) | |
| UNITED STATES DEPARTMENT OF ) | |
| HEALTH AND HUMAN SERVICES, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## DECLARATION OF ROBERT ECKERT

I, Robert Eckert, declare as follows:

1. I am the Director of the Freedom of Information/Privacy Acts Division, Office of the

Assistant Secretary for Public Affairs, Department of Health and Human Services (HHS or the

Department). In this capacity, I am the Freedom of Information Officer for the Department.

2. My duties include responding to requests under the Freedom of Information Act

(FOIA) for records of the Department's Office of the Secretary and for records of more than one

of the Department's primary operating components. My duties include determining whether to

release or withhold records or portions of records in accordance with the FOIA and the HHS

regulations implementing the FOIA.

3. I make this declaration based upon my personal knowledge and information available

to me in my official capacity.

4. The Centers for Medicare & Medicaid Services (CMS) Freedom of Information Group

received a FOIA request from Sally Hart, on behalf of the Center for Medicare Advocacy, Inc.,

dated August 25, 2005. CMS is a primary operating component of HHS and has its own FOIA

Office.  The request sought "[a]ll articles, reports, studies, memoranda, letters and writings of any kind concerning videoconferencing (VTC) that have been or are being reviewed and/or used in designing and/or establishing the Medicare administrative law judge hearings by VTC that are described at 42 C.F.R. § 405.1036 et seq." See Ex. 1.

5.  By letter dated October 3, 2005, the CMS Freedom of Information Group acknowledged receipt of the FOIA request.  The letter also requested additional information from plaintiff, regarding plaintiff's request for a waiver or reduction of FOIA processing fees.  See Ex. 2.

6.  By letter dated October 31, 2005, plaintiff appealed based upon the fact that CMS had not yet responded to the request and appealed the denial of the fee waiver request.  See Ex. 3.  It should be noted that the October 3, 2005 letter from CMS did not deny the fee waiver but sought additional information in order for defendant to make a determination about the fee waiver.

7.  By letter dated, November 16, 2005, the CMS Freedom of Information Group acknowledged receipt of the October 31, 2005 appeal.  See Ex. 4.

8.  I understand that plaintiff filed the above-captioned litigation on November 23, 2005.

9.  Because it was determined that some of the responsive records to this request might be located in the Office of the Secretary, the CMS Freedom of Information Group referred the FOIA request to my office in December 2005 to complete processing of this request.

10.  By letter dated, December 27, 2005, the CMS Freedom of Information Group informed plaintiff that the FOIA request and responsive CMS records had been forwarded to my office for disposition.  The letter also provided that my office would respond to the fee waiver request.  See Ex. 5.

11. By letter dated January 19, 2006, I issued an interim response to the FOIA request.
The letter informed plaintiff that we released 33 pages in full or in part and withheld three pages
and a portion of one page under FOIA Exemption 5's deliberative process privilege and attorney-
client privilege. We also referred ten full pages and a portion of one page to the Social Security
Administration (SSA) because the pages originated with that agency, and it is the Department's
policy to refer records originating in a federal agency, outside of HHS, to that agency for a
release determination and a direct response to plaintiff. We denied the request for expedited
processing because it did not satisfy the criteria in 5 U.S.C. § 552(a)(6)(E)(v). We also denied
the fee waiver request because the criteria for a fee waiver in the Department's FOIA regulations
at 45 C.F.R. § 5.45 had not been met. See Ex. 6.

12. We received a letter dated February 21, 2006 from Patricia Nemore of the Center for
Medicare Advocacy, Inc., appealing the fee waiver denial. See Ex. 7.

13. By letter dated March 8, 2006, I issued a second interim response to the FOIA
request. The letter informed plaintiff that we released approximately 250 pages and withheld
over 7000 pages in full because the withheld documents consisted of draft regulations, draft staff
manuals, and other draft documents submitted to agency attorneys by their agency client for legal
comments or advice. Accordingly, we invoked Exemption 5's deliberative process privilege and
attorney-client privilege to withhold those materials. See Ex. 8.

14. We sent plaintiff a letter dated March 20, 2006, informing it that we received the
FOIA appeal of the fee waiver denial. We informed plaintiff that we had identified an additional
425 pages of responsive records to be released to plaintiff. When combined with the 284 pages
previously released, this meant that plaintiff's fee for the processing of its request came to

3

$60.90, this amount being computed by charging ten cents per page after providing the initial 100 pages for free.  We further informed plaintiff that since we estimated that the FOIA processing fees would exceed our Department's $25.00 minimum threshold amount for billing, we were requesting that plaintiff agree to pay the fees before we completed processing the request.  See Ex. 9.

