UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CENTER FOR MEDICARE ADVOCACY, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF HEALTH AND HUMAN SERVICES <br><br> Defendant. | Case No. 05-2266 |

## DECLARATION OF ETHEL BURROWS

I, Ethel Burrows, hereby declare as follows:

1) I am a Social Insurance Specialist in the Office of Public Disclosure (OPD) of the Social Security Administration (SSA). This Office is responsible for establishing policies and practices to administer the Freedom of Information Act (FOIA), 5 U.S.C. ' 552; the Privacy Act, 5 U.S.C. ' 552a; the Internal Revenue Code provision on disclosure, 26 U.S.C. ' 6103, as it pertains to SSA; section 1106 of the Social Security Act, 42 U.S.C. ' 1306; SSA regulations on disclosure, 20 C.F.R. Parts 401 and 402; and other disclosure issues. In addition, OPD is responsible for deciding whether to release or withhold records under the FOIA.

2) I have personal knowledge of procedures used in handling FOIA requests for information from SSA files pursuant to title 5 United States Code, section 552.

1

3) By letter dated August 25, 2005, the Center for Medicare Advocacy, Incorporated ("CMA") submitted a FOIA request to the Centers for Medicare & Medicaid Services (CMS). The request asked for "[a]ll articles, reports, studies, memoranda, letters and writings of any kind concerning videoconferencing (VTC) that have been or are being reviewed and/or used in designing and/or establishing the Medicare administrative law judge hearings by VTC that are described at 42 U.S.C. § 405.1036, et seq." *See* Exh. i.

5) On January 19, 2006, the Department of Health and Human Services (HHS) referred to SSA documents responsive to plaintiff's request which had originated with SSA. The documents CMS referred to SSA included a portion of one page and ten pages in their entirety. *See* Exh. ii.

6) By letter dated March 2, 2006, SSA notified CMA that HHS had referred to SSA portions of one page and 10 pages of another document. SSA withheld in full all of the records referred to it in this referral under exemption 5 of the FOIA (5 U.S.C. § 552(b)(5)). *See* Exh. iii.

7) By letter dated March 8, 2006, CMA appealed SSA's decision of March 2, 2006, to withhold the documents in their entirety. *See* Exh. iv.

8) By letter dated April 17, 2006, Jonathan Cantor, the Executive Director for OPD notified CMA that he reviewed CMA's appeal and agreed with OPD's prior decision to withhold the material under exemption 5 of the FOIA (5 U.S.C. § 552(b)(5)). *See* Exh. v.

9) On April 28, 2006, HHS referred additional informational to SSA that was located in response to CMA's FOIA request of August 25, 2005, for information about video-teleconferencing (VTC) and administrative law judge hearings because the information responsive to CMA's request originated with SSA. *See* Exh. vi.

2

10) By letter dated July 13, 2006, SSA notified CMA that SSA reviewed the documents referred to SSA by HHS. SSA released in their entirety 57 pages of material. SSA withheld in entirety 138 pages under exemption 5 of the FOIA (5 U.S.C. § 552(b)(5)). SSA partially redacted 15 pages under Exemptions 5 and 6 of FOIA (5 U.S.C. § 552(b)(5) and (6)). SSA withheld the information under Exemption 5 because the information was predecisional information and protected by the deliberative process privilege. SSA also withheld the addresses of all the hearing reporters provided on the SSA list of Contract Hearing Reporters of July 25, 2005 included in an email chain dated August 4, 2005 based on Exemption 6 of the FOIA (5 U.S.C. § 552(b)(6)).1 *See* Exh. vii.

11) I conducted a line-by-line review of all of the documents released and withheld in this case. As part of my review of the documents in this case, I considered whether there was segregable information that could be released within each document. Therefore, to the extent that information was segregable, SSA released it as such. However, some information was so inextricably intertwined that we could not release any portion of the document without disclosing the information we needed to protect. The Vaughn index appended to this declaration at Exh. viii lists the documents that were withheld in full or partially withheld.

12) Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), permits an agency to withhold interagency or intra-agency memorandums that contain predecisional opinions and

---

1 The records withheld under exemption 6 are not further discussed in this document because CMA withdrew their objection to the withholding of these records.

recommendations. All the documents withheld by SSA were either internal SSA documents (intra-agency) or documents exchanged between SSA and HHS (inter-agency).

13) Based on my review of the documents reflecting SSA's communications with CMS and my review of the memorandum of understanding with CMS, it is my understanding that SSA was working with CMS to develop procedures for the two agencies to share video conferencing hearing facilities under the authority of the Economy Act that allows agencies to share resources to save the government money on a cost reimburseable basis. This sharing of facilities was part of the plan to execute the transfer of Medicare hearing functions from SSA to HHS as mandated by the Medicare Prescription Drug, Improvement and Modernization Act of 2003 (MMA). There was a great deal of back and forth amongst SSA employees and SSA and CMS regarding what resources SSA could offer to facilitate the transfer of duties and what resources SSA could spare. I discussed the documents referred to us by HHS with the SSA staff members involved in this project to determine which were final documents and which were drafts or contained predecisional communications.

14) Based on my consultation with Agency staff, I determined that the information being withheld by SSA is deliberative in nature, as the disclosure would expose the agency's decision-making process and reveal the mental processes of the decision-makers. SSA withheld agency records under Exemption 5 that contain deliberative, predecisional information, including draft documents, and other documents containing analyses, recommendations, opinions and advice. Disclosing this information would stifle future discussions between agency employees, thereby harming agency operations. If agency employees fear that their opinions, recommendations and advice will be publicly disclosed, they will be unwilling to speak freely, resulting in a less

effective performance of their duties. This will certainly damage the agency's decision-making process.

15) SSA released any final versions of documents reviewed which included the final version of the Memorandum of Understanding between SSA and HHS for the Shared Use of SSA Video Hearing Facilities as well as the final regulations promulgated by SSA that permitted SSA to conduct hearings before ALJs by video conferencing in the July 13, 2006, release of information.

16) I declare under the penalty of perjury that the foregoing is true and correct.
Executed on September _11_, 2006.

                                                Ethel Burrows
                                                Social Insurance Specialist
                                                Social Security Administration