UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

—————————————————————————

CENTER FOR MEDICARE ADVOCACY, INC.          )
                                            )
          Plaintiff,                        )
                                            )
          v.                                )          C.A. No. 1:05CV02266
                                            )                 (RBW)
UNITED STATES DEPARTMENT OF                 )
HEALTH AND HUMAN SERVICES                   )
                                            )
          Defendant.                        )
—————————————————————————— )

PLAINTIFF'S OPPOSITION TO DEFENDANT'S
CROSS-MOTION FOR SUMMARY JUDGMENT
AND REPLY IN SUPPORT OF
OF PLAINTIFF'S MOTION FOR INJUNCTION

## TABLE OF CONTENTS

FACTUAL AND PROCEDURAL BACKGROUND...…………………………………… 1

SUMMARY JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF BECAUSE
DEFENDANT HAS IMPROPERLY WITHHELD AND FAILED TO ACCOUNT FOR
DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST, AND BECAUSE
PLAINTIFF IS ENTITLED TO A FEE WAIVER …..……………………………… 7

I.    HHS and SSA Have Not Met Their Burden In Demonstrating That The Requested
      Documents Are Properly Withheld Under FOIA Exemption 5……………….. 10

      a.  Draft Documents, Generally……………………………………………11

      b.  Draft Question & Answer and Fact Sheet ……………………………..13

      c.  Responses to Information Requests (GAO, SSA  and Congressional)….15

      d.  Draft Hearings Manual, Executive Decision Memorandum…………… 16

      e.  Meeting Agenda, Meeting Summary, Status Update…………………...17

      f.  Clearance Requests………………………………………………….. 17

      g.  Employee Correspondence and Memoranda…………………………… 18

      h.  Undated, Unsigned, Unaddressed Documents………………………… 19

      i.  Segregable Material…………………………………………………… 21

      j.  Attorney-Client Communications…………………………………… 22

II.   HHS and SSA Have Failed to Account For
      Several Final Documents Which Respond to
      Plaintiff's Request and Are Subject to Disclosure………………………… 24

III.  Plaintiff Is Entitled to a Public Interest Fee Waiver……………………….. 28

      a.  Plaintiff's FOIA Request is in the Public Interest……………………… 28

      b.  Defendant's Arguments for Denying Plaintiff's Fee Waiver Request are
          Unfounded and Based on an Improper Analysis……………………… 31

      c.  Plaintiff Does Not Have a Commercial Interest in the FOIA Request…. 37

CONCLUSION.....…………………………………………………………………… 38

# TABLE OF AUTHORITIES

## Cases

*Access Reports v. Department of Justice*, 926 F.2d 1192 (D.C. Cir. 1991)……………. 20

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505,
    91 L.Ed.2d 202 (1986)…………………………………………………………….. 7

*Arthur Anderson & Co. v. Internal Revenue Service,*
    679 F.2d 254 (D.C. Cir. 1982)……………….………………………….. 12, 19

*Brinton v. Department of State*, 636 F.2d 600 (D.C. Cir. 1980)…….………………….. 16

*Bristol-Myers Co. v. FTC*, 598 F.2d 18 (D.C. Cir. 1978)……………………………….. 19

*Campbell v. Department of Justice,* 164 F.3d 20 (D.C. Cir. 1998)…………….………… 34

*Carney v. United States Department of Justice*, 19 F.3d 807 (2d Cir. 1994)………... 36

*Center for Biological Diversity v. Gutierrez*, --- F.Supp.2d---, 2006 WL 2329330
    (D.D.C. Aug. 10, 2006)…....……………………………………………………….. 11

*Coastal States Gas Corp. v. Department of Energy,*
    617 F.2d 854 (D.C.Cir. 1980)…………………………..…… 8, 10, 11, 12, 22

*Community Legal Services v. U.S. Department of Housing and Urban Development*,
    405 F.Supp.2d. 553 (E.D.Pa. 2005)……………………………....… 9, 30, 31

*Department of Air Force v. Rose,* 425 U.S. 352, 96 S.Ct. 1592 (1976)………………..… 7

*Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770 (D.C. Cir. 1981)……………………… 24

*Institute For Wildlife Protection* v. *U.S. Fish and Wildlife Service*,
    290 F.Supp.2d. 1226 (D.Or. 2003)…………………….……………… 9, 32, 33, 37

*Judicial Watch, Inc. v. Department of Justice,*
    365 F.3d 1108 (D.C. Cir. 2004)……………………………………………... 33

*Judicial Watch, Inc. v. Department of Health and Human Services,*
    27 F.Supp.2d 204 (D.D.C. 1998)…………….…………………………………… 13

*Judicial Watch, Inc. v. Department of Transportation,*
    ---F.Supp.2d, --- 2005 WL 1606915 (D.D.C. 2005)………………………..….35, 36

*Judicial Watch, Inc. v. Food & Drug Admin.,* 449 F.3d 141 (D.C. Cir. 2006)………….18

*Judicial Watch, Inc. v. Rossotti,*
    326 F.3d 1309 (D.C. Cir. 2003)……………………….…………....28, 29, 35

*Judicial Watch, Inc. v. U.S.P.S.,*
    297 F.Supp.2d 252 (D.D.C. 2004)……………………………………*passim*

*King v. United States Department of Justice*, 830 F.2d 210 (D.C. Cir. 1987)……..….. 8

*Larson v. CIA*, 843 F.2d 1481 (D.C. Cir. 1988)…………..…………………………… 28

*Mead Data Cent., Inc. v. United States Department of Air Force,*
    566 F.2d 242 (D.C. Cir. 1977)…………………….…………………….. 20, 23

*National Home Builders Assoc. v. Norton*, 309 F.3d 26 (D.C. Cir. 2002)……….. 10, 11

*N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132,
    95 S.Ct. 1504 (1975)…..........................................................................10, 13, 16

*Oglesby v. United States Department of Army,* 79 F.3d 1172 (D.C. Cir. 1996)………... 8

*Petroleum Info. Corp. v. Department of the Interior*, 976 F.2d 1429 (D.C. Cir. 1992)
………………………………………………………………..………………… 10, 17, 22

*Playboy Enterprises, Inc., v. Department of Justice,*
    677 F.2d 931 (D.C. Cir. 1982)…………………………………………. 22

*Prison Legal News v. Lappin,* 436 F.Supp.2d 17 (D.D.C. 2006)……..…………… 34

*Project on Military Procurement v. Department of the Navy,*
    710 F.Supp. 362 (D.D.C. 1989)………..…………………………………… 36

*SafeCard Servs., Inc. v. Exch.Comm'n,* 926 F.2d 1197 (D.C. Cir. 1991)……………24

*Schlefer v. U.S.,* 702 F.2d 233 (D.C. Cir. 1983)………..……………………...16, 19

*Senate of the Commonwealth of Puerto Rico v. Department of Justice,*
    823 F.2d 574 (D.C. Cir. 1987) ……..……………………………   8, 10, 11, 20

*Southern Utah Wilderness Alliance v. Bureau of Land Management,*
    402 F.Supp.2d 82  (D.D.C. 2005)………..……………………………….. 28, 36

*Tax Analysts v. I.R.S.,* 294 F.3d 71 868 (D.C.Cir. 2002) ….…………………………… 10

*Tax Analysts v. I.R.S.,* 117 F.3d 607 (D.C. Cir. 1997)……..…………………………… 29

*Taxation with Representation Fund v. IRS,* 646 F.2d 666 (D.C. Cir. 1981)................ 19

*United States Department of Justice v. Landano,* 508 U.S. 165,
    113 S.Ct. 2014 (1993)..................................................................... 8

*Upjohn Co. v. U.S.,* 449 U.S. 383, 101 S.Ct. 677 (1981)...................................... 22

*Vaughn v. Rosen,* 484 F.2d 820, 823, 827-28 (D.C. Cir. 1973)........................ 7, 8, 11

*Weisberg v. Department of Justice,* 627 F.2d 365 (D.C. Cir 1980)...................... 8, 23

*Western Watershed Project v. Brown*, 318 F.Supp.2d 1036 (D. Idaho 2004)............. 31

*Wilderness Society v. United States Department of the Interior,*
    344 F.Supp.2d 1 (D.D.C. 2004)................................................. 12, 13, 20

## Statutes

5 U.S.C. § 552(a)(4)(A)(iii)........................................................................ 28

5 U.S.C. § 552(a)(4)(A)(vii)....................................................................... 28

5 U.S.C. § 552(a)(4)(B)............................................................................. 8

5 U.S.C. § 552(b)................................................................................... 22

5 U.S.C. § 552(b)(5)................................................................................ 10

## Rules, Regulations, and Federal Register

Federal Rules of Civil Procedure, 56.............................................................. 7

42 C.F.R. § 405.1020............................................................................... 2

42 C.F.R. § 405.1016............................................................................... 3

42 C.F.R. § 405.1036............................................................................... 3

42 C.F.R. § 5.45.1.................................................................................. 29

43 C.F.R. § 2.21(a)(2)(i)........................................................................... 33

45 C.F.R. § 5.41.................................................................................... 37

70 Fed. Reg. 11420 (2005)..........................................................................1

70 Fed. Reg. 11489 (2005)……………………………………………………… 3

70 Fed. Reg. 37700 (2005)……………………………………………………… 3

70 Fed. Reg. 37704 (2005)……………………………………………………… 3

## Other Authority

132 Congressional Record S16, 489-01 (daily ed. Oct. 15, 1986)...………………… 9

132 Congressional Record 27,190 (1986) ……………………………………..… 28

*Medicare: Concerns Regarding Plans to Transfer the Appeals Workload from
    SSA to HHS Remain*.  U.S. GAO.  GAO-05-703R (June 30, 2005)…………… 3

U.S. Senate Committee on Finance, News Release, August 1, 2005…………………… 3

U.S. Senate Committee on the Judiciary, Amending the Freedom of Information Act.
    S.Rep. No. 93-854 (1974)………………...………………………………… 9

MEMORANDUM OF POINTS OF LAW AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND
REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR INJUNCTION

In this Freedom of Information Act ("FOIA") case, the Department of Health and

Human Services ("HHS") is withholding thousands of pages of documents, claiming that

they fall under FOIA Exemption 5 because they reveal the deliberative processes of the

Department and/or confidential attorney-client communications.  In response, the

plaintiff Center for Medicare Advocacy, Inc. ("Center") argues that the defendant's

Vaughn Indexes and declarations fail to adequately demonstrate that Exemption 5 applies

to most of the responsive documents, and lack merit altogether with respect to other

documents.  Moreover, the defendant's own submissions unequivocally point to the

existence of several additional documents that are subject to disclosure under plaintiff's

FOIA request, but for which defendant has glaringly omitted to make account.

The Department has also improperly denied plaintiff's request for FOIA's waiver

of fees based upon a cursory and misguided determination that disclosure of the

requested information would not serve the public interest.  Accordingly, the Court should

deny the Department's motion for summary judgment with respect to these issues and

enter judgment for the plaintiff.

## Factual and Procedural Background

On March 8, 2005, the Centers for Medicare & Medicaid Services ("CMS")

published interim final regulations governing Medicare Administrative Law Judge (ALJ)

hearings. Medicare Program: Changes to the Medicare Claims Appeal Procedures, 70

Fed. Reg. 11420.  These regulations purport to implement changes in the Medicare ALJ

hearing process adopted by Congress in the Benefits Improvement and Protection Act of 2000 (BIPA), and the Medicare Prescription Drug Improvement and Modernization Act of 2003 (MMA). The BIPA, at Section 521, mandated a number of protections for beneficiaries in the Medicare appeals process, including requirements that decisions be issued within specified time frames to eliminate existing lengthy delays. In the MMA, Congress directed the transfer of the ALJs who conduct Medicare hearings from the Social Security Administration to the Department of Health and Human Services. The clear legislative intent in these statutes was to protect beneficiary interests by ensuring a prompt and independent hearing process for their Medicare claims.

In its implementing regulations, CMS established a new appeals process wherein hearings at the ALJ level are conducted by video-teleconferencing (VTC). 42 C.F.R. § 405.1020. The provision imposes requirements and conditions that frustrate and limit a beneficiary's right to obtain an in-person hearing.[1] Id. In August 2005, two months

---

[1] 42 C.F.R. § 405.1020 Time and place for a hearing before an ALJ.
…
(b) Determining how appearances are made. The ALJ will direct that the appearance of an individual be conducted by videoconferencing (VTC) if the ALJ finds that VTC technology is available to conduct the appearance. The ALJ may also offer to conduct a hearing by telephone if the request for hearing or administrative record suggests that a telephone hearing may be more convenient for one or more of the parties. The ALJ, with the concurrence of the Managing Field Office ALJ, may determine that an in person hearing should be conducted if
(1) VTC technology is not available; or
(2) Special or extraordinary circumstances exist. . . .
....
(i) A party request for an in-person hearing. (1) If a party objects to a VTC hearing or to the ALJ's offer to conduct a hearing by telephone, the party must notify the ALJ at the earliest possible opportunity before the time set for the hearing and request an in person hearing.
....
(4) When a party's request for an in person hearing is granted, the party is deemed to have waived the 90 day time frame specified in § 405.1016.

before the new appeals system was scheduled for completion, the Government

Accountability Office (GAO) issued a report that identified among its due process

concerns with the new system the fact that HHS was providing only limited access to in-

person hearings.  This concern was echoed by the chairman and ranking member of the

Senate Finance Committee, Sens. Charles Grassley and Max Baucus, respectively, who

strenuously urged HHS to ensure that Medicare beneficiaries "have access to a fair and

accessible appeals process for denied claims." [Committee On Finance, News Release,

8/1/05].

     Soon thereafter, on August 25, 2005, plaintiff filed a FOIA request with the CMS

FOIA Group. Pls. Ex. A.  Plaintiff sought "All articles, reports, studies, memoranda,

letters and writings of any kind concerning videoconferencing (VTC) that have been or

are being reviewed and/or used in designing and/or establishing the Medicare

administrative law judge hearings by VTC that are described at 42 C.F.R. § 405.1036, et.

seq." Id.

     On October 3, 2005, CMS replied by letter stating that the agency would respond

to plaintiff's FOIA request, but failed to indicate an approximate date or an extension of

the 20-day time limit for response. Pls. Ex. B.  The letter also made no determination on

---

     (5) The ALJ may grant the request, with the concurrence of the Managing Field Office
ALJ, upon a finding of good cause and will reschedule the hearing for a time and place when the
party may appear in person before the ALJ.

     (Note: The language of 42 C.F.R. § 405.1020(i)(4) was changed to the above by a
correcting amendment published on June 30, 2005. 70 Fed.Reg. 37700, 37704.  The original
version stated: "A request for an in-person hearing shall constitute a waiver of the 90-day time
frame specified in § 405.1016." 70 Fed. Reg. at 11489.)

plaintiff's fee waiver request. Id.  By letter of October 31, 2005, plaintiff appealed

defendant's failure to supply the requested documents within the legal time frame.

Plaintiff further appealed the denial of its fee waiver request and set out facts concerning

its non-profit nature and public interest activities that qualify it for a waiver. Pls. Ex. C.

CMS acknowledged receipt of plaintiff's appeal by letter of November 16, 2005,

but did not respond to the substantive issues, in violation of the legal requirement that an

appeal decision be rendered within 20 working days. Pls. Ex. D.  On November 23, 2005,

having exhausted its administrative remedies, plaintiff commenced the instant action.  On

January 18, 2006, defendant filed its Answer to plaintiff's Complaint.

On January 19, 2006, defendant issued its first interim response to plaintiff's

FOIA request, informing plaintiff that, to date, it had reviewed thirty-seven pages of

responsive records, of which it was releasing thirty-three pages in full and one page in

part. Pls. Ex. F.  The remaining portion and pages were withheld pursuant to FOIA

Exemption 5. Id.  Defendant indicated that it was referring ten full pages and one partial

page containing information originating with the Social Security Administration (SSA) to

that agency for processing and direct response[2]. Id.  Defendant also denied plaintiff's

request for a fee waiver, but without offering a substantive explanation to support its

conclusion that "the criteria in the Department's regulations at 45 Section 5.45 have not

---

[2] By letter dated March 2, 2006, SSA informed plaintiff that it was withholding these pages in full pursuant to Exemption 5 of the FOIA. Pls. Ex. H.  Plaintiff appealed this withholding by letter dated March 8, 2006. Pls. Ex. I.  SSA denied plaintiff's administrative appeal of the initial withholding by letter dated April 17, 2006.  Defendant later referred to the SSA an additional 251 pages of documents, of which seventy pages were released in full, three pages were released in part, and the remainder withheld pursuant to Exemptions 5 and 6 of FOIA.

been met." Id.  By letter dated February 21, 2006, Plaintiff appealed this fee waiver

denial. Pls. Ex. G.

On March 8, 2006, defendant made a second interim release of 250 pages, but

admitted that it was withholding an additional 7,159 pages of responsive documents

pursuant to FOIA Exception 5[3]. Pls. Ex. J.  By letter dated March 20, 2006, defendant

informed plaintiff that it had identified an additional 425 pages of responsive records that

could be released conditioned on plaintiff's agreement to pay the applicable fees. Pls. Ex.

K.

On April 13, 2006, plaintiff filed a "Motion for Injunction," seeking release of all

responsive documents, a Vaughn index describing the withheld documents, a fee waiver,

and attorneys fees.

By letter dated May 15, 2006, long after the 20-day statutory time frame for an

appeal determination had expired, defendant upheld its denial of plaintiff's fee waiver

request on a finding that plaintiff did not met the agency's public interest test. Def. Ex.

11.  To summarize defendant's analysis, it determined that disclosure in this instance

would not contribute significantly to the public's understanding of government activities

and operations because (1) most of the 284 pages it had already released to plaintiff were

already in the public domain, (2) some of the responsive documents yet to be released did

not describe government activity but were solicitations from outside parties seeking to do

business with the agency or information that the agency gathered off of the Internet, and

---

[3] Plaintiff appealed the withholdings made by defendant in its second interim release by letter
dated April 7, 2006.

(3) a small portion of the responsive documents yet to be released and in their redacted form consisted of "internal administrative matters and contain no substantive information with regard to" videoconferencing. Id.