15.  By letter dated April 7, 2006, plaintiff appealed the agency's Exemption 5 withholdings from the agency's March 8, 2006 interim response.  See Ex. 10.

16.  By letter dated May 15, 2006, the Department issued a decision on the appeals, described in Paragraphs 6, 12, and 15, above.  The appeal decision disposed of the "failure to respond" challenge in plaintiff's October 31, 2005 appeal to CMS as moot, because the Department had released the non-exempt responsive CMS records in its January 19, 2006 interim response.  The appeal decision did not take further action on the April 7, 2006 appeal of the Exemption 5 withholdings because that issue was now the subject of the pending FOIA litigation in this Court and would be resolved through the litigation.  Finally, the appeal decision upheld the denial of the fee waiver and provided an explanation of the reasoning.  See Ex.11.

17.  The appeal decision explained that it is the policy of this Department to waive or reduce fees if disclosure of the information meets both the following tests:  (1) it is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government; and (2) it is not primarily in the commercial interest of the requester.  In analyzing the public interest, the decision considered the following factors:

(1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?

4

(2) Would disclosure of the records reveal meaningful information about government

operations or activities?  Can one learn from these records anything about such operations

that is not already public knowledge?

(3) Will the disclosure advance the understanding of the general public as distinguished

from a narrow segment of interested persons?

(4) Will the contribution to public understanding be a significant one?  Will the public's

understanding of the government's operations be substantially greater as a result of the

disclosure?

18.  The appeal decision explained that although Medicare administrative law judge

hearings by VTC are an activity of the Federal Government, many of the records responsive to

the FOIA request were not about a federal activity.  For example, some documents were

brochures, pamphlets, and other similar material on the subject of VTC that came from the

companies soliciting business with the Federal Government or materials downloaded from the

Internet in connection with the Department's review of VTC.  The decision explained that while

the Department's review and analysis of solicitations received or VTC materials found on the

Internet may properly be considered an activity of the Federal Government, these particular

materials did not concern the operations or activities of the Department given their origin outside

the government.

19.  The appeal decision further explained that plaintiff had not demonstrated how its

proposed dissemination of material already in the public domain would reveal any meaningful

information about government activities that was not already public knowledge.  Over 90% of

the records that had been released to plaintiff at the time of the appeal decision consisted of

published regulations, a report to Congress, a statute, and a Government Accountability Office report, all of which were readily accessible to the public through the Internet[1] or in the Federal Register.  Given that the vast amount of the records disclosed or to be disclosed to plaintiff were already in the public domain, the appeal decision concluded that plaintiff had not explained in any manner how release of publicly available information would add anything to the public understanding, nor shown how plaintiff's redistribution of that same information would contribute to that understanding in a significant way.

20.  Further, a small portion of records that had not yet been released to plaintiff at the time of the appeal decision consisted of internal administrative matters and contained no substantive information with regard to the subject matter of the FOIA request.  For example, one document was an internal note about using a government purchasing card to secure VTC sites or services.  The appeal decision explained that such information did not qualify for a fee waiver because it dealt with internal administrative matters with regard to securing VTC sites or services and not matters of substance or significance with regard to the underlying subject matter of the request.

21.  The appeal decision concluded that because plaintiff failed to satisfy factors 2 and 4 of the public interest test, as well as factor 1 for a portion of the records yet to be released, a public interest fee waiver would not be granted.[2]

22.  The administrative record for the appeal decision consists of Exhibits 1, 2, 3, 6, 7, 8,

---

[1] Defendant's letter even provided plaintiff with several relevant Internet addresses where the records in question could be located.

[2] Because defendant failed to satisfy the first prong of the fee waiver standard, it was unnecessary for defendant to consider the commercial interest prong.  See Ex.11.

9, 10, and 11, discussed above, and Exhibit 12, which is attached and contains the records that

had been released to plaintiff and the records the Department was planning to release to plaintiff

at the time.