Upon receiving plaintiff's commitment to pay applicable fees pending the Court's determination on fee waiver issue, defendant made supplemental releases of 319 pages, ten pages, and sixty-five pages on July 10, July 12, and September 7 (date received), respectively, and withheld an additional 458 pages in full and three pages in part. Def. Ex. 13-15 & Eckert Decl. at ¶30.

In summary, defendant has released to plaintiff 1,102 pages in full and four pages in part, while withholding 7,720 pages in full.  SSA has released to plaintiff fifty-seven pages in full, fifteen pages in part, and withheld 149 pages in full.

After closely examining the Vaughn indices and supporting declarations filed by the defendant in conjunction with its cross-motion for summary judgment, plaintiff has identified several additional documents whose withholding it no longer wishes to challenge[4].  As such, plaintiff now seeks summary judgment with respect to 206 entire documents, and portions of three additional documents that have been identified by HHS

---

[4] Plaintiff is not pursuing disclosure of the following documents (by Vaughn number): HHS Docs 1-2, 13-18, 33, 41-46, 51-52, 55, 58-60, 63, 72, 87, 89-90, 97-99, 109-110, 112-113, 124, 143-145, 148-149, 158-159, 161-165, 174, 181, 186-193, 194 (partial), 195, 198, 202, 203, 207-208, 210, 221 (partial), 226-230, 237, 241-244, 246, 248-251, 254, 258, 264-265, 269, 274-280, 282, 283, 288, 291, 293, and SSA Docs 2-5, 7-9,14.  **Note:** Plaintiff is no longer seeking production of the GAO documents (HHS Docs 33, 186, and 109) addressed in Section III of defendant's memorandum.

and SSA in the <u>Vaughn</u> indices[5]. Plaintiff also seeks summary judgment with respect to

13 documents which the defendant has failed to properly account for in its <u>Vaughn</u> index.

Argument

SUMMARY JUDGMENT SHOULD BE ENTERED FOR PLAINTIFF BECAUSE
DEFENDANT HAS IMPROPERLY WITHHELD AND FAILED TO ACCOUNT FOR
DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST, AND BECAUSE
<u>PLAINTIFF IS ENTITLED TO A FEE WAIVER</u>

Under Fed. R. Civ.P. 56, summary judgment is appropriate only when the

pleadings and declarations demonstrate that there is no genuine issue of material fact and

that the moving party is entitled to judgment as a matter of law. <u>Anderson v. Liberty

Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts

are those "that might affect the outcome of the suit under the governing law." <u>Id</u>.

"[D]isclosure, not secrecy, is the dominant objective" of the FOIA. <u>Department of

Air Force v. Rose</u>, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599 (1976). Accordingly, the

FOIA provides a framework of liberal disclosure for agency records and "provides that

all documents are available to the public unless specifically exempted by the Act itself."

<u>Vaughn v. Rosen</u>, 484 F.2d 820, 823 (D.C. Cir. 1973) (footnote omitted). Statutory

exemptions from disclosure "must be construed narrowly, in such a way as to provide the

maximum access consonant with the overall purpose of the Act." <u>Id</u>. To prevail on their

summary judgment motion, defendant must demonstrate that no material facts are in

---

[5] The following documents remain in controversy: HHS Docs 3-12, 19-21, 22 (partial), 23-31, 34-
40, 47-50, 53-54, 56-57, 61-62, 64-71, 73-86, 88, 91-96, 100-108, 111, 114-123, 125-142, 146-
147, 150-157, 160, 166-173, 175-180, 182-185, 194 (partial), 196-197, 199-201, 204-206, 209,
211-220, 221 (partial), 222-225, 231-236, 238-240, 245, 252-253, 255-257, 259-263, 266-268,
270-273, 281, 284-287, 289-290, SSA Docs 1, 6, 10-13.

7

dispute and that each document that falls within the class requested either has been produced, has not been withheld, is unidentifiable, or is exempt from disclosure. Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C.Cir.1980).

Where a federal agency asserts that a record is exempt from disclosure, the court shall determine the matter *de novo* and the burden is on the agency to establish its right to withhold the information from the public. 5 U.S.C. § 552 (a)(4)(B); United States Dep't of Justice v. Landano, 508 U.S. 165, 171, 113 S.Ct. 2014, 2019 (1993). To satisfy its burden, the agency in a FOIA case is required to provide a "relatively detailed justification" through the submission of an index of documents, known as a *Vaughn* Index, sufficiently detailed affidavits or declarations, or both. King v. United States Dep't of Justice, 830 F.2d 210, 217 (D.C. Cir. 1987); Oglesby v. U.S. Dep't of Army, 79 F.3d 1172, 1176 (D.C.Cir.1996); Vaughn, 484 F.2d at 827-28. The D.C. Circuit has repeatedly emphasized that justifications by the agency "cannot support summary judgment if they are 'conclusory, merely reciting statutory standards, or if they are too vague or sweeping.'" Id. at 219 (citations omitted); see also Senate of the Commonwealth of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 585 (D.C.Cir.1987); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 861 (D.C.Cir.1980).

The FOIA also provides a liberal framework for the granting of fee waivers to noncommercial requesters, such as reporters, researchers, and public-interest watchdog groups, who intend to use the information to further the public interest.[6] The FOIA's fee

---

[6] Congress added the fee waiver provision to the FOIA in 1974 "to prevent government agencies from using high fees to discourage certain types of requesters and requests,"

waiver provision, as amended in 1986, directs agencies to furnish government records and documents free of charge or at a reduced rate when disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. § 552(a)(4)(A)(iii).  As one district court recently pointed out, "[I]n the 1986 amendments to FOIA, Congress ensured that when such requesters demonstrated a minimal showing of their legitimate intention to use the requested information in a way that contributes to public understanding of the operations of government agencies, no fee attaches to their request." Institute for Wildlife Protection v. U.S. Fish and Wildlife Service, 290 F.Supp.2d. 1226, 1229 (D.Or.2003).

Plaintiff will demonstrate below that HHS has failed to meet its burden of showing that the disputed records fall within FOIA Exemption 5.  The facts also show that HHS has failed to properly account for several responsive documents which must be disclosed to plaintiff.  Finally, plaintiff has met its burden of showing with reasonable specificity how its FOIA request satisfies the statutory requirements to qualify for a fee waiver.  Therefore, the plaintiff is entitled to judgment in its favor and the court should not grant defendant's motion for summary judgment as a matter of law.

---

particularly journalists, scholars, and non-profit public interest groups. Community Legal Services v. U.S. Department of Housing and Urban Development, 405 F.Supp.2d. 553, 555 (E.D.PA.2005) (citing Senate Comm. on the Judiciary, Amending the Freedom of Information Act, S.Rep. No. 93-854, at 10-19 (1974)). Congress amended the provision in 1986 in order "to remove the roadblocks and technicalities" that continued to stand in the way of obtaining a fee waiver. Id. (citing 132 Cong. Rec. S16, 489-01 (daily ed. Oct. 15, 1986) (Sen. Leahy)).

I.    HHS and SSA Have Not Met Their Burden In
Demonstrating That The Requested Documents
Are Properly Withheld Under FOIA Exemption 5.

Exemption 5 of FOIA shields from disclosure records that are: "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption, known as the "deliberative process privilege," applies to documents "reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." Nat'l Home Builders Assoc. v. Norton, 309 F.3d 26, 39 (D.C.Cir.2002) (citing Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C.Cir.1992)).  It has also been construed to apply to documents that would be subject to the attorney-client privilege in the context of civil discovery. N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 149, 95 S.Ct. 1504 (1975); Tax Analysts v. I.R.S., 294 F.3d 71, 76 (D.C.Cir.2002).  However, in keeping with FOIA's overall purpose of broad disclosure, Exemption 5 must be construed narrowly. Puerto Rico, 823 F.2d at 584; Coastal States, 617 F.2d at 868.  The D.C. Circuit has narrowed its interpretation of this exemption by adopting a standard which focuses on whether there is a genuine likelihood that disclosure will cause harm to the decision making process. Petroleum Info. Corp. at *1435* (identifying the "key question" in Exemption 5 cases as "whether disclosure would tend to diminish candor within the agency.").

10

To invoke the deliberative process privilege, an agency must establish that the information is both predecisional and deliberative. Nat'l Home Builders Assoc. at 39. Documents are "predecisional" if they are prepared to assist the agency decisionmaker in arriving at a decision, rather than to support a decision already made. Id. Documents are deliberative if they reflect the "give-and-take of the consultative process." Id. The government agency has the burden of establishing "what deliberative process is involved and the role played by the documents in issue in the course of that process." Coastal States, 617 F.2d at 868. "Generally, providing only 'each document's issue date, its author and intended recipient, and the briefest of references to its subject matter … will not do.'" Center for Biological Diversity v. Gutierrez, --- F.Supp.2d---, 2006 WL 2329330 at *8 (D.D.C. Aug. 10, 2006) (quoting Puerto Rico at 585).

As to documents in this case, HHS and SSA's *Vaughn* indices have in some instances, provided a detailed description of the withheld documents. However, a close review of the indices reveals numerous instances in which defendant has not provided sufficient specificity to allow an "adequate adversary testing" of the claimed exemption. Vaughn, 484 F.2d at 828. Further, defendant has failed in some instances to demonstrate that the documents are predecisional or deliberative by omitting to identify the role played by the documents in the agency's decision-making process. By way of example, plaintiff respectfully refers the Court to the following categories of entries:

      a)      Draft Documents, Generally

A large portion of the responsive records in this case are labeled as drafts by the government.[7] This Circuit recognizes draft documents among the examples of "subjective documents which reflect the personal opinions of the writer rather than the policy of an agency" that might qualify for exemption. <u>Coastal States</u> at 866. However, simply designating a document as a "draft" does not automatically make it privileged under the deliberative process privilege. <u>Id</u>.; <u>Arthur Anderson & Co. v. Internal Revenue Serv.</u>, 679 F.2d 254, 257 (D.C.Cir. 1982). In recent cases involving draft documents, this Court has held that the agency still had a burden to "identify the 'function and significance … in the agency's decision making process' of all redacted and withheld documents to qualify them as exempt under the deliberative process privilege." <u>Wilderness Society v. United States Dep't of Interior</u>, 344 F.Supp.2d 1, 14 (D.D.C. 2004) (quoting <u>Arthur Andersen</u> at 258); <u>Judicial Watch, Inc. v. U.S.P.S.</u> ("<u>Judicial Watch 2004</u>") 297 F.Supp.2d 252, 261 (D.D.C.2004).

Moreover, as with any other deliberative material, a draft document may lose its predecisional status "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." <u>Coastal States</u> at 866. Accordingly, this Court recently granted summary judgment for the plaintiff where the government agency failed to indicate whether the draft was "(1) 'adopted formally or

---

[7] The following is a list of disputed responsive records which are or contain documents that the agency has labeled as drafts: HHS Docs 4, 7-8, 10-12, 19-21, 23-29, 31, 34-39, 47, 50, 53-54,57, 62, 64-67, 69-71, 73-75, 86, 91, 93, 95-96, 107-108, 114-123, 125-130, 136-142, 146-147, 150-157, 160, 166-170, 175-176, 178-180, 182-185, 194, 199-200, 204-206, 209, 211-225, 231-235, 238-240, 252-253, 255-257, 259-263, 266-268, 270, 284-287, 290, SSA Docs 1, 10-13.

informally as the agency position on an issue;' or (2) 'used by the agency in its dealings

with the public,'" as either circumstance would defeat the deliberative process privilege.

Wilderness Society 344 F.Supp.2d at 14 (quoting Judicial Watch 2004, 297 F.Supp.2d at

261).  Similar to that case, the defendant here did not indicate whether any of the

designated "draft" documents were adopted or used in the agency's interactions with the

public, and so they have failed to meet their burden of establishing that the documents

were properly withheld. Id.

       b)      Draft Question & Answer and Fact Sheets

For the purpose of the Exemption 5, material is not predecisional and antecedent

to policy if it is intended to explain action that the agency has taken. N.L.R.B., 421 U.S.

at 153-54. See also, Judicial Watch, Inc. v. HHS, 27 F. Supp. 2d 240, 245 (D.D.C. 1998)

("deliberative process privilege does not protect documents that merely state or explain

agency decisions").  Thus, the fact sheets and question and answer sheets in Wilderness

Society, supra, were held by this Court to constitute "factual information which does not

bear on … policy formation" and as such, was not subject to the deliberative process

privilege.

HHS Documents 35, 36, 37, and 39 are e-mail communications in May 2005

between legal counsel that refer to and contain "draft questions and answers about VTC

hearings."  This description is vague, overly broad and fails to identify the intended use

of this material in the agency's decision-making process.  As such, it is impossible to

determine whether the item is predecisional and deliberative.  Without more, one can

13

reasonably surmise that the questions and answers provide factual, disclosable information, and pertain to or clarify the agency's policy regarding the final VTC regulations, which were already published at that point.  Furthermore, defendant fails to indicate whether any part of these questions and answers were adopted or used by the agency in dealing with the public.

HHS Documents  137, 138 and 289[8] are all described as "[u]ndated draft questions and answers document on revisions to the appeals process for initial claim determination BIPA appeals," which Defendant purports were submitted to OGC for review, although no author or recipient are mentioned in the descriptions.  This raises the issue of whether the release of the document would pose a threat to candor and frank exchange in the agency.  No indication is given as to the intended purpose of the questions and answers, whether the drafts were formally or informally adopted, or used in dealing with the public.  The description suggests that rather than to assist in making policy, the document(s) operate to answer questions (but from whom?) and explain the facts about the agency's revisions to the appeals process (but from WHOM?).  As such, plaintiff posits that they were not predecisional.

The same arguments above apply with respect to the draft "myths and realities document" [HHS Document 50, 52, 53, 286], which according to defendant "describes various myths versus realities about the Medicare hearings transition."  Again, there is no

_____

[8] HHS Document 74 is 1-page email dated February 28, 2005, which attaches a 4-page "draft BIPA questions and answers" but it is not clear whether this is a draft of the same document as items 137, 138, and 289.  There is an inconsistency between defendant's description of this item in the original index it furnished to plaintiff and the Vaughn description.  The original version [Pls. Ex. M] included a "draft fact sheet", which as factual information would certainly fall outside the scope of Exemption 5 and have to be disclosed.

14

indication of why it was prepared and what role the document played in the agency's decision-making process. From the title, it would seem to be used in explaining the agency's policies to third parties, and therefore fall outside the scope of Exemption 5.

    c)   <u>Responses to Information Requests (GAO, SSA and Congressional)</u>

A few entries in defendant's <u>Vaughn</u> index pertain to requests made to HHS/CMS for information and the agency's responses to those information requests (HHS Document 85, SSA Document 12). A few other entries pertain to the agency's responses to letters from congresspersons {HHS Documents 66, 68, 69[9], 194). It is plaintiff's position that these documents cannot be protected from disclosure because they are not predecisional, as they do not assist the decisionmaker in formulating policy, but merely seek or provide facts to explain or justify agency policy. This Court reasoned in <u>Judicial Watch 2004</u>, 297 F.Supp.2d at 263, that if prepared testimony in the form of sample questions and answers to assist agency officials in testify at Congressional hearings "simply justified or explained [agency] reactions....the materials are not antecedent and therefore are not protected." Other factors in analyzing whether the agency's prepared responses in that case were predecisional included the agency's failure to "describe the purpose or nature of the congressional inquiry or the content of the…prepared testimony…fail[ure] to identify what, if any, of the prepared testimony actually was read by [agency] employees in public or appeared in published records." Defendant's <u>Vaughn</u> entries in the instant case likewise neglect to describe the nature and purpose of the

---

[9] Document 69 includes the defendant's **93-page** draft response to Sens. Grassley and Baucus. The <u>Vaughn</u> entry for this item neglects to provide any further description of this 93-page offering.

congressional and GAO inquiries, and do not indicate whether their responses were publicly released.

    d)  <u>Draft Hearings Manual, Executive Decision Memorandum</u>

For the purposes of the deliberative process privilege, material is not predecisional if it merely implements policy. <u>Brinton v. Department of State</u>, 636 F.2d 600, 605 (D.C. Cir. 1980). Exemption 5, therefore, does not apply to "statements of policy and interpretations which have been adopted by the agency," and "instructions to staff that affect a member of the public." <u>NLRB</u>, 421 U.S. at 153-54. Nor does Exemption 5 operate to protect "secret law" or an agency's "working law" – i.e., orders, decisions, interpretations, instructions and guidelines which have precedential weight and affect the public. <u>Schlefer v. U.S.</u>, 702 F.2d 233, 244 (D.C.Cir.1983).

Plaintiff thus challenges the applicability of Exemption 5 to the <u>Vaughn</u> items (HHS Documents 4, 7-8, 235) pertaining to the Veterans Health Administration (VHA) Executive Decision Memorandum about HHS use of VA VTC facilities. By its very title, the disputed document purports to memorializes a decision of HHS executive (Nancy Thompson) to the Under Secretary of Health of the VHA. As the memorandum does not overtly call for or assist in a further agency decision, and defendant's justifications do not suggest otherwise, it is not predecisional. Defendant likewise fails to justify how drafts of the Office of Medicare Hearings and Appeals (OMHA) Hearings Manual play a role in the decision-making process. Plaintiff contends that the manual implements adopted agency policy and contains instructions and guidelines for agency staff pertaining to the new hearings process, which unquestionably affects the public. Accordingly, entries

16

concerning the Hearings Manual and Executive Decision Memorandum are not protected by the deliberative process privilege and must be disclosed.

### e) Meeting Agenda, Meeting Summary, Status Update

It has been determined that "when material could not reasonably be said to reveal an agency official's mode of formulating or exercising policy-implicating judgment, the deliberative process privilege is inapplicable." Petroleum Inf. Corp., 976 F.2d at 1435. Plaintiff submits that the following items are not deliberative, as they constitute formulaic and objective recitals of factual information which do not, in and of themselves, assist in the policymaking: HHS Document 57  (agenda and draft GAO exit conference summary),  177 (summary of issues raised at a meeting) and 101 (status update for various draft regulations).