23. On June 29, 2006, plaintiff agreed to pay the FOIA fees. See Ex. 13. Thereafter, we

completed processing the request. We issued two responses, dated July 10, 2006 and July 12,

2006. See Exs. 14 & 15, respectively.

24. The July 10, 2006 response released 319 pages in their entirety. A portion of one

page was withheld under FOIA Exemption 6 to protect the name of a private citizen who had

commented on a proposed regulation. Plaintiff is not challenging this withholding. Portions of

two pages and 99 full pages were withheld under FOIA Exemption 5's deliberative process

privilege and attorney-client privilege. 181 pages that originated with the SSA were referred to

that agency for a direct response to plaintiff. The July 10, 2006 response corrected the page

counts of the first two interim responses. The first two interim responses released 255 pages in

their entirety or partially.

25. The July 12, 2006 response released ten pages in full and withheld 459 pages in full

under FOIA Exemption 5's deliberative process privilege and attorney-client privilege.

26. HHS staff has prepared a Vaughn index that describes the withholdings, challenged

by plaintiff. I understand that during the course of the litigation, the parties narrowed the

challenged documents in light of the three informal indices supplied by defendant to plaintiff. I

have reviewed the challenged documents. The Vaughn index attached to this declaration

includes descriptions of the withholdings for those documents. I have reviewed the Vaughn

index attached to this declaration, and it accurately describes the withholdings. Exhibit 16 is the

7

Vaughn index.

27. The Vaughn index indicates that Document Nos. 3, and 291-299 were referred to the Social Security Administration for a direct response to plaintiff because those documents were generated by SSA.

28. The Vaughn index indicates that Document Nos. 13-18, 72, 87, 110, 187, 210, 226-229, 251, 264, 283, 288, and 297 are no longer at issue in this litigation.

29. The Vaughn index indicates that Document Nos. 33, 109, and 186 contain draft Government Accountability Office (GAO) reports in which GAO instructed HHS that the drafts were GAO property, and thus not agency records. GAO is an agent of the legislative branch. As such, its records are not subject to the FOIA.

30. In the preparation of its Vaughn index , defendant realized that some of the records it had previously withheld from plaintiff could be released. Therefore, defendant made three supplemental releases totaling 65 pages to plaintiff through its counsel.

31. All of the HHS documents still at issue were withheld under FOIA Exemption 5. 5 U.S.C. § 552(b)(5) (Exemption 5) exempts from disclosure: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." The exemption applies to documents that are normally privileged in the civil litigation context. Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the attorney-client privilege, the attorney work-product privilege, or the deliberative process privilege. In this case, the deliberative process privilege and the attorney-client privilege were invoked.

32. The deliberative process privilege protects internal communications that are

predecisional and contain staff advice, opinions, and recommendations, which are part of the agency's deliberative decisionmaking process. All of the documents at issue were withheld under the deliberative process privilege. All withheld documents were either internal HHS documents, documents exchanged between HHS and other agencies, or documents exchanged with a contractor that had performed a feasibility study for HHS. This contractor was relied on solely for the purposes of providing its expert opinion to defendant on the subject of the feasibility of VTC. The contractor was not soliciting additional government business, nor was it seeking a government benefit at the expense of other parties. Many of the materials we withheld under Exemption 5's deliberative process privilege were draft documents, suggested language for draft documents, or advice about draft documents exchanged within HHS or with other federal agencies, such as SSA, the Office of Management and Budget, or the Veterans Administration. The drafts at issue contained the authors' recommendations about what the final documents should say. Many documents provided advice and recommendations about a draft interim final rule concerning changes to Medicare appeals hearing procedures or draft correcting amendments for the interim final rule. (See Document Nos. 10-12, 24-26, 29, 48-49, 51, 73, 75-85, 96-102, 105-106, 130-134, 136, 141-142, 145, 148, 151, 157, 161, 166-170, 174-175, 181, 184-185, 211-225, 239, and 265). With respect to the above draft regulatory documents, the final versions of these documents are publicly available in the Federal Register at 70 Fed. Reg. 11420 (Mar. 8, 2005), 70 Fed. Reg. 37700 (June 30, 2005), and 70 Fed. Reg. 50214 (Aug. 26, 2005). Other documents provided advice and recommendations about draft portions of a draft hearings manual for the Office of Medicare Hearings and Appeals. (See Document Nos. 19-22, 27, 38, 47, 54-56, 62, 64-65, 67, 70-71, 152-156, 179-180, and 290.) Some documents provided advice and

recommendations about a draft joint HHS and SSA report to Congress about the plan to transfer

responsibility for Medicare appeals from SSA to HHS. (See Document Nos. 120-129, 139-140,

143-144, 150, 158, 165, 189, 199-205, and 208-209.) The final version of the above report to