### f) Clearance Requests

Ten items (HHS Docs 12, 29, 123, 128, 170, 199, 217, 221, 224, 225) in the Vaughn index describe drafts documents to which are attached 1-page clearance requests. In the corresponding justifications, the defendant makes no reference whatsoever to the clearance requests, allowing plaintiff no means of ascertaining their contents, function or how they fall within the deliberative process privilege.  Without more information, "clearance request" sounds like an official form which does not, in and of itself, assist the decisionmaker in formulating policy or arriving at a decision.  If anything, it suggests the end-point of the agency's deliberative process and the confirmation of final policy.

17

An agency may not claim exemptions too broadly, thereby sweeping unprotected information within the statute's reach. Judicial Watch, Inc. v. Food & Drug Admin. ("Judicial Watch 2006"), 449 F.3d 141, 147 (D.C.Cir. 2006) (holding that agency "must explain why the exemption applies to the document or type of document withheld and may not ignore the contents of withheld documents"). In this case, the agency's broad, sweeping claims of privilege without reference to the withheld clearance requests impede judicial review and undermine the functions served by the Vaughn index requirement.

g)    Employee Correspondence and Memoranda

In its Vaughn entries and declarations pertaining to e-mails and other correspondence between agency staff, defendant has almost universally failed to furnish information regarding the names and relative positions of the parties to the communicated information. Such traffic is nearly always portrayed as "an exchange between" CMS staff, HHS staff, OGC attorneys, or some combination thereof. As a result, plaintiff lacks a crucial element for understanding what function the communication serves within the context of the agency's decision-making process. In a similar case where the agency failed to identify the recipients of the non-legal correspondence, this Court denied defendant's summary judgment motion, holding that "it is not possible to tell whether these e-mails were from junior employees to supervisors and, therefore, part of a deliberative 'give and take' this would have made it easier to determine whether these documents were 'deliberative.'" Judicial Watch 2004, supra at 265.

18

In establishing whether an agency has met its burden of establishing what deliberative process is involved and the role played by a particular document in the course of that process, this Circuit has considered two factors: (1) the "nature of the decisionmaking authority vested in the officer or person issuing the disputed document," Taxation with Representation Fund v. IRS, 646 F.2d 666, 679 (D.C.Cir.1981); and (2) the relative positions in the agency's "chain of command" occupied by the document's author and recipient. Arthur Anderson, supra, 679 F.2d at 258; see also Schlefer, 702 F.2d at 238 (intra-agency memorandum from "subordinate" to "superior" more likely to be deliberative in character than documents traveling in opposite direction); Bristol-Myers Co. v. FTC, 598 F.2d 18, 28 n.20 (D.C.Cir. 1978) ("[D]etailed information about the agency's decision-making process is essential…to a fair determination of the agency's [deliberative process] claims.").  With respect to employee correspondences in this case, because no information is provided about the agency's decision-making process and because the entries never indicate the names and rarely mention the relative positions of the authors or parties to the communicated information, defendant has not met its burden of justifying its refusal to disclose these documents.

    h)  Undated, Unsigned, Unaddressed Documents

Forty-four of the responsive documents contain no dates and no identifying information that would link any particular agency employee to the documents.[10]  As such,

---

[10] The following are the undated and unascribed documents that remain in controversy: HHS Docs137-142, 147, 150-157, 160, 169, 182-185, 197, 201, 204-205, 209, 219, 236, 253, 256-257, 259-263, 266-268, 272-273, 287, 289, and SSA Doc 4.

the release of these documents would be unlikely to harm the agency's ability to engage in candid and frank discussion – which is the critical, underlying objective of Exemption 5. Id. Although defendant has made a blanket declaration that disclosure of any of the withheld documents would harm the agency's deliberative process (Eckert Decl. at ¶33, Burrows Decl. at ¶14), such harm cannot be merely presumed. Mead Data Cent., Inc. v. U.S. Dep't of Air Force, 566 F.2d 242, 258 (D.C.Cir.1977) ("An agency cannot meet its statutory burden of justification by conclusory allegations of possible harm.").

This very issue was addressed by this Court when a government agency claimed that the names and titles of the authors of certain disputed documents were simply unknown. Wilderness Society, 344 F.Supp.2d at 15. In its analysis, the Court noted that one relevant factor to be considered in determining whether the deliberative process privilege applies is the relation between the author and recipients of a document. Id. (citing Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195 (D.C.Cir.1991); Puerto Rico, 823 F.2d at 586). In granting summary judgment for the plaintiff, the Court held that the failure to furnish such identifying information "makes it more difficult for the defendants to satisfy their burden of providing sufficient detail to describe how the particular documents were part of the deliberative process." Id.

The fact that defendant here has not met its burden with respect to undated, unascribed, and unaddressed documents is illustrated by the following examples:

Document 197 – 2 pages. Description: Undated evaluation factors for structural options for ALJs and opinions on how the options differ. Basis for withholding: The

withheld material is protected by the deliberative process privilege and attorney-client privilege. This document evaluates four suggested structural options for Medicare claims appeal ALJs. The remainder of the justification contains boilerplate language. This document is unsigned and there is no indication of a sender or recipient. As such, plaintiff cannot trace the decision-making process to which the document contributed. Nor can plaintiff see how disclosure of this document would discourage candor among agency employees. Although defendant invokes the attorney-client privilege, there is no clear evidence that confidential attorney-client communication is involved.

Document 253 – 72 pages. Description: Undated draft feasibility study on HHS implementing VTC and audio teleconferencing, with edits typed in. Basis for withholding: deliberative process privilege. This document is a draft feasibility study about HHS and contains suggested edits. The remainder is boilerplate. There is no indication of where the document originated, who the edits are made by, whether the draft or edits were adopted, or how the document functions in the agency's policy-making. The description is too general and does not identify any particular aspect of VTC addressed by the study.

Document 267 – 8 pages. Description: Undated critique and analysis of draft VTC/audio teleconference feasibility study. Basis: deliberative process privilege. Defendant's justification merely repeats description, and applies the same boilerplate language. Once again, the Vaughn entry is too vague for plaintiff to determine whether the document is in fact predecisional and deliberative.

 i) Segregable Material

Under the FOIA, an agency is required to release any reasonably segregable portion of an otherwise exempt document. 5 U.S.C. § 552(b).  Factual information generally must be disclosed, as the exemption does not protect 'purely factual material appearing in a form that is severable without compromising the private remainder of the documents.'" Petroleum Inf. Corp., 976 F.2d at 1434; Playboy Enterprises, Inc. v. Dep't of Justice, 677 F.2d 931, 935 (D.C.Cir.1982).

HHS Document 34 is an inter-agency communication which attaches several documents, including a "1-page draft legal authorities."  Plaintiff submits that a written recital of legal authorities is factual and would not qualify as deliberative, as it does not involve personal, candid, subjective opinion.  Therefore, there should be no reason why it cannot be segregated from the other parts of this entry and disclosed.  Similarly, HHS Document  40 is an e-mail communication concerning the "Administrative Procedure Act (APA) rotation of cases among judges."  One would reasonably deduce from this description that the information would at least contain some factual statements laying out or interpreting the statutory provision.  Furthermore, defendant's justification for this document fails to establish the function and role of this communication in the agency's decision-making  process.

j)   Attorney-Client Communications

The attorney-client privilege does not allow an agency to withhold a document simply because it is a communication between the agency and its lawyers Coastal States, 617 F.2d at 862-63. See Upjohn Co. v. U.S., 449 U.S. 383, 396, 101 S.Ct. 677, 686 (1981)

(noting that a client "may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney").

To invoke the privilege, an agency must demonstrate that the document it seeks to withhold (1) involves "the confidential communications between an attorney and his client" and (2) relates to "a legal matter for which the client has sought professional advice." Mead Data Cent., 566 F.2d at 252. The agency bears the burden of showing that the information exchanged was indeed confidential. Id. at 253. That is, the agency "must show that it supplied information to its lawyers 'with the expectation of secrecy and was not known by or disclosed to any third party.'" Judicial Watch, Inc. v. U.S.P.S., 297 F.Supp.2d at 267 (quoting Mead Data Cent. at 254).

Plaintiff submits that for the vast majority of the withheld documents which defendant has invoked the attorney-client privilege, defendant's Vaughn entries fail to clearly and specifically identify the legal advice sought and given. In its justifications, defendant merely uses conclusory language stating that confidential attorney-client communications are involved with respect to general topic of exchange indicated in the description. In almost none of the entries does the description evidence the confidentiality of the communication.

In summation, because Defendant has failed to meet its burden of demonstrating that the attorney-client and deliberative process privileges apply where they have been claimed, it is not entitled to summary judgment as a matter of law and should be ordered to produce responsive records to the Center forthwith.

23

II.    HHS and SSA Have Failed to Account For
Several Final Documents Which Respond to
Plaintiff's Request and Are Subject to Disclosure

The final versions of several draft documents that are identified and described in the

Vaughn index and accompanying declarations have not been produced or accounted for

by Defendant.  If the draft versions of these documents fall within the class of records

responding to plaintiff's FOIA request, then logically, the final versions must likewise

fall within the class.  Mysteriously, these final documents, enumerated below, are

nowhere to be found in the Vaughn index and no explanation has been given as to why

they were not disclosed.  As such, Defendant has failed to meet its burden under FOIA.

For defendants to prevail on their summary judgment motion in a FOIA case, they

must demonstrate that each document that falls within the class requested either has been

produced, has not been withheld, is unidentifiable, or is exempt from disclosure.

Weisberg v. Dep't of Justice, 627 F.2d 365, 368 (D.C.Cir. 1980).  To this end, agency

affidavits are accorded a presumption of good faith, which cannot be rebutted by "purely

speculative claims about the existence and discoverability of other documents." SafeCard

Servs., Inc. v. Sec. & Exch. Comm'n, 926 F.2d 1197, 1200 (D.C.Cir.1991) (citing

Ground Saucer Watch, Inc. v. CIA, 692 F.2d 770, 771 (D.C.Cir.1981)).  In this case,

however, no speculation is required because the defendant has proffered evidence which

sufficiently raises a material question as to whether HHS has accounted for every

document that falls within the FOIA request.

24

By defendant's own version of the facts, "The draft documents and individuals' suggestions about the draft documents are predecisional because they occur before the final document is created. The information being withheld is deliberative in nature, as the disclosure would expose the agency's decision-making process and reveal the mental processes of the decision-makers in creating the final documents." Eckert Decl. at ¶32. Defendant here unequivocally asserts that final versions of these draft documents do, in fact, exist. The statement also concedes the point that in their final form, these documents are no longer predecisional or deliberative, because they mark the end-point of the agency's decision-making and creative processes with respect to that document. Rather, they represent the final statement of the agency regarding the subject matter of the document. In light of this, plaintiff respectfully requests that the following final documents be released forthwith pursuant to the FOIA:

1. **Statement of Work (SOW) for ALJ Hearings Support Contract and Appendix D (regarding VTC Standards).** Thirteen items (Docs 114-119, 159-160, 190, 207, 250, 270, 284) contain or reference drafts of these documents during the period September 2003 - May 2004.

2. **Hearings Manual for the Office of Medicare Hearings and Appeals (OMHA).** Twenty-four items (Docs 19-22, 27, 38, 47, 54-56, 62, 64-65, 67, 70-71, 152-156, 179-180, 290) contain or reference drafts of this document during the period April 2005 – July 2005.

3. **Veterans Health Administration (VHA) Executive Decision Memorandum & Memorandum of Understanding (MOU) between HHS**

25

**and Veterans Administration on use of VTC facilities**.  Seven items (Docs 4, 7-9, 235, 146-147) contain or jointly reference drafts of these documents during the period July-August 2005.

4.    **Memorandum of Understanding (MOU) between HHS and SSA on use of VTC facilities.**  Thirteen items (HHS Docs 23, 28, 30-31, 163, 176-178, 231-232, 234, SSA Docs 1, 10) contain or reference drafts of this document during the month of June 2005.  Note that in the justification section of its <u>Vaughn</u> entry at Document 3, SSA concedes that a final MOU between SSA and HHS exists.

5.    **Contractor's Feasibility Study for Use of VTC for Medicare Hearings Appeals.**  Five items (Docs 247, 252, 261-263) contain or reference drafts of this particular study prepared by contractor Northrop Grumman during the period December 2004 – January 2005.

6.    **GAO Exit Conference Summary (2005) and "Myths & Realities Of Hearings Transition."**  Five items (Docs 50, 52-53, 57, 286) contain or jointly reference drafts of these documents during the month of May 2005, after the interim final regulations were published.  Note that defendant released to plaintiff a GAO exit conference summary from a July 27, 2004 meeting with GAO.

7.    **GAO Information Request and HHS Response (January 2005).**
Document 86 refers to and attaches a 10-page draft HHS response to the

26

"latest GAO information request" from January 2005. However, the actual

request and final response have not been accounted for in the <u>Vaughn</u> index.

Note: Defendant has already released to plaintiff the GAO

questions/information requests from November 2004 and late March 2005.

8.    **VTC Options Papers.**  At least 13 items (Docs 93, 95, 182, 238, 241, 256-

257, 259-260, 268, 272-273, 285, 287) contain or reference different options

papers.

9.    **BIPA Q&A.**  Four items (Docs. 74, 137, 138, 289) contain drafts of this

document.

10.    **Response to Letters from Congressmen.**  Six items (Docs. 66, 68-69, 113,

149, 193) contain or reference HHS's draft response to a March 25, 2005

letter from Senators Grassley and Baucus.   Document 194 references and

contains a draft response to a letter from Congressman Ford.

11.    **Draft Feasibility Studies for Use of VTC for Medicare Appeals.** At least

four items (Docs. 253, 266 – 268) contain or reference these documents.

12.    **Draft Estimates for VTC Capability.**

13.    **Draft Proposed Answers to Possible Questions About Changes to**

**Medicare Appeals Hearings.**  Five items (Docs. 32, 35-37, 39) contain or

reference this proposed draft.

III.    Plaintiff Is Entitled to a Public Interest Fee Waiver

In considering a public interest fee waiver request, courts employ a two-prong test to determine whether disclosure of the requested information is (1) "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Larson v. CIA, 843 F.2d 1481, 1483 (D.C.Cir. 1988)(quoting 5 U.S.C. § 522(a)(4)(A)(iii)).  The party requesting documents under the FOIA bears the burden of showing with reasonable specificity that these requirements are met. Id.  The Court decides de novo whether to grant plaintiff's request for a public interest waiver, but the Court's consideration of the matter is limited to the record before the agency. Id.; 5 U.S.C. § 552(a)(4)(A)(vii).

The D.C. Circuit explicitly recognized that Congress amended the fee waiver provision to ensure that it be "'liberally construed in favor of waivers for noncommercial requesters.'" Judicial Watch, Inc. v. Rossotti ("Judicial Watch 2003"), 326 F.3d 1309, 1312 (D.C. Cir. 2003) (quoting 132 Cong. Rec. 27,190 (1986) (Sen. Leahy)).  Following this, the District Court has also emphasized that strong policy considerations support a generous interpretation of the fee waiver provision. Southern Utah Wilderness Alliance v. Bureau of Land Management, 402 F.Supp.2d 82, 87 (D.D.C. 2005); Judicial Watch, Inc. v. Dep't of Energy, 310 F.Supp.2d. at 291 (D.D.C. 2004) ("Recent case law suggests that the public interest exception should be viewed in an expansive manner.").

A.  Plaintiff's FOIA Request is in the Public Interest.

28

Because the statute does not provide a legal standard to apply in analyzing whether a requester satisfies the public interest prong, a reviewing court may elect to model its analysis on the implementing agency regulation, where the regulation elaborates on the statute. In doing so, however, the court is not obliged to defer to an agency's view of FOIA's meaning. Judicial Watch 2003 at 1313 ("…we emphasize that we owe no particular deference to the IRS's interpretation of FOIA.") (citing Tax Analysts v. I.R.S., 117 F.3d 607, 613 (D.C. Cir. 1997)).

Defendant HHS has promulgated a regulation setting out the following four criteria it uses to determine whether a party making a FOIA request has satisfied the public interest prong. *See* 45 C.F.R. § 5.45. 1) Do the records in question pertain to the operations or activities of the federal government? 2) Would release reveal meaningful information about government operations or activities? Will it reveal information that is not already public knowledge? 3) Will disclosure advance such understanding to the general public, or to a narrow segment of interested parties? 4) Will any contribution to public understanding of government operations be significant, and if so, will it be greater as a result of the disclosure? Def. Mem. 20-21 & Def. Ex. 11. Plaintiff will address each factor in turn.[11]

First, plaintiff has met its burden of identifying with reasonable specificity the operations or activities of HHS that are implicated by its FOIA request. In analyzing this factor, the court in Judicial Watch 2003 looked to the actual items sought by the FOIA requester and evaluated the specificity with which the items identify operations and activities of the agency. 326 F.3d at 1313. Plaintiff in this case sought "[a]ll articles, reports, studies, memoranda, letters and

---

[11] In its initial denial of plaintiff's fee waiver request, HHS provided no objective rationale for concluding that these criteria had not been met. Pls. Ex. F. In upholding the denial on administrative appeal, HHS determined that plaintiff had not satisfied factors 1, 2, and 4 . Def. Ex. 11.

writings of any kind concerning videoconferencing (VTC) that have been or are being reviewed and/or used in designing and/or establishing the Medicare administrative law judge hearings by VTC…" Pls. Ex. A. The requested items clearly and directly concern activities and operations undertaken by the government in developing the new VTC hearing system. The defendant, in addressing this factor, has likewise conceded that the subject matter of plaintiff's FOIA request -- Medicare administrative law judge hearings by VTC -- is an activity of the Federal Government. Def. Ex. 11.

Regarding the second factor, the plaintiff's FOIA request, as it was worded, sought meaningful information, which was not readily accessible to the public, clarifying how the government had operated to develop VTC ALJ hearings. While the new appeals system was scheduled to apply immediately to all Medicare beneficiaries, even the basic details of the system had not (and still have not) been widely publicized. Recently, a district court held that a FOIA request was "likely to uncover information that would be unavailable otherwise," where although some aspects regarding a new government program had been publicized, the agency had "failed to provide timely, detailed information about the Program to the public.". Community Legal Services v. Dep't of Housing & Urban Dev't, 405 F.Supp.2d 553, 559 (E.D. Pa. 2005). Similarly here, even though the new regulations had been published in the Federal Register, public knowledge about the basic changes to the ALJ hearing process was minimal and public knowledge of the wider issues surrounding VTC was nearly non-existent.