Congress is publicly available on the agency's Internet site at

http://www.hhs.gov/medicare/appealsrpt.html. Other documents provided advice and

recommendations about draft memoranda of understanding with other federal agencies on HHS's

use of the other agencies' VTC facilities for Medicare appeals. (See Document Nos. 4, 7-9, 23,

28, 30-31, 146-147, 163, 176-178, 231-232, and 234-235.) Some documents provided advice

and recommendations about draft HHS comments on GAO reports concerning the transfer of the

Medicare appeals function from SSA to HHS. (See Document Nos. 107-108, 162, 188, and 191-

192.) The final versions of the above HHS comments are publicly available on the Internet at

http://www.gao.gov/new.items/d05703r.pdf and http://www.gao.gov/new.items/d0545.pdf.

Other documents provided advice and recommendations about draft contracting documents for a

statement of work for the Medicare Administrative Law Judge support contract. (See Document

Nos. 114-119, 159-160, 190, 207, 250, 270, and 284.) A small number of documents were drafts

of a feasibility study for use of VTC for Medicare hearings appeals prepared by HHS contractor,

Northrop Grumman, and represented the contractor's expert advice to HHS and were not meant

to solicit VTC business from HHS. (See Document Nos. 247, 252, 261, 262, and 263.)

Remaining draft documents concerned draft option papers on the agency's use of VTC for

Medicare appeals hearings, draft talking points about changes to the Medicare appeals process

and VTC, draft estimates for VTC capability, draft proposed answers to possible questions about

changes to Medicare appeals hearings, draft responses to GAO or to congressional members, and

10

draft feasibility studies for use of VTC for Medicare appeals hearings. (See Document Nos. 1, 35-37, 39, 50, 52-53, 57, 59, 63, 66, 68-69, 74, 86, 91, 93, 95, 112, 137-138, 149, 182-183, 193-194, 206, 233, 238, 240, 242-243, 247, 252-253, 255-263, 266-268, 274, and 285-287.) The draft documents and individuals' suggestions about the draft documents are predecisional because they occur before the final document is created. The information being withheld is deliberative in nature, as the disclosure would expose the agency's decision-making process and reveal the mental processes of the decision-makers in creating the final documents.

33. Besides the draft documents described above, other documents withheld under Exemption 5 contain deliberative information, including advice, recommendations, suggestions, opinions, and analyses about the proposed transfer of the Medicare appeals function from SSA to HHS, the proposed use of VTC hearings for Medicare appeals, and proposed changes to Medicare appeal procedures. (See Document Nos. 2, 5-6, 32-34, 40-46, 58, 60-61, 88-90, 92, 94, 103-104, 111, 113, 130, 135, 164, 171-173, 177, 195-198, 230, 236-237, 241, 244-246, 248-249, 254, 269, 271, 273, 275-282, and 289.) Disclosure of this information would result in an intrusion into the deliberative processes of the agency. This intrusion would prevent the agency from operating effectively in the future. Release of this material would be a deterrent to future free exchanges of information within the agency if agency personnel have to fear the public disclosure of their opinions, advice, analyses, and recommendations. Concern by an agency employee that his or her views and analyses would be publicly disseminated would result in a more timid, and hence less effective, performance of his or her duties. These effects would damage the decision-making process by stifling and chilling such exchanges of information prior to the adoption of a final position by the agency, or by the government.

34. Some material withheld under Exemption 5 was also protected by the attorney-client privilege because they contained confidential communications between agency attorneys and their agency clients for the purpose of seeking legal advice or rendering legal advice about the transfer of the Medicare appeals function from SSA to HHS, the proposed use of VTC, and various draft documents, such as draft regulations, draft hearings manuals, draft memoranda of understanding, draft talking points, and draft reports to Congress. (See Document Nos. 1-2, 4-5, 7-12, 19-36, 38, 40-41, 47-51, 53-60, 62-71, 74-77, 82-86, 88-89, 91, 93, 95-103, 107-108, 111-112, 114-125, 127-129, 132-144, 146-170, 174-185, 188-209, 211-225, 231-232, 235, 239-240, 243, and 258.)

35. All reasonably segregable, non-exempt information has been released. For records withheld in their entirety, there was no reasonably segregable material or non-exempt information amounted to essentially meaningless words and phrases. The Vaughn index indicates our segregability determination for each document.

I declare under penalty of perjury that the foregoing to true and correct, to the best of my information and belief. 28 U.S.C. § 1746. Executed this 11th day of September, 2006.

_____
Robert Eckert

12