With respect to the third factor, plaintiff specified in its fee waiver request that it would "use the information requested concerning VTC hearings to further the interests of Medicare beneficiaries and their advocates who will be required to use the new hearing process." Pls. Ex.

C.  The request also identifies specific ways in which the organization "educates and advocates on behalf of Medicare beneficiaries nationwide." Id.  Recently, where an environmental group stated its intention to educate the public about the ecological conditions of land managed by the agency and the potentially adverse affect of the agency's strategies on the environment, the Court held that it had adequately specified how the requested information would contribute to the general public's understanding of the agency's operations. Western Watershed Project v. Brown, 318 F.Supp. 2d 1036, 1040 (D. Idaho 2004).  Plaintiff in the instant case has made an equally sufficient showing, not only of its intent and ability to use the requested information to educate the public, but also to further the public interest through legislative and administrative advocacy and direct litigation.

Finally, the information's contribution to public understanding would be significant.  In assessing significance, some courts consider the newness of the information sought. See Community Legal Services, 405 F.Supp.2d at 559-560.  This factor clearly weighs in favor of plaintiff's fee waiver.  The currency and relevance of its FOIA request is irrefutable, as it sought information pertaining to a brand new system and policy for ALJ hearings that was set to apply promptly to all Medicare beneficiaries and which marked a major departure from the agency's longstanding policy and practice.

Based on the foregoing, the Court should find that plaintiff has met its burden by making a sufficiently strong showing of how its FOIA request satisfies the public interest test of the statute to qualify for a fee waiver.

B.  Defendant's Arguments for Denying Plaintiff's Fee Waiver
Request are Unfounded and Based on an Improper Analysis

31

Defendant improperly denied plaintiff's request for a fee waiver because it did not base its decision upon the request itself and the reasons plaintiff gave in support of waiver. Instead, for each point in its analysis, defendant erringly focuses and grounds its argument upon a small population of the responsive documents, most of which had not yet been released or described to plaintiff. In effect, defendant throws up precisely the type of "roadblocks and technicalities" that Congress intended to remove by amending the fee waiver provision.

First, defendant states that plaintiff failed to effectively satisfy Factor 1 because *some* of the records yet to be released, "while responsive, do not, in fact, describe federal government activity, but instead are brochures and pamphlets submitted by private parties seeking to do business with the federal government." Def. Mem. at 21. Defendant claims that, "While the Department's review and analysis of solicitations received or VTC materials found on the Internet may properly be considered an activity of the Federal Government, these particulars do not concern the operations or activities of the Department given their origin outside the government." Def. Ex. 11. Defendant's reasoning wrongly assumes the premise that documents generated outside of the government cannot implicate government activity.

In Institute For Wildlife Protection, the government similarly tried to argue that while petitions submitted by third parties and scientific analyses performed by outside researchers "may be informative as to the views of the parties submitting the petitions, the information casts no light on the operations and activities" of the agencies, and do not show the manner in which the agencies consider or analyze the information in making decisions. 290 F.Supp.2d at 1230. The court disagreed and found a substantial public interest in agency activities … regarding "how well environmental and scientific organizations interact with [the agency]" and the "quality

32

of science" used by the agency. Id. at 1231.  Notably, one of the agency's fee waiver guidelines provided that "[r]ecords developed outside of the government and submitted to or obtained by the Department may relate to the operations and activities of the government if they are informative on how an agency is carrying out its regulatory, enforcement, procurement or other activities that involve private entities." Id. at 1230 (citing 43 C.F.R. § 2.21(a)(2)(i)).

In the instant case, HHS's acquisition of information about VTC usage and technology is undeniably a federal activity.  That HHS researched and gathered this data from the Internet does not make it any less so.  Inasmuch as they were responsive to plaintiff's FOIA request, which defendant concedes, these materials and the brochures/pamphlets submitted to HHS from outside companies were ostensibly "used and/or reviewed" by the agency.  As such, they cast light on the options and considerations that were before by the agency as it operated to design and implement the new hearings system.  The quality, substance, timing, and volume of these materials informs as to the manner in which HHS carried out its administrative duties in this regard.

Defendant argues next that because over 90% of the records that had already been released to plaintiff by that date (May 15, 2006) consisted of documents that were accessible to the public through the Internet or in the Federal Register, they cannot be said to further the public understanding. Def. Ex. 11.  By defendant's own count, only 284 pages (representing only a few actual documents) had been disclosed at that point. Eckert Decl. ¶ 14 & Def. Ex. 9.  Considering that plaintiff's FOIA request yielded 307 responsive documents comprising well over 8,000 pages of information, and considering that HHS and SSA eventually released to plaintiff over

1,159 pages in full, the vast majority of which were <u>not</u> in the public domain, defendant's denial of plaintiff's fee waiver request on the grounds of public availability is particularly unavailing.[12]

Defendant's reliance on <u>Prison Legal News v. Lappin</u>, 436 F.Supp.2d 17 (D.D.C. 2006), to support its public domain thesis is mistaken.  The decision in that case recognized that "The mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding'" <u>Id</u>. at 24 (citing <u>Campbell v. Dep't of Justice</u>, 164 F.3d 20, 36 (D.C.Cir. 1998)).  In its holding, the Court plainly suggests that the availability of information on the Internet might not suffice to meet this threshold. <u>Id</u>. at 25 ("There is a significant difference between locating the requested information in courthouses around the country and on the internet, as opposed to having access to the information in a single document.").  Defendant is quite wrong to assume that an ordinary member of the public can readily locate a particular regulation, provision or report on a government website, especially if the person has no starting point of reference.  Simply because something has a web address[13] does not mean that it is easy to find, as accessibility often requires a certain degree of knowledge.  By the same token, information does not become "public knowledge" simply because it has been published on the Internet.

---

[12] <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 365 F.3d 1108, 1126-27 (D.C.Cir.2004) is not comparable as defendant so claims because **all** of the thousands of pages of non-exempt documents released in that case were in the public domain and the plaintiff offered no indication why it was not reasonable for the court to rely on the released documents. By contrast, Plaintiff Center has given this court ample basis not to rely on the documents released by HHS in adjudicating the fee waiver request.  In addition to the legal arguments herein, the facts show that the published documents represent a very small percentage of the released records, and an even smaller percentage of the total responsive documents.  It also bears mention that the court in that case allowed that the plaintiff "cannot be expected to show that the unreleased documents are not, in fact, publicly available," and may well qualify for a waiver of fees as to those documents.

[13] The fact that defendant pointed out to plaintiff the precise web addresses for the few public documents it had already released is quite irrelevant to the analysis here.

The larger flaw in defendant's analysis here, however, is the utter failure to evaluate the factor in terms of plaintiff's actual request. Indeed, there is no principled distinction between the facts here and those in <u>Judicial Watch 2003</u>, where the Circuit Court squarely rejected the agency's contention that the public availability of at least some of the releasable information negated any significant public benefit from disclosure. 326 F.3d at 1314. In granting the fee waiver, the Court strongly weighed the fact that plaintiff's FOIA request "seeks considerably more" than the public documents. <u>Id</u>. at 1315 (observing that plaintiff requested "correspondence, memoranda, documents, reports, records, statements, audits, lists of names, applications, diskettes, letters, expense logs and receipts, and calendar or diary logs"). <u>See also</u>, <u>Judicial Watch, Inc. v. Dep't. of Transportation</u> ("<u>Judicial Watch 2005</u>"), --- F.Supp.2d ---, 2005 WL 1606915 at *5 (D.D.C. 2005) (granting fee waiver and rejecting agency's argument that non-exempt documents were already publicly available, where plaintiff "requested considerably more information" than had been publicly disclosed, where "[n]othing in the record suggests that the detailed information requested … was already in the public domain," and where "release of the *requested documents* may contribute to the public's knowledge…" (emphasis added)). The FOIA request in the instant case likewise seeks far more than what has been made public, which is illustrated by the fact that defendant is still withholding over 7,000 pages of documents responsive to plaintiff's request for detailed information concerning how the government operated to establish a new hearing system.

Lastly, defendant claims that disclosure will not significantly contribute to public understanding because a small portion of records yet to be released consist of "internal administrative matters and contain no substantive information" and that "[e]ven if records

35

concerning the use of videoconferencing technology and the transfer of the Medicare appeals process were found to meet this standard, the releasable portions of those records are nonetheless sufficiently trivial so as to not meet this public interest test." Def. Ex. 11 & Def. Mem. at 24. Defendant makes exactly the same mistake here that was made in Judicial Watch v. Dep't of Energy 2004, supra,  where the government contended that because the deliberative portions of the records sought would be withheld, releasing the non-exempt portions would not make a significant contribution. 310 F.Supp.2d at 295.  In granting the fee waiver, the Court found that the agency incorrectly focused its inquiry on the value and utility of the expected *disclosure* rather than on the purpose or objective of the plaintiff's *request.* Id.  This and other recent decisions by this Court have firmly established that "'[a] fee waiver request should be evaluated based on the face of the request and the reasons given by the requestor in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure." Id. (quoting Carney v. United States Dept of Justice, 19 F.3d 807, 815 (2d Cir. 1994)). See also, Judicial Watch 2005, supra, 2005 WL 1606915 at *5; Southern Utah Wilderness Alliance, supra, 402 F.Supp.2d at 88-90 (agency improperly denied fee waiver on the grounds that the requested documents with anticipated redactions would not enhance public understanding).  The reasoning behind this is elementary. "It would be contrary to the express provisions of the FOIA to 'invert the burden of proof' and force a plaintiff not only to demonstrate that it satisfies the public interest exception analysis and is entitled to a fee waiver, but also to demonstrate that the defendant agency's contemplated withholdings are not properly claimed." Id. (citing Project on Military Procurement v. Dep't of the Navy, 710 F.Supp. 362, 367 (D.D.C. 1989)).

36

As illustrated above, defendant's analyses of the public interest criteria do not reflect a proper consideration of plaintiff's actual request and the reasons given in support of the waiver. As such, all of defendant's rationales for denying plaintiff's fee waiver request are mere roadblocks and fail to refute plaintiff's strong showing of how its FOIA request benefits the public interest.

### C.  Plaintiff Does Not Have a Commercial Interest in the FOIA Request

Plaintiff set forth in its fee waiver request that it is a well known not-for profit organization that educates and advocates on behalf of Medicare beneficiaries nationwide and that it has no commercial interest in the requested documents. Pls. Ex. C.

Defendant claims that "[b]ecause plaintiff has failed to meet the first part of the two-part fee waiver test, it was unnecessary to address the commercial interest prong of the test." Def. Mem. at 25.  Notwithstanding, defendant did in fact already find that plaintiff was properly classified as a noncommercial requester.  In its interim response to plaintiff's FOIA request, the agency treated the plaintiff as a noncommercial user stating, "There is no charge for FOIA processing services at this time…FOIA requesters in your fee category receive two hours of search time, and the first 100 pages of duplication services, without charge." Pls. Ex. F.  Further representations that plaintiff had been designated as belonging to the "other" fee category of noncommercial requesters were made in defendant's second interim response, its letter of March 20, 2006, and its fee waiver denial decision. Pls. Ex. J & K, Def. Ex. 11.  It is therefore plain that the agency had rendered an initial and specific determination, based upon the information supplied by plaintiff and the very terms of its own FOIA implementing regulation at 45 C.F.R. § 5.41, that the plaintiff was not a commercial requester.

On virtually identical facts, the district court in <u>Institute for Wildlife Protection</u>, <u>supra</u> at 1229-1230, found that the noncommercial interest prong of the public interest fee waiver test had been met based on the agency's designation of requester's fee status as "noncommercial," even though the agency had never issued a formal finding in denying the requester's fee waiver applications.

<u>Conclusion</u>

For the foregoing reasons and the reasons set forth in plaintiff's motion for injunction, plaintiff's motion should be granted. Plaintiff respectfully requests that Defendant's cross-motion for summary judgment be denied, and that Defendant be ordered to produce the responsive documents at issue to the Center at no cost and without further delay.

Respectfully submitted,

_____/s/_____
PATRICIA B. NEMORE
D.C. Bar No. 204446
Center for Medicare Advocacy, Inc.
1101 Vermont Avenue, N.W., Suite 1001
Washington, D.C. 20005
(202) 216-0028

GILL DEFORD
D.C. Bar No. 459280
JUDITH STEIN
BRAD PLEBANI
Center for Medicare Advocacy, Inc.
P.O. Box 350
Willimantic, CT 06226
(860) 456-7790

SALLY HART
Center for Medicare Advocacy, Inc.
100 North Stone Ave., Suite 305

38

Tucson, AZ 85701
(520) 327-9547

Attorneys for Plaintiff

DATED:  October 10, 2006

# EXHIBIT M

| 74 | 5 | 1-page February 28, 2005, 2:04 p.m., email from OGC attorney to CMS staff and OGC attorneys, re. OGC mark-up of draft BIPA questions and answers and draft fact sheet, and attaching 4-page mark-up of draft | Entire document | The withheld material is protected by the deliberative process privilege and attorney-client privilege, 5 U.S.C. § 552(b)(5). The withheld material contains predecisional advice, recommendations, and suggestions, and confidential attorney-client communications re. draft questions and answers document and draft fact sheet submitted to OGC for legal review. A draft is the author's recommendation of what the final document should say. |

# EXHIBIT N

Westlaw.

--- F.Supp.2d ----                                                                Page 1
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Briefs and Other Related Documents

Center For Biological Diversity v. Gutier-rezD.D.C.,2006.Only the Westlaw citation is currently available.

United States District Court,District of Columbia.
CENTER FOR BIOLOGICAL DIVERSITY,
Plaintiff,
v.
Carlos GUTIERREZ, Secretary, Department of Commerce, et al., Defendants.
**Civil Action No. 05-1045 (RMC).**

Aug. 10, 2006.

**Background:** Requester brought Freedom of Information Act (FOIA) action against Department of Commerce and its National Marine Fisheries Service (NMFS). Defendants moved to dismiss one count of the complaint, and the parties filed cross-motions for summary judgment.

**Holdings:** The District Court, Collyer, J., held that:

(1) appeal was untimely;

(2)*Vaughn* index was inadequate for determining applicability of deliberative process exemption; and

(3) delayed responses were not part of pattern and practice of unresponsiveness.

Motion to dismiss granted, and cross-motions for summary judgment granted in part and denied in part.

**[1] Records 326 ☞63**

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases
Exhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under Freedom of Information Act (FOIA), which means that a requester under

FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response. 5 U.S.C.A. § 552.

**[2] Records 326 ☞63**

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases
Although exhaustion of a Freedom of Information Act (FOIA) request is not jurisdictional, failure to exhaust precludes judicial review if [1] the purposes of exhaustion and [2] the particular administrative scheme support such a bar. 5 U.S.C.A. § 552.

**[3] Records 326 ☞63**

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases
Department of Commerce regulation providing that appeals from adverse determinations to Freedom of Information Act (FOIA) had to be received by "5 p.m." Eastern Time on thirtieth day after issuance of initial FOIA determination was not ambiguous, despite the fact the regulation did not provide a specific minute; "5 p.m." had same meaning as "5:00 p.m.". 5 U.S.C.A. § 552; 15 C.F.R. § 4.10(a).

**[4] Records 326 ☞63**

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Requester's failure to file appeal of adverse Freedom of Information Act (FOIA) determination with Department of Commerce by 5 p.m. Eastern Time on thirtieth day after issuance of determination, as required by Department regulation, operated as prudential bar to review of merits of FOIA request for access to various records related to National Marine Fisheries Service's (NMFS) decisions regarding requester's petition for protection of three coral species. 5 U.S.C.A. § 552; 15 C.F.R. § 4.10(a).

**[5] Records 326 ☞65**

326 Records
   326II Public Access
      326II(B) General Statutory Disclosure Requirements
         326k61 Proceedings for Disclosure
            326k65 k. Evidence and Burden of Proof. Most Cited Cases
An agency invoking a Freedom of Information Act (FOIA) exemption bears the burden of establishing its right to withhold evidence from the public. 5 U.S.C.A. § 552.

**[6] Records 326 ☞57**

326 Records
   326II Public Access
      326II(B) General Statutory Disclosure Requirements
         326k53 Matters Subject to Disclosure; Exemptions
            326k57 k. Internal Memoranda or Letters; Executive Privilege. Most Cited Cases
To exempt document from disclosure under Freedom of Information Act (FOIA) under claim of deliberative process privilege, an agency must establish two prerequisites: (1) that the document is "predecisional"-that is, it was generated before the adoption of an agency policy-and (2) that the document is "deliberative"-that is, it reflects the give-and-take of the consultative process. 5 U.S.C.A. § 552(b)(5).

**[7] Records 326 ☞57**

326 Records
   326II Public Access

      326II(B) General Statutory Disclosure Requirements
         326k53 Matters Subject to Disclosure; Exemptions
            326k57 k. Internal Memoranda or Letters; Executive Privilege. Most Cited Cases
To exempt document from disclosure under Freedom of Information Act (FOIA) under claim of deliberative process privilege, an agency must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process; providing only each document's issue date, its author and intended recipient, and the briefest of references to its subject matter will generally be insufficient. 5 U.S.C.A. § 552(b)(5).

**[8] Records 326 ☞62**

326 Records
   326II Public Access
      326II(B) General Statutory Disclosure Requirements
         326k61 Proceedings for Disclosure
            326k62 k. In General; Request and Compliance. Most Cited Cases
*Vaughn* index produced by National Marine Fisheries Service (NMFS) in response to request for records related to NMFS's decisions regarding requester's petition for protection of three coral species, which index explained the withholding of documents on grounds that the requested documents were "predecisional and deliberative", "preliminary recommendations", or that the documents did not "represent a final agency decision", was inadequate for determining whether documents fell within deliberative process exemption under Freedom of Information Act (FOIA). 5 U.S.C.A. § 552(b)(5).

**[9] Records 326 ☞57**

326 Records
   326II Public Access
      326II(B) General Statutory Disclosure Requirements
         326k53 Matters Subject to Disclosure; Exemptions
            326k57 k. Internal Memoranda or Letters; Executive Privilege. Most Cited Cases

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

Drafts are not per se exempt under Freedom of Information Act's (FOIA) deliberative process privilege. 5 U.S.C.A. § 552(b)(5).

**[10]** Records 326 ⚬═62

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k62 k. In General; Request and Compliance. Most Cited Cases
An agency cannot justify withholding an entire document in response to Freedom of Information Act (FOIA) request simply by showing that it contains some exempt material; agencies must specify in detail which portions of the document are disclosable and which are allegedly exempt. 5 U.S.C.A. § 552.

**[11]** Records 326 ⚬═63

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases
Even though a party may have obtained relief as to a specific request under the Freedom of Information Act (FOIA), this will not moot a claim that an agency policy or practice will impair the party's lawful access to information in the future. 5 U.S.C.A. § 552.

**[12]** Records 326 ⚬═63

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k63 k. Judicial Enforcement in General. Most Cited Cases
So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the Freedom of Information Act (FOIA), and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit. 5 U.S.C.A. § 552.

**[13]** Records 326 ⚬═62

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k62 k. In General; Request and Compliance. Most Cited Cases
Exceptional circumstances, so as to allow an agency additional time beyond the statutory twenty days to respond to Freedom of Information Act (FOIA) request, exist when an agency is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the twenty-day time limit, and when the agency can show that it is exercising due diligence in processing the requests. 5 U.S.C.A. § 552(a)(6)(A), (a)(6)(C)(i).

**[14]** Records 326 ⚬═62

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k62 k. In General; Request and Compliance. Most Cited Cases
When agencies are making good-faith efforts and exercising due diligence in processing requests and appeals on a first-in, first-out basis, courts generally find that exceptional circumstances excuse any delays in responding to Freedom of Information Act (FOIA) requests. 5 U.S.C.A. § 552(a)(6)(C)(i).

**[15]** Records 326 ⚬═62

326 Records
    326II Public Access
        326II(B) General Statutory Disclosure Requirements
            326k61 Proceedings for Disclosure
                326k62 k. In General; Request and Com-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)

**(Cite as: --- F.Supp.2d ----)**

pliance. Most Cited Cases

National Marine Fisheries Service's (NMFS) delayed responses to multiple Freedom of Information Act (FOIA) requests made by same requester were not part of pattern and practice of unresponsiveness in violation of the Administrative Procedure Act (APA); NMFS was reasonably diligent in handling the requests, given the number of FOIA requests received in the same calendar year, NMFS repeatedly released responsive documents as they were identified, and NMFS responded to requester's most recent request within statutory time limit. 5 U.S.C.A. §§ 552(a)(6)(C)(i), 706(1), (2)(A).

Brent R. Plater, Justin Augustine, San Francisco, CA, for Plaintiff.

John C. Truong, U.S. Attorney's Office, Washington, DC, for Defendants.

### *MEMORANDUM OPINION*

COLLYER, District Judge.

**\*1** The Center for Biological Diversity ("Center"), a nonprofit corporation that endeavors to protect imperiled species and their habitats, submitted three requests to the National Marine Fisheries Service ("NMFS")[FN1] for information about three coral species for which the Center had petitioned for protection as endangered species. NMFS released some documents and withheld or redacted others. The Center sues under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, alleging that NMFS acted too slowly and withheld information it should have released.

In the meantime, NMFS completed its study of the coral species and concluded that two of the species for which the Center petitioned, *Acropora palmata* (Elkhorn Coral) and *A. cervicornis* (Staghorn Coral), warranted listing as threatened species. A proposed rule to that effect was published in the Federal Register on May 9, 2005.[FN2] Success on its petition to list these species as endangered has not, however, mooted the Center's suit. Indeed, its goal here is broader: The Center hopes the requested documents will lend insight into NMFS's decisionmaking process, so that it might more effectively respond to future NMFS actions. *See* Am. Compl. ¶¶ 21, 51.

NMFS's motion to dismiss, and the parties' cross-motions for summary judgment, are fully briefed and ripe for decision. As explained below, the Court will grant NMFS's motion to dismiss, and will grant in part and deny without prejudice in part its motion for summary judgment. The Court will deny without prejudice the Center's motion for summary judgment.

### I. BACKGROUND

The Center submitted a formal administrative petition to NMFS on March 3, 2004, seeking to protect Elkhorn Coral, Staghorn Coral, and *A. prolifera* (Fused-Staghorn Coral) under the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531-1544. Am. Compl. ¶ 47. On June 23, 2004, NMFS announced that listing the coral as endangered may be warranted. *Id.* ¶ 48. As part of its review, NMFS solicited public comments. The comment period ended on August 23, 2004.

### A. Request 557

To obtain copies of the public comments, the Center submitted a FOIA request to NMFS on August 27, 2004. NMFS labeled this request FOIA Request # 2004-00557 ("Request 557"). By letter dated October 15, 2004, and received on October 22, 2004, *see* Am. Compl. ¶ 54, NMFS released 223 pages of records but redacted contact information from three of the comments received electronically, including one submitted by the Center itself. *See* Defs.' Mot. Ex. C. NMFS invoked FOIA Exemption 6 to justify the redactions.[FN3]

The Center appealed NMFS's decision to redact contact information from the three emails, arguing that Exemption 6 "does not provide authority to withhold the contact information of individuals who submitted public comments." Defs.' Mot. Ex. C (emphasis deleted). Its appeal, submitted electronically, was received by NMFS on November 15, 2004, at 5:12 p.m. Eastern Time. *Id.* Under an amended regulation published by the Department of Commerce on August 12, 2004, a FOIA requester "may file a written appeal or an electronic appeal, which *must be received* by the Office of General Counsel during normal business hours *(8:30 a. m. to 5 p.m., Eastern Time,*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Monday through Friday) within thirty calendar days of the date of the written denial.... Written or electronic appeals arriving after normal business hours will be deemed received on the next normal business day." 15 C.F.R. § 4.10(a) (emphasis added).[FN4] Because the Center's appeal was received at 5:12 p.m., it was deemed filed on the next business day and was denied as untimely.

**B. Request 593**

**\*2** The Center filed two further FOIA requests on October 1, 2004,[FN5] which the Court refers to as Requests 593 and 594. Request 593 sought certain documents related to Carribean Acroporids from the files of Mrs. Jennifer Ann Moore (née Jacukiewicz). In response to Request 593, on January 9, 2005, NMFS released 397 pages of records and withheld 16 documents in whole or in part under FOIA Exemption 5, the deliberative process privilege.[FN6] The Center appealed this decision on February 16, 2005. On July 8, 2005, NMFS responded to the appeal of Request 593 by releasing one additional document in full and portions of two additional documents. It continued to withhold or redact the 15 remaining documents, one on the basis of attorney-client privilege.

Of those documents withheld entirely:

a. Document # 1 is a September 23, 2003, email from Stephania Bolden, a NOAA employee, to Cheryl Scannell, a NOAA attorney, with copies to other NOAA employees. The email constituted a "request for legal advice from a NMFS researcher to a NOAA attorney." Defs.' Mot. Ex. B, *Vaughn*[FN7] Index ("Index") at 1.

b. Document # 2 is a May 25, 2001[sic], four-page draft headed, "Assessment of Endangered Species Act (ESA) Candidate Acroporid Coral Populations in U.S. Waters," written by an unidentified NOAA employee, with handwritten notes on the first page. It is described as "preliminary recommendations by NOAA employees for NOAA decisionmakers." NMFS asserts that the factual information in the document is also protected as part of the deliberative process because it was "selectively chosen as part of the decisionmaking process" and constitutes "an integral

part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations." According to NMFS, the document advised "on how NOAA should go about developing and implementing a program to inventory, assess, and monitor U.S. coral reef ecosystems." *Id.* at 2.

c. Document # 3 is a November 12, 2003, one-page draft titled "Overview-Atlantic *Acropora* Status Review Suggested Format," written by an unidentified NOAA employee, attached to an email from Andy Bruckner to Mrs. Moore. It "consists of preliminary recommendations ... which were part of Commerce's deliberations concerning decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process." *Id.* at 2-3.

d. Document # 4, dated December 15, 2003, is an 18-page attachment to an email from Stephania Bolden to Andy Bruckner, and is a draft titled "Atlantic Acropora Status Review" written by an unidentified NOAA employee. It is described as "preliminary recommendations by NOAA employees for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on ESA listings." *Id.* at 3.

e. Document # 5 is undated and has no title. It consists of 36 pages and was described as a "status review skeleton" in the cover email dated February 11, 2004, from Stephania Bolden to Mrs. Moore and other NMFS employees and consultants. It is described as "preliminary recommendations by NOAA employees and consultants for NOAA decisionmakers, who were part of NOAA's deliberations concerning decisions on ESA listings." *Id.* at 4. It was designed as "an integral part of the deliberations undertaken by Commerce in determining how to structure the ESA assessment of candidate acroporid populations." *Id.* at 4-5.

**\*3** The declaration of Beverly J. Smith, an NMF S analyst, further states that Documents # 2-5 "consist[ ] of internal, NOAA predecisional deliberative opinions and recommendations concerning whether, *inter alia,* Staghorn coral, Elkhorn coral, and other coral species should be designated as threatened or en-

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

dangered species for placement on the Endangered Species list, how to structure the deliberations, what to take into account, and what should go into a final decision." Smith Decl. ¶ 8.

Of those documents withheld in part-all emails, some of which contained attachments-the Index provides two kinds of answers, depending on whether (i) the email merely communicated between NOAA employees, or (ii) non-NOAA consultants were copied on the email. This generic language (with the language referring to consultants in brackets) reads virtually identically for all responses:

The withheld portions consist of preliminary recommendations by NOAA employees [and consultants] for NOAA decisionmakers, which were part of Commerce's deliberations concerning decisions on how to structure the Atlantic *Acropora* status review and what should be included in the process. [The consultants were providing opinions and recommendations to NOAA and had no personal stake in the outcome of the decisionmaking process or the final decision.] The withheld portions are predecisional and deliberative. Release would discourage open, frank discussions on how NOAA should go about developing and implementing a program to inventory, assess, and monitor U.S. coral reef ecosystems. The redacted portions are withheld under [the] (b)(5) deliberative process privilege and do not represent a final agency decision the matter contained therein.

*See, e.g.,* Index at 9. In one format or the other, this paragraph is used by NMFS to explain redactions from:

f. Document # 6, a one-page attachment to a September 26, 2003, email from Mrs. Moore to other NOAA employees and consultants, titled "Atlantic *Acropora* Biological Review Team Update Sheet." *Id.* at 5-6.

g. Document # 7, an August 20, 2003, two-page email from David Bernhart to Stephania Bolden. *Id.* at 6.

h. Document # 8, a October 6, 2003, one-page email from Mrs. Moore to Georgia Cranmore, a NOAA employee. *Id.* at 6-7.

i. Document # 9, a November 7, 2003, one-page

email from Stephania Bolden to Mrs. Moore. *Id.* at 7.

j. Document # 10, a December 1, 2003, four-page email from Stephania Bolden to Mrs. Moore. *Id.* at 7-8.

k. Document # 11, a one-page email from Margaret Miller to Stephania Bolden and Andy Bruckner, dated December 1, 2003. *Id.* at 8-9.

l. Document # 12, a one-page email from Iliaca Balms to Stephania Bolden, dated December 10, 2003. *Id.* at 9.

m. Document # 13, a one-page email, dated December 11, 2003, from Stephania Bolden to J. Porter. *Id.* at 9-10.

n. Document # 14, a December 11, 2003, email from Stephania Bolden to Mrs. Moore, consisting of two pages. *Id.* at 10.

**\*4** o. Document # 15, dated January 9, 2004, a one-page email from Jennifer Lee to Stephania Bolden. *Id.* at 11.

### C. Request 594

Request 594 sought all documents received by NMFS concerning its selection of members for the Biological Review Team that evaluated the petition to place the three coral species on the endangered species list. NMFS responded on October 19, 2004, by releasing all responsive records-16 pages-in their entirety. Smith Decl. ¶ 11. The Center appealed on the basis that the search was inadequate. *Id.* Over a period of months, as "new information became available to NMFS as to which offices and employees might possess responsive records," *id.* ¶ 12, NMFS identified and released additional records to the Center. Of 28 additional pages of information so located, NOAA released 23 full pages on January 19, 2005. *Id.* ¶ 12(c); Am. Compl. ¶ 72. NMFS finally responded to the appeal on July 29, 2005, releasing an additional 15 pages. Of those, 12 pages (comprising 7 documents) were partially withheld on the following basis:

The withheld portions consist of preliminary recommendations by NOAA employees for NOAA de-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

cisionmakers, which were part of Commerce's deliberations concerning decisions on how to select and establish a Biological Review Team (BRT) to recommend potential listing under the Endangered Species Act as part of Commerce's status review. The withheld portions are precedisional and deliberative. Release would discourage open, frank discussions on how NOAA should go about developing and implementing a BRT to formulate recommendations for a Commerce status review on species of coral. The redacted portions are withheld under [the] (b)(5) deliberative process privilege and do not represent a final agency decision on the matter contained therein.

Index at 11-16. Specifically, this explanation is proffered for:

a. Document # 16, a June 24, 2004, two-page email from Stephania Bolden to Margaret Miller. *Id.* at 11-12.

b. Document # 17, an August 7, 2003, two-page email from Stephania Bolden to Marta Nammack. *Id.* at 12.

c. Document # 18, an August 27, 2003, one-page email from Stephania Bolden to Mrs. Moore (two paragraphs of which were also withheld as nonresponsive). *Id.* at 12-13.

d. Document # 19, a March 15, 2004, one-page email from Stephania Bolden to Mrs. Moore and other NOAA employees, federal government employees, and consultants. *Id.* at 13-14.

e. Document # 20, an April 28, 2004, two-page email from Stephania Bolden to Mrs. Moore and other NOAA employees, federal government employees, and consultants.[FN8] *Id.* at 14-15.

f. Document # 21, a May 3, 2004, two-page email from David Bernhart to Andy Bruckner and Mrs. Moore. *Id.* at 15.

g. Document # 22, a May 12, 2004, two-page email from Andy Bruckner to Stephania Bolden. *Id.* at 15-16.

**D. This Action**

The Center filed a Complaint on May 24, 2005, and a First Amended Complaint on August 5, 2005. Count I alleges that NMFS improperly relied on Exemption 6 in redacting commenters' contact information in response to Request 557. Counts II and III allege that NMFS has failed to establish that Exemption 5 applies to the withheld or redacted documents identified as responsive to Requests 593 and 594. Counts IV and V allege that NMFS delays in processing the Center's FOIA requests and appeals are unreasonable, and constitute a pattern and practice of unresponsiveness in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), (2)(A).

## II. LEGAL STANDARDS

### A. Motion to Dismiss

**\*5** The Government moves to dismiss Count I pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Under Rule 12(b)(1), which governs motions to dismiss for lack of subject matter jurisdiction, a plaintiff bears the burden of establishing by a preponderance of the evidence that the Court possesses jurisdiction. *See Shekoyan v. Sibley Int'l Corp.*, 217 F.Supp.2d 59, 63 (D.D.C.2002); *Pitney Bowes Inc. v. U.S. Postal Serv.*, 27 F.Supp.2d 15, 19 (D.D.C.1998). It is well established that, in deciding a motion to dismiss for lack of subject matter jurisdiction, a court is not limited to the allegations set forth in the complaint, "but may also consider material outside of the pleadings in its effort to determine whether the court has jurisdiction in the case." *Alliance for Democracy v. Fed. Election Comm'n*, 362 F.Supp.2d 138, 142 (D.D.C.2005); *see Lockamy v. Truesdale*, 182 F.Supp.2d 26, 30-31 (D.D.C.2001).

Although not invoked by the Government, Federal Rule of Civil Procedure 12(b)(6) is also relevant in this context. A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether the plaintiffs have properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff need not plead the elements of a *prima*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*facie* case in the complaint. *See Sparrow v. United Air Lines, Inc.,* 216 F.3d 1111, 1113 (D.C.Cir.2000). In deciding a 12(b)(6) motion, the Court "may only consider the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao,* 226 F.Supp.2d 191, 196 (D.D.C.2002) (citation omitted).

### B. Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Diamond v. Atwood,* 43 F.3d 1538, 1540 (D.C.Cir.1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the non-moving party's favor and accept the nonmoving party's evidence as true. *Liberty Lobby,* 477 U.S. at 255, 106 S.Ct. 2505. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252, 106 S.Ct. 2505. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

**\*6** In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton,* 164 F.3d 671, 675 (D.C.Cir.1999); *Harding v. Gray,* 9 F.3d 150, 154 (D.C.Cir.1993). Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Greene,* 164 F.3d at 675. If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249-50, 106 S.Ct. 2505 (internal citations omitted).

### III. DISCUSSION

NMFS argues that the Court lacks jurisdiction over Request 557 because the Center, by filing a late appeal, failed to exhaust its administrative remedies. As to Requests 593 and 594, NMFS has submitted a *Vaughn* Index ("Index") and the Declaration of Beverly J. Smith ("Smith Decl.") to explain its reliance on Exemption 5 in withholding all or parts of documents responsive to the Center's FOIA requests. The Center claims that its appeal of Request 557 was timely filed, and argues that NMFS has failed to provide suitable information, in its *Vaughn* Index or otherwise, from which the Center or the Court can determine whether its reliance on Exemption 5 is legitimate.

### A. Request 557

[1][2] "[E]xhaustion of administrative remedies is a mandatory prerequisite to a lawsuit under FOIA, which means that a requester under FOIA must file an administrative appeal within the time limit specified in an agency's FOIA regulations or face dismissal of any lawsuit complaining about the agency's response." *Wilbur v. CIA,* 355 F.3d 675, 676 (D.C.Cir.2004). "Although exhaustion of a FOIA request is not jurisdictional because the FOIA does not unequivocally make it so, still as a jurisprudential doctrine, failure to exhaust precludes judicial review if [1] the purposes of exhaustion and [2] the particular administrative scheme support such a bar." *Id.* at 677 (citations and internal quotation marks omitted).FN9 The Center argues that its appeal was timely and, even if not, that the purposes of exhaustion would not be served by barring its claim.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

### 1. Timeliness

[3] Without doubt, the Department of Commerce adopted a regulation on August 12, 2004, that specifically allowed the filing of electronic appeals but required that all appeals-electronic or written-be received no later than 5 p.m. Eastern Time on the 30th day after issuance of an initial FOIA determination. 15 C.F.R. § 4.10(a); 69 Fed.Reg. 49,783, 49,784 (Aug. 12, 2004). Any "electronic appeal arriving after normal business hours will be deemed received on the next normal business day." 15 C.F.R. § 4.10(a). The Center's appeal arrived electronically at 5:12 p.m. Eastern Time on the 30th day.[FN10] Accordingly, it was treated as if it were filed on the next business day and denied as untimely. NMFS argues that this late filing constitutes a failure to exhaust administrative remedies, and moves to dismiss for lack of subject matter jurisdiction.

*7 The Center advances an argument only a lawyer could love: "The regulation states that the appeal must be received by 5 p.m. Eastern time, not 5:00 PM Eastern time. By failing to provide a specific minute, such ambiguity should be resolved in the Center's favor." Pl.'s Opp'n at 11-12 (footnote omitted). The Center goes on to suggest that if the Court "rounds down, as should be the case, 5:12 falls within NMFS'[s] 5 p.m. requirement, and therefore the appeal was not even 12 minutes late." Id. at 12 n. 2. The Court is not persuaded. In this context, at least, "5 p.m." and "5:00 PM" have the same meaning and are interchangeable, even if the latter is slightly more specific. There is no ambiguity to interpret.

### 2. Purposes of Exhaustion

[4] The Center next relies on Wilbur v. CIA, 355 F.3d 675, 678 (D.C.Cir.2004), to support its assertion that "just because an agency claims a FOIA appeal is late, as NMFS does here, does not preclude subject matter jurisdiction nor does it prevent the court from deciding the merits of the appeal." Pl.'s Reply at 2-3. Although the Center correctly observes that under FOIA exhaustion is not jurisdictional but prudential, and that under Wilbur a late agency appeal does not necessarily preclude a court from reaching the merits, its argument founders on the suggestion that the ends

of exhaustion have been achieved here despite its tardy filing.

In Wilbur, the plaintiff's appeal of the CIA's denial of his FOIA request was filed more than four years after the deadline specified by the applicable regulation. Wilbur, 355 F.3d at 676. "Nevertheless, the CIA accepted the appeal, processed it, reviewed the initial determination and issued a final decision upholding the agency's prior determination." Id. at 677. "Under these circumstances," the Wilbur court held, "the policies underlying the exhaustion requirement ha[d] been served." Id. at 677. The circumstances of the instant matter differ from Wilbur in important respects. First, of course, NMFS did not accept the Center's tardy appeal; thus, it has had no occasion to consider the very issue that the Center raises here: whether NMFS improperly invoked FOIA Exemption 6 to redact materials it released in response to Request 557. See Hidalgo v. FBI, 344 F.3d 1256, 1259 (D.C.Cir.2003). The exhaustion requirement exists to provide the agency " 'an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.' " Wilbur, 355 F.3d at 677 (quoting Oglesby v. U.S. Dep't of the Army, 920 F.2d 57, 61 (D.C.Cir.1990)). To ignore that requirement here would frustrate this policy by "cut[ting] off the agency's power to correct or rethink initial judgments or errors." Hidalgo, 344 F.3d at 1260 (quoting Oglesby, 920 F.2d at 64).

The Center offers no persuasive reason to avoid this prudential bar. It complains that the regulation requiring all appeals to be received by 5 p.m. was established without notice and comment and was published on August 12, 2004, "mere days" before the Center submitted Request 557 on August 27, 2004. FN11 But the Center filed its appeal on November 15, 2006-more than two months after the regulation was changed. That is the relevant time period, not the "mere days" between the publishing of the regulations and the submission of Request 557. The Center also objects that the October 15, 2004, letter from NMFS responding to Request 557 failed to mention the 5 p.m. Eastern Time deadline explicitly, referencing only the 30-day appeal period. Pl.'s Opp'n at 12 n. 3; Pl.'s Reply at 3. But the letter specifically advised the Center that its appeal could be filed elec-

tronically, and drew the Center's attention to the regulation by providing a specific citation to "Title 15, Code of Federal Regulations, Section 4.10(a)." Def.'s Mot. Ex. C at 2. Since the Center obviously knew that electronic filing was now allowed, the Court infers that the Center knew that a regulatory change had been made and simply failed to check the regulation to ascertain the complete scope of the change.

*8 Had the Center's appeal actually been filed mere days after NMFS published its new timeliness requirements for FOIA appeals, the Court might be more sympathetic. But under these circumstances, it finds that NMFS set a legitimate deadline, the Center failed to meet that deadline, and NMFS simply respected its regulations and declined to review the appeal. To now ignore that deadline would frustrate the purposes of exhaustion. The Court will therefore grant NMFS's motion to dismiss Count I for failure to exhaust administrative remedies, but pursuant to Rule 12(b)(6), rather than Rule 12(b)(1). *Hidalgo*, 344 F.3d at 1260.[FN12]

**B. Adequacy of the *Vaughn* Index**

[5][6][7] "An agency invoking a FOIA exemption bears the burden of establishing its right to withhold evidence from the public." *Senate of Puerto Rico v. U.S. Dep't of Justice,* 823 F.2d 574, 585 (1987) (internal quotation marks and brackets omitted). To assert successfully the deliberative process privilege in Exemption 5, an agency must establish two prerequisites: "[1] that the document is 'predecisional'-whether it was generated *before* the adoption of an agency policy-and [2] [that] the document is 'deliberative'-whether it reflects the give-and-take of the consultative process." *Id.* (quoting *Coastal States Gas Corp. v. Dep't of Energy,* 617 F.2d 854, 866 (D.C.Cir.1980)). Moreover, it "must establish what deliberative process is involved, and the role played by the documents in issue in the course of that process." *Id. at 585-86* (quoting *Coastal States, 617 F.2d at 868).* Generally, providing only "each document's issue date, its author and intended recipient, and the briefest of references to its subject matter ... will not do." *Id. at 585.*

**1. Request 593**

[8] The Center attacks the boilerplate nature of NMFS's explanations for its application of Exemption 5 for all documents withheld in whole or in part that were requested in Request 593. The Court agrees. The nature of the explanations in the *Vaughn* Index are so imprecise that they offer no way for the Court independently to assess NMFS's reliance on Exemption 5. *See Oglesby,* 79 F.3d at 1180-81 (requiring agencies to itemize each document and explain in detail the connection between the information withheld and the exemption claimed); *Senate of Puerto Rico,* 823 F.2d at 584 (requiring an agency to supply enough information "so that a reviewing court can sensibly determine whether each invocation of deliberative process privilege ... is properly grounded"); *Judicial Watch Inc. v. USPS,* 297 F.Supp.2d 252, 260 (D.D.C.2004) ("[A]n agency's affidavit must correlate facts in or about each withheld document with the elements of the privilege.")

[9] NMFS's repeated refrain that the withheld documents are "predecisional and deliberative" "preliminary recommendations" that "would discourage open, frank discussions" and "do not represent a final agency decision" is nothing more than perfunctory legalese. Such "conclusory assertions of privilege will not suffice to carry [an] agency's burden." *Senate of Puerto Rico,* 823 F.2d at 585 (internal quotation marks omitted). For the documents withheld in their entirety (Documents # 1-5), NMFS references little more than their titles, stating vaguely that each discusses "how to structure the ESA assessment of candidate acroporid populations" and "how the NOAA should go about developing a program to inventory, assess, and monitor coral reef ecosystems." Index at 2-4. For those withheld in part (Documents # 6-15), the Index is even more spare, generally describing each as an "e-mail" without providing further context. This is insufficient to establish "the *role* played by the documents in issue in the course of [the deliberative] process." *Senate of Puerto Rico,* 823 F.2d at 585-86 (emphasis added). Likewise, that the Index refers to these documents as drafts solves little, for although the deliberative process privilege surely extends to drafts, they are not per se exempt. *Arthur Andersen & Co. v. IRS,* 679 F.2d 254, 257-58 (D.C.Cir.1982); *Judicial Watch,* 297 F.Supp.2d at

--- F.Supp.2d ----
Page 11
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)

**(Cite as: --- F.Supp.2d ----)**

261.

**\*9** Moreover, although the Index names the senders and recipients of each document, neither it nor any of NMFS's other submissions clarifies the positions of those players in the agency hierarchy, leaving it impossible for the Court to determine whether the withheld documents are legitimately "part of a clear 'process' leading to a final decision on the issue." *Coastal States,* 617 F.2d at 868. Indeed, it seems passing strange that NMFS would remain in a "preliminary" stage for deciding how "to structure the ESA assessment" of the coral from May 2003 to February 2004, when NMFS announced in June 2004 that listing the coral as endangered may be warranted and provided a short comment period.

051 Extra cent-Y found within cent-Y markup.

[10] Finally, at least for the documents withheld in their entirety, NMFS has failed to establish that they contain no segregable information that might be disclosed. FOIA's focus "is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material." *Kimberlin v. Dep't of Justice,* 139 F.3d 944, 950 (D.C.Cir.1998) (quoting *Mead Data Cent, Inc. v. U.S. Dep't of the Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977)). *"Vaughn* itself requires agencies to specify in detail which portions of the document are disclosable and which are allegedly exempt. A submission that does not do that does not even qualify as a *Vaughn* index." *Id.* (citations and internal quotation marks omitted). The most conspicuous failures in this regard are Documents # 4 and # 5, an 18-page "status review" and a 36-page "status review skeleton" (whatever that means). But there is no attempt at a segregability analysis for *any* document, whether withheld or redacted. *Billington v. U.S. Dep't of Justice,* 233 F.3d 581, 586 (D.C.Cir.2000) (remanding for segregability findings on redacted documents). Raising the issue *sua sponte,* as it must, the Court reminds NMF S that the "segregability requirement limits claims of exemption to discrete units of information; to withhold an entire document, all units of information in that document must fall within a statutory exemption." *Id.; see also Trans-Pacific Policing Agreement v. U.S. Customs Serv.,* 177 F.3d 1022, 1027 (D.C.Cir.1999) ("It

has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").

To be clear, the Court does *not* rule that any of the documents or portions of documents withheld in response to Request 593 are ineligible for protection under Exemption 5; rather, it finds the *Vaughn* Index inadequate for making that determination. *See Senate of Puerto Rico,* 823 F.2d at 587. For this reason, both NMFS's and the Center's motions for summary judgment on Count II will be denied without prejudice.

**2. Request 594**

The Center also challenges NMFS's explanations for its reliance on Exemption 5 for withholding portions of seven documents (Documents # 16-22) released in response to Request 594. With respect to these documents, each of which is an email sent between August 7, 2003, and June 24, 2004, the Index is even less precise. Omitting most of the boilerplate, they are invariably described as containing "preliminary recommendations ... on how to select and establish a Biological Review Team." Index at 11-16; Smith Decl. ¶¶ 16-22. For the reasons explained above for Request 593, NMFS's *Vaughn* Index is also insufficient as to Request 594.

**\*10** The parties' cross-motions for summary judgment on Count III will likewise be denied without prejudice.

**C. Timeliness of NMFS Responses to Requests and Appeals**

The Center lastly assails as unreasonable NMFS's delays in processing its FOIA requests and appeals, contending that they establish a pattern and practice of unresponsiveness in violation of the Administrative Procedure Act, 5 U.S.C. § 706(1), (2)(A). The Center perceives the necessary pattern because the response to Request 557 "was almost two weeks late," Request 593 was answered "fifty days late," and the answer to Request 594, "while it was received within 20 days, was inadequate because it failed to provide many responsive documents." Pl.'s Reply at 8. "[E]ven more egregious," it argues, was the handling of the Center's appeals, which were 98 working days

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

late for Request 593 and 173 working days late for Request 594. *Id.*

### 1. Mootness

[11][12] As an initial matter, NMFS suggests that the Center's untimeliness claims have been mooted by NMFS's subsequent disclosure of all nonexempt responsive material in its possession. Defs.' Mot. at 19-20. As the Court has already indicated, however, NMFS's *Vaughn* Index is not adequate for the Court to verify that assertion. Moreover, the law of the Circuit is clear:

[E]ven though a party may have obtained relief as to a *specific request* under the FOIA, this will not moot a claim that an agency *policy or practice* will impair the party's lawful access to information in the future....

... So long as an agency's refusal to supply information evidences a policy or practice of delayed disclosure or some other failure to abide by the terms of the FOIA, and not merely isolated mistakes by agency officials, a party's challenge to the policy or practice cannot be mooted by the release of the specific documents that prompted the suit.

*Payne Enterprises Inc. v. United States,* 837 F.2d 486, 491 (D.C.Cir.1988). Accordingly, the Court rejects NMFS's argument that Counts IV and V are moot.

### 2. Timeliness

[13][14] FOIA recognizes that agencies may take longer than the statutory twenty days to answer requests or rule on appeals when "exceptional circumstances exist and ... the agency is exercising due diligence in responding to the request." 5 U.S.C. § 552(a)(6)(C)(i). Exceptional circumstances exist when an agency "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress, when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A), and when the agency can show that it 'is exercising due diligence' in processing the requests." *Open America v. Watergate Special Prosecution Force,* 547 F.2d 605, 616 (D.C.Cir.1976). Exceptional circumstances do

not include delays stemming from "a predictable agency workload of requests ... unless the agency demonstrates reasonable progress in reducing its backlog of pending requests." 5 U.S.C. § 552(a)(6)(C)(ii). "Reasonable progress" is affected, of course, by the number of requests for information and the number of appeals, the agency's serious attention to its FOIA obligations, and the budget allocated by Congress. When agencies are making good-faith efforts and exercising due diligence in processing requests and appeals on a first-in, first-out basis, courts generally find that exceptional circumstances excuse any delays. *See Open America,* 547 F.2d at 616; *Ohaegbu v. FBI,* 936 F.Supp. 7, 8 (D.D.C.1996).

*11 [15] The Court finds that no pattern or practice has been established on this record. NMFS was reasonably diligent in handling the Center's requests, given the number of FOIA requests received in 2005(213), the number being processed at the same time when Requests 593 and 594 were filed (24), and its repeated release of responsive documents as they were identified. Despite its full plate, NMFS responded to the Center's most recent request, Request 594, within 20 days; the fact that further documents were later released as they were identified as responsive to that request demonstrates not dilatory conduct but the serious attention NMFS gives to its FOIA obligations.

Due to the increased volume of FOIA requests received by NMFS and the agency's good-faith efforts in completing such requests, NMFS meets the *Open America* exceptional circumstance standard, rendering the delay in the processing of FOIA requests acceptable.

### IV. CONCLUSION

Because the Center failed to exhaust its administrative remedies by filing a timely appeal of Request 557, NMFS's motion to dismiss Count I will be granted. Because the *Vaughn* Index and Smith Declaration fail to describe adequately the documents withheld in whole or in part in response to Requests 593 and 594, the parties' motions for summary judgment will be denied without prejudice as to Counts II and III. And because the Center has failed to establish a

--- F.Supp.2d ----                                                    Page 13
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

pattern or practice of failing to handle FOIA requests and appeals without diligence or good faith, summary judgment will be granted to NMFS on Counts IV and V.

A memorializing order accompanies this memorandum opinion.

### *ORDER*

For the reasons stated in the Memorandum Opinion filed concurrently herewith, it is hereby

**ORDERED** that Defendants' Motion to Dismiss [Dkt. # 11] is **GRANTED;** and it is

**FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Dkt. # 11] is **GRANTED** in part and **DENIED** without prejudice in part; and it is

**FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Dkt. # 14] is **DENIED** without prejudice; and it is

**FURTHER ORDERED** that Counts I, IV, and V of Plaintiff's First Amended Complaint are **DISMISSED;** and it is

**FURTHER ORDERED** that the parties shall confer and jointly submit to the Court, no later than **August 25, 2006,** a proposed schedule to govern further proceedings in this matter.

**SO ORDERED.**

> FN1. NMFS is a component of the National Oceanic and Atmospheric Administration ("NOAA"), which in turn is a component of the Department of Commerce, whose Secretary, Carlos Gutierrez, is named as a Defendant in his official capacity. Also named as Defendants are NMSS itself and its Assistant Administrator for Fisheries, William T. Hogarth.

> FN2. *See* 70 Fed.Reg. 24,359. The coral which are the focus of the Center's interest do not play a role in the instant dispute; the Court mentions the NMFS determination immediately so as not to keep the reader in

suspense.

> FN3. Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

> FN4. Prior to August 12, 2004, the FOIA regulations for the Department of Commerce required "a written appeal ... received ... within thirty calendar days" without reference to filing an electronic appeal. See 15 C.F.R. § 4.10(a) as it existed prior to August 12, 2004.

> FN5. Although these requests were dated October 1, 2004, they were received on September 30, 2004. Smith Decl. ¶¶ 4, 9. This discrepancy makes no difference here.

> FN6. Exemption 5 covers "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).

> FN7. *Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir.1973). "The *[Vaughn]* 'Index' usually consists of a detailed affidavit [submitted by a government agency] with the purpose of 'permit[ting] the court system [to] effectively and efficiently evaluate the factual nature of disputed information.' " *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 149 n. 2, 110 S.Ct. 471, 107 L.Ed.2d 462 (quoting *Vaughn,* 484 F.2d at 826). The *Vaughn* Index is Exhibit B to the Defendants' Motion.

> FN8. The Index adds, as to Documents # 19 and # 20, that the consultants were providing opinions and recommendations and had no personal interest in the outcomes. *Id.*

> FN9. As to the latter prong, it is settled that "FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Hidalgo v. FBI,* 344 F.3d 1256, 1259

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----                                                                                    Page 14
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)
**(Cite as: --- F.Supp.2d ----)**

(D.C.Cir.2003); *see also* Wilbur v. CIA, 355
F.3d 675, 677 (D.C.Cir.2004).

FN10. As the Center concedes, the 30-day
period is calculated from October 15,
2004-the date NMFS responded to Request
557, not the date that the Center received
that response. Am. Compl. ¶ 54. That first
day, however, is excluded from the computa-
tion. Fed.R.Civ.P. 6(a) ("[T]he day of the
act ... from which the designated period of
time begins to run shall not be included.").
The 30th day, a Sunday, is also excluded. *Id.*
("The last day of the period so computed
shall be included, unless it is ... a Sunday, ...
in which event the period runs until the end
of the next day...."). Accordingly, as all
parties agree, the 30th day for Rule 6(a) pur-
poses is November 15, 2004.

FN11. Before August 12, 2004, no similar
requirement existed that appeals be received
by a time certain on the due date. *Compare*
69 Fed.Reg. 49,783, 49,784 (Aug. 12, 2004)
*with* 66 Fed.Reg. 65,631, 65,636 (Dec. 20,
2001).

FN12. Accordingly, the Court does not
reach the merits of the Center's challenge to
NMFS's reliance on Exemption 6. *See*
Hidalgo, 344 F.3d at 1258 n. 5.

D.D.C.,2006.
Center For Biological Diversity v. Gutierrez
--- F.Supp.2d ----, 2006 WL 2329330 (D.D.C.)

Briefs and Other Related Documents (Back to top)

• 2005 WL 3439284 (Trial Motion, Memorandum
and Affidavit) Plaintiff's Reply in Support of its
Cross-Motion for Summary Judgment and Opposi-
tion to Defendants' Motion to Dismiss, Or in the Al-
ternative, for Summary Judgment (Nov. 29, 2005)
Original Image of this Document (PDF)
• 2005 WL 3439282 (Trial Motion, Memorandum
and Affidavit) Defendant's Response to Plaintiff's
Combined Cross Motion for Summary Judgment and
Opposition to Motion to Dismiss Or, in the Alternat-
ive, for Summary Judgment (Nov. 21, 2005) Original

Image of this Document (PDF)
• 2005 WL 3439286 (Trial Motion, Memorandum
and Affidavit) Defendant's Response to Plaintiff's
Combined Cross Motion for Summary Judgement
and Reply to Motion to Dismiss Or, in the Alternat-
ive, for Summary Judgment (Nov. 21, 2005) Original
Image of this Document (PDF)
• 2005 WL 3174549 (Trial Motion, Memorandum
and Affidavit) (Oct. 25, 2005) Original Image of this
Document (PDF)
• 2005 WL 3174545 (Trial Motion, Memorandum
and Affidavit) (Oct. 7, 2005) Original Image of this
Document (PDF)
• 2005 WL 2453248 (Trial Pleading) First Amended
Complaint For Declaratory Judgment And Injunctive
Relief (Aug. 4, 2005) Original Image of this Docu-
ment (PDF)
• 1:05cv01045 (Docket) (May 24, 2005)
• 2005 WL 1467436 (Trial Pleading) Complaint for
Declaratory Judgment and Injunctive Relief (May 23,
2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT O

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

Judicial Watch, Inc. v. U.S. Dept. of
Transp.D.D.C.,2005.Only the Westlaw citation is
currently available.
United States District Court, District of Columbia.
JUDICIAL WATCH, INC., Plaintiff,
v.
UNITED STATES DEPARTMENT OF TRANS-
PORTATION, et al., Defendants.
**No. Civ. 02-566-SBC.**

July 7, 2005.

Larry Klayman, Paul J. Orfanedes, James F.
Peterson, Meredith Leigh Cavallo, Judicial Watch,
Inc., Washington, DC, for Plaintiff.
Marina Utgoff Braswell, U.S. Attorney's Office for
the District of Columbia, Washington, DC, for De-
fendants.

*MEMORANDUM OPINION AND ORDER*
CONLON, J.
**\*1** Plaintiff Judicial Watch, Inc. requested documents
relating to airline luggage bomb-detection devices
from the United States Department of Transportation
("DOT") and the Federal Aviation Administration
("FAA") (collectively "defendants") under the Free-
dom of Information Act, 5 U.S.C. § 552 ("FOIA").
As a result of defendants' failure to respond to its re-
quest, Judicial Watch sued for declaratory and in-
junctive relief under FOIA. After Judicial Watch ini-
tiated this action, DOT produced some documents
and withheld others, claiming exemption from dis-
closure under FOIA. FAA did not locate any respons-
ive documents. Defendants now move for summary
judgment pursuant to Fed.R.Civ.P. 56.[FN1]

>    **FN1.** On March 11, 2005, the Chief Justice
>    of the United States reassigned this case to
>    Judge Suzanne B. Conlon of the United
>    States District Court for the Northern Dis-
>    trict of Illinois.

BACKGROUND

Both DOT and FAA filed statements of material un-
disputed facts in support of their summary judgment

motions. Judicial Watch failed to respond. Local Rule
7.1(h) provides: "[i]n determining a motion for sum-
mary judgment, the court may assume that facts iden-
tified by the moving party in its statement of material
facts are admitted, unless such a fact is controverted
in the statement of genuine issues filed in opposition
to the motion." Defendants' statements of undisputed
facts are deemed admitted. *See* Local Rule 7.1(h);
*Ramey v. Darkside Productions, Inc.,* 2004 U.S. Dist.
LEXIS 10107, at \*3 (D.D.C. May 17, 2004).

I. Judicial Watch's FOIA Request

On November 18, 2001, Judicial Watch sent DOT
and FAA a FOIA request seeking agency records re-
lated to various airport security measures, including
airport bomb-detection devices. FAA facts ¶ 1. The
letter requested 10 categories of documents. *Id.;* Judi-
cial Watch Response, Ex. I. On December 19, 2001,
Judicial Watch modified its request, but continued to
seek 10 categories of documents related to airport se-
curity. FAA facts ¶ 1; Judicial Watch Response, Ex.
2. Judicial Watch requested a fee waiver pursuant to
5 U.S.C. § 552(a)(4)(A)(iii) or, alternatively, to be
designated a representative of the news media. FAA
facts ¶ 1; Judicial Watch Response, Ex. 1. After DOT
and FAA failed to respond to the request, Judicial
Watch initiated this action on March 22, 2002.

II. FAA's Search

FAA transferred Judicial Watch's FOIA request to
various internal offices for processing. FAA facts ¶¶
2-6. FAA searched for information responsive to the
request in May 2002. *Id.* at ¶¶ 6-7. FAA electronic-
ally searched for information that referred or related
to Linda Dasehle, L-3 Communications and In Vision
Technologies. *Id.;* Jefferson Decl. ¶¶ 3-6; Harley Aff.
¶¶ 3-5. This search related to information responsive
to the first three categories only. FAA facts ¶ 1. FAA
did not locate any responsive records. *Id.* at ¶ 7.

III. DOT's Search

DOT submitted several declarations explaining its
search for responsive documents. The declarations
filed with its summary judgment motion are confus-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-02266-RBW    Document 23    Filed 10/10/2006    Page 65 of 74

ing. They do not clearly identify the offices that searched for specific categories of documents. DOT submitted a supplemental declaration from Patricia Ricp-Dice that clarifies DOT's document search. The Office of the Secretary of DOT ("OST") did not search for documents responsive to items 1 through 3 because it determined FAA was the office most likely to have responsive documents. DOT facts ¶ 2. On March 24, 2002, after this lawsuit was filed, DOT transferred Judicial Watch's FOIA request to the Transportation Safety Administration ("TSA"). DOT facts ¶ 4. DOT determined that TSA would be the office most likely to have responsive records to the remaining requests. *Id.* TSA searched for records responsive to items 4 through 9 and located records in each category. Ricp-Dice Supp. Decl. ¶ 3-4.

**\*2** OST also searched for documents responsive to items 4 through 9. OST forwarded the request to four offices that it believed were most likely to have responsive documents. *Id.* at ¶ 5. Three of the offices responded that they conducted searches and found no responsive records. *Id.* The Office of the inspector General processes its own FOIA requests and responds directly to the requester. *Id.* Defendants do not know if or how the Office of the Inspector General responded. *Id.*

### IV. Denial of Fee Waiver

On August 28, 2002, TSA denied Judicial Watch's requests for a fee waiver and for designation as a representative of the news media. DOT facts ¶ 8. TSA estimated the search and duplication fees to be $2,985.70 and refused to release any responsive information unless Judicial Watch prepaid half of the estimated fees and entered a written fee agreement by September 9, 2002. *Id.* at ¶ 8, Ex. A. Judicial Watch did not respond to this demand. *Id.* at ¶ 9.

### V. FOIA Response

TSA located documents responsive to items 4 through 9. Ricp-Dice Supp. Decl. ¶ 4. In September 2002, TSA produced 33 pages of records and withheld approximately 2,500 pages of documents, claiming they were covered by FOIA exemptions 1, 2, 3 and 5. DOT facts ¶¶ 10-14. DOT produced a *Vaughn*

index listing the documents it withheld from production. Ricp-Dice Supp. Decl. ¶ 4. In March 2003, TSA released additional documents listed on the original *Vaughn* index. *Id.* at ¶ 12. DOT claims that all reasonably segregable information has been released. *Id.* at ¶ 15.

### VI. The *Vaughn* Index

DOT produced a 75-page revised *Vaughn* index. Ricp-Dice Supp. Decl., Ex. B. The *Vaughn* index does not assign document numbers to each withheld document. As a result, there is considerable confusion in the parties' briefs with respect to document identification. Judicial Watch refers to page numbers of the original *Vaughn* index. DOT produced a revised *Vaughn* index with different pagination. A chart is attached to its reply brief cross-referencing the original *Vaughn* index page numbers with the revised *Vaughn* index page numbers. The court will identify documents by bates numbers and the revised *Vaughn* index page number.

The *Vaughn* index contains a description of each document, the bates range, and an explanation why DOT believes the document is exempted. DOT withheld 11 documents under FOIA Exemption 1, 144 documents under FOIA Exemption 2, 164 documents under FOIA Exemption 3, one document under Exemption 4, and one document under Exemption 5. *Id.* DOT submits declarations from Patricia M. Ricp-Dice, Admiral James M. Loy and Robin C. Burke to supplement its revised *Vaughn* index.

### VII. The Challenged Documents

Judicial Watch does not seek all of the withheld documents. It argues DOT improperly withheld 10 documents under Exemption 1, 25 documents under Exemption 2, 26 documents under Exemption 3 and one document under Exemption 4.

### DISCUSSION

### I. Standard of Review

**\*3** Summary judgment is appropriate when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to

judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Kaempe v. Myers,* 367 F.3d 958, 966 (D.C.Cir.2004). A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying evidence that demonstrates the absence of a genuine issue of material fact. The non-moving party must then come forward with evidence and designate specific facts that establish there is a genuine triable issue. *Kingman Park Civic Ass'n. v. Williams,* 348 F.3d 1033, 1041 (D.C.Cir.2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Waterhouse v. District of Columbia,* 298 F.3d 989, 992 (D.C.Cir.2002).

## II. Fee Waiver

TSA denied Judicial Watch's request for a fee waiver under 5 U.S.C. § 522(A)(4)(iii). DOT argues TSA properly denied the request because Judicial Watch failed to establish that release of the requested information would likely contribute significantly to the public's understanding of government operations or activities.

### A. Exhaustion of Administrative Remedies

A FOIA requestor may seek judicial review of a fee waiver denial after exhausting administrative remedies. 5 U.S.C. § 552(a)(6)(A)(i); *Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309, 1310 (D.C.Cir.2003); *Oglesby v. U.S. Dept. of Army,* 920 F.2d 57, 61-62 (D.C.Cir.1990). A FOIA requestor has exhausted administrative remedies if he requests a fee waiver and the agency fails to respond within the applicable time limits provided in FOIA. 5 U.S.C. § 552(a)(6)(C). After receiving a FOIA request, an agency is required to determine, within 20 days, whether or not to comply with the request. 5 U.S.C. Section 552(a)(6)(i)-(ii). Thus, a requestor who does not receive timely notice of an agency's decision is considered to have constructively exhausted administrative remedies and may proceed directly to federal court to enforce a FOIA request or to seek a *de novo* review of a fee waiver request. *Rossotti,* 326 F.3d at 1310-11; *Oglesby,* 920 F.2d at 62; *Pollack v. Dept. of Justice,* 49 F.3d 115, 119 (4th Cir.1995).

Judicial Watch requested a fee waiver on November 19, 2001. After the statutory time period elapsed without a response to the request, Judicial Watch proceeded directly to federal court, by filing a complaint on March 23, 2002. Since Judicial Watch constructively exhausted administrative remedies, this court reviews *de novo* the fee waiver request based on the record before the agency at the time of decision. 5 U.S.C. § 552(a)(4)(A)(vii); *Rossotti,* 326 F.3d at 1311.

### B. Statutory Test

Generally, a FOIA requestor must pay reasonable costs for the search, review, and duplication of the records sought. 5 U.S.C. § 552(4)(A)(ii)(I). Fees will be waived, however, when disclosure of information is in the public interest *and* it is not primarily in the commercial interest of the requestor. 5 U.S.C. § 552(4)(A)(iii); *Votehemp, Inc., v. Drug Enforcement Admin.,* 237 F.Supp.2d 55, 58 (D.D.C.2002). The requestor bears the burden of showing it is entitled to a fee waiver. *Larson v. Central Intelligence Agency,* 843 F.2d 1481, 1483 (D.C.Cir.1988).

**\*4** DOT concedes that the requested disclosure is not primarily in Judicial Watch's commercial interest. The court must determine whether disclosure of the information is in the public interest. In order to satisfy the public interest prong, Judicial Watch must show that disclosure of the requested information serves the public interest by contributing significantly to the public's understanding of government operations. *Schrecker v. U.S. Dep't of Justice,* 970 F.Supp. 49, 50 (D.D.C.1997); *Fitzgibbon v. Agency for Int'l Dev.,* 724 F.Supp. 1048, 1050 (D.D.C.1989); *Larson,* 843 F.2d at 1483.

As set forth below, DOT regulations establish four factors to consider when determining whether disclosure is in the public interest. In applying these factors, the court is guided by two recent opinions that held Judicial Watch was entitled to a fee waiver. *Judicial Watch, Inc. v. Rossotti,* 326 F.3d 1309 (D.C.Cir.2003); *Judicial Watch, Inc. v. United States Dep't of Energy,* 310 F.Supp.2d 271 (D.D.C.2004).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Both cases were decided after the parties filed their summary judgment briefs.

### 1. Government Operations or Activities

The first factor requires that the subject of the requested records "concerns the operations or activities of the Federal government." 49 C.F.R. § 7.44(f)(1). DOT argues that the requested information does not concern government operations or activities. The court disagrees. Judicial Watch's request seeks communications between former FAA Deputy Administrator Linda Daschle and technology companies that manufacture bomb-scanning devices, and information relating to FAA and DOT's use of bomb-scanning devices in airports. *Id.* The requests are specific and the information sought concerns DOT and FAA operations and activities. *See Rossotti,* 326 F.3d at 1313.

### 2. Understanding DOT or FAA Operations

The second factor is whether the "disclosure is likely to contribute to an understanding of Federal government operations or activities." 49 C.F.R. § 7.44(f)(2). DOT rejected the request for a fee waiver because it concluded that most of the information sought would be exempt from FOIA disclosure. Ricp-Dice Decl., Ex. A. A "fee waiver request should be evaluated based on the fact of the request and the reasons given by the requestor in support of the waiver, 'not on the possibility that the records may ultimately be determined to be exempt from disclosure." ' *Dep't. of Energy,* 310 F.Supp.2d at 295, *quoting Carney v. U.S. Dep't of Justice,* 19 F.3d 807, 815 (2nd Cir.1994); *see also Rossaotti,* 326 F.3d at 1314. Judicial Watch's fee waiver request should have been evaluated based on the potential contribution of the requested information to the public's understanding of DOT operations, not DOT's determination that most of the information was exempt from disclosure. Information about DOT's use of bomb-scanning devices and efforts to improve airline safety may contribute to the public's understanding of DOT's activities. The second factor is satisfied. *See Rossotti,* 326 F.3d at 1313-14.

### 3. Public Information

**\*5** The third factor asks whether "disclosure of the requested information will contribute to the under-

standing of the public at large, as opposed to the individual understanding of the requestor or a narrow segment of interested persons." 49 C.F.R. § 7.44(f)(3). The court considers the requestor's ability and intent to effectively convey the information to the public. *Rossotti,* 326 F.3d at 1312. DOT argues that Judicial Watch is not entitled to a fee waiver because it failed to provide concrete evidence that it has a specific plan to disseminate Information to the general public. DOT's argument must be rejected because Judicial Watch has described its ability to rapidly disseminate information to the public via press releases, newsletters, a website, and radio and television programming. Judicial Watch Response, Ex. 1. In *Rossotti,* 326 F.3d at 1314, the court concluded that requiring Judicial Watch to outline a specific plan in addition to describing its methods of publication would amount to "pointless specificity." *Rossotti,* 326 F.3d at 1314; *see also Dept. of Energy,* 310 F.Supp.2d at 291. As in *Rossetti,* Judicial Watch has met the third factor by detailing its ability to publicly disseminate information received.

### 4. Contribution to the Public's Understanding

The fourth factor assesses whether the "contribution to public understanding of Federal government operations or activities will be significant." 49 C.F.R. § 7.44(f)(4). DOT rejected plaintiff's fee waiver request based on its determination that most of the requested documents would be exempt from disclosure and the documents that were not exempt were already publicly available. DOT's reasoning is flawed for two reasons. First, " '[a] fee waiver request should be evaluated based on the face of the request and the reasons given by the requestor in support of the waiver,' not on the possibility that the records may ultimately be determined to be exempt from disclosure." *Dep't. of Energy,* 310 F.Supp.2d at 295, *quoting Carney,* 19 F.3d at 815-816. Second, Judicial Watch requested considerably more information about FAA and DOT communications and operations than was disclosed in the news articles attached to Judicial Watch's request. Judicial Watch Response, Ex. 1. Nothing in the record suggests that the detailed information requested by Judicial Watch was already in the public domain. The release of the requested documents may contribute to the public's knowledge re-

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

garding steps taken by DOT to enhance airport security. *See Rossotti, 326 F.3d at 1314-15.*

### C. Conclusion

Because Judicial Watch's November 19, 2001 request demonstrates with reasonable specificity that disclosure was in the public interest, DOT should have granted Judicial Watch's fee waiver request. DOT's summary judgment motion on this issue must be denied. Because there are no disputed factual issues regarding the fee waiver, DOT is directed to grant Judicial Watch's fee waiver request with respect to the documents produced.[FN2] *See Dep't of Energy, 310 F.Supp.2d at 296.*

> **FN2.** Because Judicial Watch is entitled to a public interest fee waiver, there is no need to address whether Judicial Watch is entitled to a waiver of search and review costs as a representative of the news media.

### III. Sufficiency of Defendants' Document Search

**\*6** Judicial Watch challenges the sufficiency of both defendants' document search. In deciding whether an agency's document search is adequate, the issue is not whether other responsive records might possibly exist, but whether the search was adequate, judged by a reasonableness standard. *Wilbur v. Central Intelligence Agency, 273 F.Supp.2d 119, 124 (D.D.C.2003).* The burden rests with the agency to establish that it made a good faith effort to conduct a search for the requested records, using methods that can be reasonably expected to produce the requested information. *Oglesby, 920 F.2d at 68.* An agency may rely on affidavits to demonstrate the reasonableness of its search. *Ferranti v. Bureau of Alcohol, Tobacco & Firearms, 177 F.Supp.2d 41, 45 (D.D.C.2001).* FOIA does not require an agency to search every division or field office when responsive documents are likely to be located in one place. *Kowalczyk v. U.S. Dep't of Justice, 73 F.3d 386, 388 (D.C.Cir.1996).* The affidavits must set forth the type of search conducted and attest that all files likely to contain responsive materials were searched. *Oglesby, 920 F.2d at 68.* If the court determines that a search was inadequate, it may order the agency to continue search-

ing. *Landmark Legal Foundation v. Environmental Protection Agency, 272 F.Supp.2d 59, 69 (D.D.C.2003).*

### A. DOT's Search

Judicial Watch argues DOT failed to adequately search for documents responsive to request numbers 1 through 5. DOT failed to search for documents responsive to items 1 through 3 because it believed FAA was the administration most likely to have responsive information. FAA located no responsive documents. Ricp-Dice Supp. Decl. ¶¶ 3-5. DOT determined TSA was the office most likely to have documents responsive to the remaining Items and forwarded Judicial Watch's request to TSA. TSA searched for responsive documents and either released them to Judicial Watch or accounted for them on its *Vaughn* index. *Id.* DOT has established that it made a good faith effort to conduct a search reasonably calculated to uncover all records responsive to items 4 through 9.

As to items 1 through 3, DOT admittedly failed to search for documents because it concluded FAA was the agency most likely to have responsive documents. Items 1 through 3 of Judicial Watch's FOIA request seek communications between FAA Deputy Administrator Linda Daschle and technology companies and communications regarding a meeting between Daschle and former DOT Inspector General. According to FAA declarations, the Office of the Administrator ("the Office") provides correspondence support and control services to the FAA Administrator and FAA personnel. The Office logs, processes and files correspondence for the FAA Administrator. Jefferson Decl. ¶ 2. As set forth below, the Office searched for information regarding Daschle, L-3 Communications and InVision Technologies in the Administrator's Correspondence Control Information System database. *Id.* at ¶¶ 3-5; Harley Decl. ¶ 2. The Office also maintains calendars for current FAA staff members. Harley Decl. ¶ 4. Because Daschle was the Deputy Administrator from November 1993 through January 1997, more than four years before Judicial Watch's FOIA request, the Office no longer maintained her calendars. *Id.;* Harley Supp. Decl. ¶ 8. FAA located no responsive documents. Based on FAA and DOT's

Not Reported in F.Supp.2d    Page 6
Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

undisputed declarations, FAA was the office most likely to have documents responsive to the first three categories of requested information. Simply because FAA found no responsive documents does not mean DOT's search was inadequate.

### B. FAA's Search

**\*7** Judicial Watch challenges the adequacy of FAA's search. Specifically, Judicial Watch challenges FAA's removal of a file cabinet that allegedly contained potentially responsive documents. As set forth above, the Office is responsible for maintaining the day-to-day calendar and for scheduling meetings for the Deputy Administrator. Harley Decl., ¶ 2. In May 2002, the Office was asked to search for information responsive to items 1 through 3-communications between Daschle and L-3 Communications or InVision Technologies, Inc., and any documents regarding a meeting between Daschle and Mary Schiavo, former DOT Inspector General. *Id.* at ¶ 3. FAA searched its electronic database for responsive documents. Jefferson Decl. ¶¶ 3-5; Harley Decl. ¶ 2. The search yielded zero responsive documents. In early 2002, FAA removed an old file cabinet and any remaining contents from the Office as part of a renovation. *Id.* at ¶ 4. Judicial Watch asserts that FAA's removal of the file cabinet raises serious questions about the adequacy of its search.

In a supplemental declaration, Harley clarified that the file cabinet was empty long before the renovation work and thus contained no information about Daschle's calendars, schedules or communications. Harley Supp. Decl. ¶¶ 5-6. Any calendar books created during Daschle's tenure, from 1993 to 1997, were destroyed long before the Office received Judicial Watch's FOIA request in late 2001. *Id.* at ¶ 8. To demonstrate the adequacy of its search, an agency may rely upon reasonably detailed, non-conclusory affidavits submitted in good faith. *Goland v. Central Intelligence Agency, 607 F.2d 339, 352 (D.C.Cir.1979).* Agency affidavits are accorded a presumption of good faith which cannot be rebutted by "purely speculative claims about the existence and discoverability of other documents." *Ground Saucer Watch, Inc. v. Central Intelligence Agency, 692 F.2d 770, 771 (D.C.Cir.1981); Perry v. Block, 684 F.2d*

121, 127 (D.C.Cir.1982). FAA's declarations attest that no responsive documents were destroyed after the Office received Judicial Watch's FOIA request. FAA's declarations are accorded a presumption of good faith and there is no evidence to dispute them. Accordingly, FAA has met is burden of establishing that it made a good faith effort to search for responsive documents.

### III. Sufficiency of *Vaughn* Index

The court must next determine whether DOT's *Vaughn* index is sufficiently detailed to support the claimed exemptions. A *Vaughn* index must adequately describe each withheld document, state which exemption the agency claims, and explain the exemption's relevance. *Johnson v. Executive Office for United States Attorneys, 310 F.3d 771, 774 (D.C.Cir.2002).* A *Vaughn* index must be sufficiently detailed so the court can review the applicability of the claimed FOIA exemptions on a document by document basis. *Judicial Watch, Inc. v. United States Postal Service, 297 F.Supp.2d 252, 270 (D.D.C.2004).* The *Vaughn* index must correlate facts in or about each document with the elements of the asserted privilege. *Id. at 260.* An agency may submit other materials to supplement its *Vaughn* Index, such as declarations, that give the court enough information to determine whether the claimed exemptions are properly applied. *Id. at 257.*

### A. FOIA Exemption 1-Classified Documents

**\*8** Judicial Watch contends DOT improperly withheld 11 documents under FOIA exemption 1. The 11 documents consist of certification tests and evaluation reports ("evaluation reports") for explosive detection systems. The *Vaughn* index contains a description of each document and lists the person who classified the document. Admiral James M. Loy's declaration describes the reports in more detail. Loy describes how portions of the reports were classified at the confidential level by the FAA's Associate Administrator for Civil Aviation Security pursuant to properly issued classification guides. Loy Decl. ¶ 8. The Associate Administrator was the senior FAA official responsible for civil aviation security prior to TSA assuming civil aviation responsibilities. *Id.* Loy was

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
(Cite as: Not Reported in F.Supp.2d)

delegated original classification authority on April 5, 2002, and he classified the May 2002 evaluation report. *Id.* at ¶ 9. At the time the reports were classified, it was determined that their public release would harm national security. *Id.*

Loy attests that he personally reviewed each of the evaluation reports withheld under exemption 1. The classified evaluation reports consist of minimum detection rates and false alarm rates for specific types of explosives when the explosives were tested by the "eXaminer" explosive detection systems. *Id.* at ¶ 13. He states that public disclosure of the information contained in the evaluation reports would reveal information about the vulnerabilities and capabilities of the explosive detection systems used at airports and that release of the information would enable an individual to circumvent the protection provided by these systems. *Id.* at ¶ 14. He further attests that all reasonably segregable information has been released. *Id.* at ¶ 15.

Exemption 1 exempts matters that are:
(1)(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order.

5 U.S.C. § 522(b)(1). Executive Order 12958 sets forth the criteria for classification of documents:(1) an original classification authority is classifying the information;
(2) the information is owned by, produced by or for, or is under the control of the United States Government;
(3) the information falls within one or more categories of information listed in section 1.5 of this order; and
(4) the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security and the original classification authority is able to identify or describe the damage.

60 FR 19825, § 1.2.

Judicial Watch argues that because Loy was not the

original classification source for all withheld documents, his declaration cannot satisfy the fourth element. Judicial Watch's argument must be rejected. Loy's affidavit describes in sufficient detail how each document withheld under exemption 1 was properly classified under Executive Order 12958. Loy attests, "[a]t the time that these reports were classified, it was determined that the release of the classified information would cause harm to the national security." Loy Decl. ¶ 9. He also attests that he has personal knowledge of the matters set forth in his declaration in light of his position as acting Under Secretary of Transportation for Security, TSA, DOT. *Id.* at ¶¶ 1, 4. Moreover, he states that he personally reviewed each document to ensure that each warranted continued confidential classification. *Id.* at ¶ 14. The *Vaughn* index and Loy's declaration sufficiently establish that the evaluation reports are covered by exemption 1. Summary judgment for DOT must be granted with respect to the evaluation reports withheld under exemption 1.

**B. FOIA Exemption 2-Documents Relating to Internal Agency Rules or Practices**

**\*9** Judicial Watch challenges TSA's assertion of exemption 2 with respect to 25 documents. *See* DOT's Reply, Exhibits A & B.[FN3] Exemption 2 exempts from disclosure records "related solely to the internal personnel rules and practices of an agency." 5 U.S.C. § 552(b)(2). To be exempt under exemption 2, the withheld material must be predominantly internal and its disclosure must significantly risk circumvention of agency regulations or statutes. *Cooker v. Bureau of Alcohol, Tobacco & Firearms,* 670 F.2d 1051, 1073 (D.C.Cir.1981); *Voinche v. FBI,* 940 F.Supp. 323, 328 (D.D.C.1996). Exemption 2 is not limited to internal personnel rules and practices; rather, it is construed more generally to encompass documents that are used for predominantly internal purposes. *Crooker,* 670 F.2d at 1073; *Schiller v. NLRB,* 964 F.2d 1205, 1207 (D.C.Cir.1992).

> FN3. DOT submitted two charts listing the revised *Vaughn* Index page numbers for the challenged documents. DOT Reply, Ex. A & B.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Judicial Watch argues that nine documents are not predominantly internal and that the *Vaughn* index and supporting declarations fall to establish that 15 documents are predominantly internal. According to DOT, TSA withheld a limited amount of information solely on the basis of exemption 2. Indeed, the revised *Vaughn* index lists no documents withheld solely on the basis of exemption 2. The only information withheld under exemption 2 alone is locations of warehouses where explosive detection systems are stored prior to shipment to airports or government facilities. According to TSA, disclosure of this information would allow circumvention of the law. Ricp-Dice Decl. ¶ 29. Ricp-Dice explains that the release of this information would enable an individual or group to cause harm to the explosive detection systems prior to their installation. *Id.* Her supplemental declaration attests that the records were created in furtherance of work assigned to FAA contractors and are used internally by FAA. Ricp-Dice Supp. Decl. ¶ 6. DOT has satisfied its burden of establishing that information regarding warehouses it uses to store explosive detection systems is predominantly internal information covered by exemption 2. Summary judgment for DOT must be granted with respect to this limited category of information covered by exemption 2.

C. FOIA Exemption 3-Sensitive Security Information

Judicial Watch challenges DOT's assertion of exemption 3 with respect to 15 documents. 5 U.S.C. § 552(b)(3). Judicial Watch further argues that DOT has not met its burden of establishing that it released all segregable information on 11 documents. DOT contends that its *Vaughn* index and supporting declarations show that all documents were properly withheld under exemption 3.

Exemption 3 covers records that are:
specifically exempted from disclosure by statute (other than section 552b of this title), provided that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld.

**\*10** 5 U.S.C. § 552(b)(3). The withholding agency

must provide reasonably specific detail and demonstrate that the information withheld or redacted from the documents logically falls within the claimed exemption. *Landmark Legal Foundation v. Internal Revenue Service,* 87 F.Supp.2d 21, 26-27 (D.D.C.2000).

49 U.S.C. § 20119(b) provides that DOT shall prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security or research and development activities if the Under Secretary decides disclosing the information would be detrimental to the safety of passengers in transportation. TSA prescribed a regulation that exempts from disclosure records that contain sensitive security information. 49 C.F.R. § 1520. Sensitive security information ("SSI") is information "the release of which would be detrimental to the safety of passengers in transportation." 49 C.F.R. § 1520.3(b)(3). TSA's regulations define SSI as including "technical specifications of any device used for the detection of any deadly or dangerous ... explosive," information that reveals a "systematic vulnerability of the aviation system or ... facilities," and a "description of or technical specifications of, objects used to test screening equipment." 49 C.F.R. § 1520.7(e), (f), (h).

Judicial Watch argues that DOT's *Vaughn* index and supporting declarations are too vague to establish that each of the withheld documents are covered by exemption 3. DOT submitted a revised *Vaughn* index with its reply that contains detailed descriptions and identifies particular subsections of 49 C.F.R. § 1520.7 implicated by information in each document. The court has reviewed the revised *Vaughn* index and the supporting declarations, including Robin Burke's declaration, and concludes that they sufficiently establish the challenged documents were properly withheld under exemption 3.[FN4] For example, Judicial Watch challenges bates pages 300-310, on page 37 of the revised index. The *Vaughn* index describes the document as a "Survey Report for an airport EDS System which included information on historical data, poor image issues and product reliability." Revised *Vaughn* index, p. 37, bates pages 300-310. It further explains that the document is withheld in full under exemption 3 because it contains SSI. It describes how the information may reveal a systematic

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**

vulnerability of the aviation system or a vulnerability of aviation facilities and discloses the location or locations of screening equipment. *Id.* Burke's declaration provides further explanation of the reports and why they are covered by exemption 3. Burke Decl. ¶ 24.

FN4. *See* DOT Reply, Exhibit B for a list of the challenged documents.

Judicial Watch also challenges bates pages 815-819, on page 42 of the revised *Vaughn* index. The index describes the document as "[d]eficiencies of EDS in undated report including descriptions of major, moderate and minimal deficiencies in quality of image, display of information and user training." *Id.* at p. 42. The index explains that the document is withheld under exemption 3 because it contains SSI. TSA has determined that the release of this information may reveal a systematic vulnerability of the aviation system, or a vulnerability of aviation facilities to attack. *Id.* Burke's declaration further describes the document and why it is covered by exemption 3. Burke Decl. ¶ 24.

**\*11** The revised *Vaughn* index contains similarly detailed descriptions for other documents withheld under exemption 3. Moreover, Burke's declaration describes why the categories of documents are withheld under exemption 3 based on the asserted subsections of 49 C.F.R. § 1520.7. Burke Decl. ¶¶ 21-29. Based on the *Vaughn* index and supporting declarations, DOT has satisfied its burden of establishing that the challenged documents were properly withheld under exemption 3.

Finally, Judicial Watch contends that DOT has failed to release all reasonably segregable information withheld under exemption 3. After receiving Judicial Watch's response, DOT produced an additional 123 pages of documents. Ricp-Dice's supplemental declaration attests that she reviewed each challenged record and released additional information that was segregable. Ricp-Dice Supp. Decl. ¶¶ 10-13. Her undisputed declaration attests that the remaining pages contain no reasonably segregable information. *Id.* at ¶ 13. DOT has satisfied its burden of establishing that it produced all reasonably segregable factual information not covered by exemption 3. DOT's summary

judgment motion must be granted as to the documents withheld under exemption 3.

### D. Exemption 4

Judicial Watch challenged DOT's assertion of exemption 4 for one document, bates numbers 1511-1532; 2335 and 1533-1566. In the revised *Vaughn* index, DOT withdrew its assertion of exemption 4 and asserted exemptions 2 and 3 instead. The document is described as a letter from Will Jowers to Ed Ocker, FAA, re: eXaminer System Upgrades. Revised *Vaughn* index, p. 51. DOT asserted exemption 2 because the document relates to internal administrative matters. *Id.* It asserted exemption 3 because the document contains information that relates to technical specifications of the eXaminer used for the detection of explosives. *Id.* TSA determined the release of the information may reveal systematic vulnerabilities of the aviation system or facilities. *Id.*

DOT has not satisfied its burden of establishing the Jowers letter is covered by exemption 2. It does not explain how the document satisfies each element of exemption 2. For example, it does not provide evidence that the document is used predominantly for internal purposes. However, the revised *Vaughn* index and supporting declarations establish that the Jowers letter is covered by exemption 3. The index states that the document is withheld under 49 C.F.R. § 1520.7(e) and (h) because it contains SSI that relates to technical specifications of an explosive detection device. Revised *Vaughn* index, p. 51; *see also* Burke Decl. ¶¶ 21, 24. DOT properly withheld the Jowers letter under exemption 3.

### CONCLUSION

There are no disputed factual issues. DOT's summary judgment motion is denied with respect to Judicial Watch's fee waiver request. DOT is directed to grant Judicial Watch a fee waiver for the documents already produced. As to the withheld documents, DOT and FAA have established that they are entitled to judgment as a matter of law. Their summary judgment motions are granted with respect to the withheld documents.

D.D.C.,2005.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d, 2005 WL 1606915 (D.D.C.)
**(Cite as: Not Reported in F.Supp.2d)**


Judicial Watch, Inc. v. U.S. Dept. of Transp.

Not Reported in F.Supp.2d, 2005 WL 1606915
(D.D.C.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## CERTIFICATE OF SERVICE

I, Jacqueline A. Bender, under the direction of counsel for the plaintiffs, Gill Deford, certify that, on October 10, 2006, the Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Injunction was filed electronically.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's CM/ECF System.

Jacqueline A. Bender