UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CENTER FOR MEDICARE ADVOCACY, )
 INC., )
  )
    Plaintiff, )
  )
    v. )  Civil Action No. 05-2266 (RBW)
  )
UNITED STATES DEPARTMENT OF )
 HEALTH AND HUMAN SERVICES, )
  )
    Defendant. )
_____)

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES
IN REPLY TO PLAINTIFF'S OPPOSITION
TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

Plaintiff commenced this action on November 23, 2005, under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2000 & Supp. IV 2004), seeking the disclosure of all records pertaining to the design and establishment of Medicare administrative hearings by videoconferencing technology.  It subsequently filed a "Motion for Injunction," seeking release of all responsive records, a Vaughn Index describing the withheld records, a fee waiver, and attorney fees.  (See Pl.'s Mot. for Injunction, filed Apr. 13, 2006, at 1.)  Defendant has treated this motion as a motion for summary judgment.  (See Def.'s Unopposed Mot. for Enlargement of Time, filed Apr. 26, 2006, at 2.)

On September 12, 2006, defendant cross-moved for summary judgment on the basis that there were no genuine issues of material fact and that defendant was entitled to judgment as a matter of law.  On October 10, 2006, plaintiff opposed

-2-

defendant's cross-motion.  Defendant now submits this reply
memorandum, as well as the supplemental declarations of Patricia
Mantoan, attorney in the General Law Division of the Office of
the General Counsel in the United States Department of Health and
Human Service (HHS) [hereinafter Second Mantoan Decl.], and Ethel
Burrows, Social Insurance Specialist in the Office of Public
Disclosure of the Social Security Administration (SSA)
[hereinafter Second Burrows Decl.], in further support of its
cross-motion for summary judgment.

For the following reasons, as well as the reasons set forth
in defendant's previous filings, and on the basis of the entire
record in this matter, defendant respectfully submits that there
exists no genuine issue of material fact and that defendant is
entitled to judgment as a matter of law pursuant to Rule 56 of
the Federal Rules of Civil Procedure.

<u>Argument</u>

In its opposition, plaintiff has raised several arguments
with regard to the processing of its request, the withholding of
requested records, and the denial of plaintiff's request for a
fee waiver.[1]  These arguments will be addressed in turn.

---

[1] Plaintiff has also identified a large number of documents
in the <u>Vaughn</u> Indexes submitted by defendant and the SSA that it
is no longer pursuing, and it has also stated that it no longer
seeks the Government Accountability Office documents which were
responsive to its request.  (<u>See</u> Plaintiff's Opposition to
Defendant's Cross-Motion for Summary Judgment and Reply in
(continued...)

-3-

I.  Defendant Has Demonstrated the Propriety of its
    Use of the Deliberative Process Privilege
    to Withhold Documents Under Exemption 5

In a number of instances, plaintiff has argued that
defendant's <u>Vaughn</u> Index has not provided sufficient information
about the withheld documents and that defendant has improperly
withheld documents that should be released.  Plaintiff's
arguments are without merit.

First, plaintiff challenges defendant's withholding of
documents described as "draft questions and answers about VTC
hearings," claiming that it is "impossible to determine whether
the item is predecisional and deliberative."  (Pl.'s Opp'n at
13.)  Plaintiff's contention is simply wrong.  One of an agency's
primary responsibilities is to explain to the public what it is
doing, and to be able to convey important information about
agency programs to the general public.  A logical way to meet
this responsibility is to prepare sample questions and answers
that may ultimately be used as part of a "frequently asked
questions" document produced by the agency.  Draft attempts to
produce such documents, with the agency authors and recipients of
these documents exchanging ideas on what to include in the final
documents that ultimately reflect agency statements and
positions, are clearly both predecisional and deliberative.  <u>See</u>

---

[1](...continued)
Support of Plaintiff's Motion for Injunction [hereinafter Pl.'s
Opp'n] at 6 n.4.)

-4-

Sierra Club v. U.S. Dep't of Interior, 384 F. Supp. 2d 1, 16
(D.D.C. 2004) (rejecting as "simplistic" plaintiff's contention
that deliberative process privilege did not protect documents
that concern how best to promote presidential proposal to
Congress).

Plaintiff also asserts that defendant's withholding of other
draft question and answer documents was inappropriate due to the
fact that defendant's Vaughn Index does not list the authors of
these documents and because, plaintiff says, they might not have
been predecisional.  (See Pl.'s Opp'n at 18-19.)  As to the first
claim, the fact that defendant's Vaughn Index does not list the
authors of these documents does not mean that release of the
documents would not reveal the authors' identities, nor does it
mean that release of the communications would not risk
identifying the material with its authors.  Correspondingly, it
does not mean that release of the documents would pose no risk of
inhibiting candor on the part of agency employees, a concern that
is central to the very existence of the deliberative process
privilege.  See Jordan v. U.S. Dep't of Justice, 591 F.2d 753,
772-73 (D.C. Cir. 1978) (en banc).  While it is true that the
inclusion of specific names can help establish that the
communications were predecisional and deliberative, no court has
ever held that the absence of such information is per se evidence
that the exchanges involved were not predecisional and

-5-

deliberative.[2]  Though plaintiff speculates that the absence of
specific names in defendant's Vaughn Index means that the
exchanges might have been directives from superiors to junior
employees, and therefore not protectible (see Pl.'s Opp'n at 18-
19), defendant's Vaughn Index states that the withheld documents
contain "advice, recommendations, and suggestions," thereby
clearly indicating that the exchanges did in fact represent the
give and take of the decisionmaking process and were withheld
appropriately.[3]

     Similarly, declarant Eckert specifically attests to the
predecisional, deliberative nature of the withheld documents.

---

[2] Indeed, it has been recognized that agencies may
appropriately choose to withhold the names of agency employees
from draft documents.  See City of W. Chicago v. NRC, 547 F.
Supp. 740, 750 (N.D. Ill. 1982) (protecting list of contributors
to draft document).

[3] Plaintiff cites to this Court's decision in Judicial
Watch, Inc. v. USPS, 297 F. Supp. 2d 252, 265 (D.D.C. 2004), to
support its claims here.  (See Pl.'s Opp'n at 18.)  But it fails
to note a key difference between that case and the instant
action.  In Judicial Watch, the defendant agency did not even
submit a Vaughn Index at all, relying instead solely on a more
generalized affidavit.  See Judicial Watch, 297 F. Supp. 2d at
258.  Thus, part of this Court's frustration was with its
inability, based on the agency submissions, "to identify
particular decisionmaking processes or final policies to which
the [withheld documents] contributed."  Id. at 265.  Here, not
only has defendant submitted an extensive Vaughn Index, but
defendant's Index takes great pains to identify the relevant
decisionmaking processes, thereby providing just the sort of
information whose absence was the issue in the case plaintiff
cites.  Thus, plaintiff's citation only serves to highlight the
ways in which defendant has complied with relevant precedent on
this point.

-6-

(See Declaration of Robert Eckert, filed on Sept. 12, 2006
[hereinafter Eckert Decl.] ¶¶ 32-33.)  Were plaintiff correct
that the withheld documents were not deliberative in character
but actually were unprotectible directives from supervisors to
junior employees, defendant simply could not have submitted a
Vaughn Index with the aforementioned content, nor could
defendant's declarant have attested under penalty of perjury to
the predecisional, deliberative character of the documents.

As a corollary to this, plaintiff also suggests that the
mere fact that some of the documents were undated means that
their release would not reveal predecisional, deliberative
communications.  (See Pl.'s Opp'n at 19.)  Though it is true that
date-stamping a document may help establish its predecisional
character, this does not mean that the absence of a date can be
taken as proof that the document was not predecisional.  It also
does not mean that release of an otherwise predecisional,
deliberative, but undated document would not reveal
predecisional, deliberative communications.  There is literally
nothing in relevant precedent that even hints at, much less
requires, a rule that a court should order disclosure based
solely on the absence of a date-stamp.[4]

_____

[4] It should also be noted that of the forty-two documents
identified by plaintiff as not qualifying for protection on this
basis (see Pl.'s Opp'n at 19 n.10), twenty-seven were withheld
pursuant to the attorney-client privilege as well.  (See Eckert
(continued...)

-7-

As to the second claim, as is discussed previously, agencies quite frequently engage in deliberations concerning how best to explain agency decisions to the public.  Documents such as these, drafted in the process of reaching a decision on this question, are therefore quite clearly predecisional (as opposed to the final versions of these documents, which would reflect agency decisions).  See, e.g., Russell v. Dep't of the Air Force, 682 F.2d 1045, 1048-49 (D.C. Cir. 1982) (discussing reasons for protection of draft documents).

Plaintiff's complaints concerning drafts of responses to be made to Members of Congress (see Pl.'s Opp'n at 15) must fail for similar reasons.  Again, agencies are frequently faced with the decision of how to explain or defend agency actions.  Draft responses are an important and obvious step in this process. Plaintiff's citation here to Judicial Watch v. USPS, 297 F. Supp. 2d 252, 263 (D.D.C. 2004), again is inapposite.  In that case, this Court ruled that documents that were prepared for and actually used for congressional testimony were not protectible. See id.  This Court stated that "[i]f the testimony simply justified or explained USPS reactions to the anthrax outbreak to Congress, the materials are not antecedent and therefore are not

---

[4](...continued)
Decl. ¶ 34 & Ex. 16.)  While plaintiff has raised a challenge to defendant's use of the attorney-client privilege, defendant below reasserts the appropriateness of its use of this privilege.

-8-

protected." Id. Here, defendant has withheld drafts of
materials used for testimony, not the final versions of materials
actually used.  In Judicial Watch, the records could not be
withheld because they reflected the agency's actual decision on
how to explain agency action to Congress, and thus were not
antecedent to that decision.  See id.  Drafts of such documents,
which is what defendant has withheld here, are antecedent to the
agency's decision on how to justify its actions to Congress.
And, of course, because the drafts reflect the give and take of
this decisionmaking process, they are deliberative as well.
Hence, defendant's withholding of these documents was entirely
appropriate.

        Plaintiff's contentions regarding documents 4, 7-8, and 235
(see Pl.'s Opp'n at 16) similarly fail to grasp the key point
about the role that drafts play in the decisionmaking process.
Plaintiff asserts that "[a]s the memorandum does not overtly call
for or assist in a further agency decision . . . it is not
predecisional.  Defendant likewise fails to justify how drafts of
the Office of Medicare Hearings and Appeals (OMHA) Hearings
Manual play a role in the decision-making process." Id.  Again,
however, when an agency withholds drafts of final documents, the
decisonmaking process that the drafts contribute to is the
process of deciding what to include in the final documents.  The
very purpose of the deliberative process privilege is to

-9-

facilitate candor in the process of creating such final documents
-- in other words, for present purposes, the process of taking a
draft to a final.  See, e.g., NLRB v. Sears, Roebuck & Co., 421
U.S. 132, 151 (1975).  Defendant acted entirely appropriately in
withholding these drafts.[5]

Similarly, plaintiff has challenged the withholding of
documents 57, 101, and 177, claiming that the documents would not
reveal anything of the agency decisonmaking process.  (See Pl.'s
Opp'n at 17.)  Again, the Vaughn Index indicates that these
documents are drafts, and that they were created as part of
relevant decisionmaking processes.  Thus, the withholdings were
proper.[6]

Finally, plaintiff claims that by not explicitly stating
that the draft documents at issue were not "adopted or used in
the agency's interactions with the public," defendant has not met
its "burden" for withholding these documents.  (Pl.'s Opp'n at
12-13.)  Defendant strenuously disagrees with plaintiff that such
a "burden" exists, notwithstanding two recent decisions of this
Court to the contrary.  See The Wilderness Soc'y v. U.S. Dep't of

---

[5] All four of these documents were withheld pursuant to the
attorney-client privilege as well.  (See Eckert Decl. ¶ 34 & Ex.
16.)

[6] These documents also were withheld pursuant to the
attorney-client privilege as well.  (See id.)

-10-

the Interior, 344 F. Supp. 2d 1, 14 (D.D.C. 2004); Judicial Watch
v. USPS, 297 F. Supp. 2d at 261.

The rule that an otherwise deliberative document must be
released if it is adopted as agency policy dates to the Supreme
Court's decision in NLRB v. Sears, Roebuck & Co., 421 U.S. 132,
161 (1975). In Sears, the Supreme Court held that a document
will lose its predecisional character if the agency "chooses
expressly to adopt or incorporate by reference" the document in
question. Id. In making its ruling, the Supreme Court was
upholding a ruling by this Court that certain of the documents
the NLRB had withheld had been expressly incorporated by the
agency. See NLRB v. Sears, Roebuck & Co., 346 F. Supp. 751, 754
(D.D.C. 1972). However, this Court reached its conclusion only
after examining documents in camera -- not because the defendant
agency had not explicitly stated that the documents had not been
expressly incorporated or adopted. See id.

With the exception of the two recent cases cited by
plaintiff, courts ruling on the issues of incorporation or
adoption have uniformly followed Sears, finding that documents
either had or had not been incorporated or adopted based on
actual evidence of incorporation or adoption (or lack thereof),
rather then basing rulings solely on the absence of an explicit
statement in an agency declaration denying incorporation or
adoption. See, e.g., Renegotiation Bd. v. Grumman Aircraft Eng'g

-11-

Corp., 421 U.S. 168, 184 (1975) (ruling that no incorporation could be found because "the evidence utterly fails to support the conclusion that the reasoning in the reports is adopted by the Board as its reasoning"); Nat'l Council of La Raza v. U.S. Dep't of Justice, 411 F.3d 350, 357, 359 (2d Cir. 2005) (finding incorporation because of "repeated references" to document in question by agency officials, and further deciding that "there must be evidence that an agency has actually adopted or incorporated by reference the document at issue; mere speculation will not suffice"); Tax Analysts v. IRS, 117 F.3d 607, 617 (D.C. Cir. 1997) (finding incorporation on basis of explicit finding that documents in question were "routinely relied upon" by agency); Common Cause v. IRS, 646 F.2d 656, 659-60 (D.C. Cir. 1991) (finding no adoption due to Court's finding that decisionmaker had rejected advice in withheld memorandum); Bhd. of Locomotive Eng'rs v. Surface Transp. Bd., No. 96-1153, 1997 WL 446261, at *4-5 (D.D.C. July 31, 1997) (finding express adoption because agency officials had specifically voted to accept memorandum recommendation); Brinton v. U.S. Dep't of State, 476 F. Supp. 535, 541 n.5 (D.D.C. 1979) (finding no incorporation or adoption because there was no "evidence in the record" of express incorporation or adoption).

Thus, the two aforementioned rulings depart from a well-established line of precedent in this Circuit and elsewhere by in

-12-

effect adding a third requirement to the traditional two requirements for withholding under Exemption 5's deliberative process privilege -- one that would involve the "proving of a negative" in every case. Aside from the aforementioned two cases, there is no basis in several decades of Exemption 5 case law for adding such a new requirement to the deliberative process privilege.[7]

Defendant respectfully suggests that the requirements surrounding the adoption rule should be treated in a manner analogous to the way in which waiver is treated by courts ruling in FOIA cases. Just as the deliberative process privilege may be lost through adoption, an agency may lose its right to invoke a FOIA exemption because the agency has in fact waived use of the exemption by a prior release of the document in question. See generally Fitzgibbon v. CIA, 911 F.2d 755, 765 (D.C. Cir. 1990) (discussing waiver rules). However, despite the fact that agencies must abide by waiver rules, agencies have never been held to an affirmative obligation to explicitly deny (let alone disprove) that waiver has occurred in each case. See, e.g.,

---

[7] Inasmuch as Exemption 5 of the FOIA actually incorporates existing discovery privileges, see, e.g., United States v. Weber Aircraft Corp., 465 U.S. 792, 800-01 (1984) (holding that Exemption 5 covers all civil discovery privileges), it is significant to note that no such requirement exists in basic deliberative process privilege case law itself. That alone should be sufficient to indicate the proper implementation of Exemption 5.

-13-

Simmons v. U.S. Dep't of Justice, 796 F.2d 709, 712 (4th Cir. 1986) (finding that no waiver had occurred because plaintiff had "produced no evidence" to that effect).

This distinguishes waiver from, for example, segregability under the FOIA. Agencies of course have a requirement under the FOIA to release all reasonably segregable portions of otherwise withholdable documents, see 5 U.S.C. § 552(b), and agencies as a matter of routine attest to the fact that they have met this requirement. (See, e.g., Eckert Decl. ¶ 35.) The segregability rule imposes a positive obligation on agencies, one derived from the statutory text of the FOIA itself,[8] in that it requires agencies to take a specific action, as opposed to with waiver (and, defendant respectfully urges, adoption), which is a negative obligation, in that it requires that an agency not do something under pain of losing exemption applicability that it otherwise would have.

Defendant respectfully suggests that the most sensible course would be to treat an agency's requirements relative to the adoption rule in the way in which an agency's requirements are treated regarding possible waiver, and not in the way that an

---

[8] This statutory tie-in further contrasts the segregability requirement from the additional deliberative process requirement that plaintiff asserts exists, in that there is no similar textual support in the FOIA's language for imposition of such an additional requirement. Quite to the contrary. See note 7, supra.

-14-

agency's requirements are treated under the segregability rule.

However, without conceding that such a showing is required, and

in an abundance of caution, defendant has submitted the

aforementioned Second Mantoan Declaration and the Second Burrows

Declaration, in which the HHS and SSA declarants specifically

state that the draft documents at issue were not adopted by HHS

or by SSA, respectively.  (See Second Mantoan Decl. ¶ 4, Second

Burrows Decl. ¶ 4.)[9]

> II.  Defendant Also Has Properly Used the
>      Attorney-Client Privilege to
>      Withhold Documents Under Exemption 5

Plaintiff also challenges defendant's use of the attorney-

client privilege to withhold documents, based upon the argument

that defendant did not "clearly and specifically identify the

legal advice sought and given."  (Pl.'s Opp'n at 23.)  However,

as the decision of this Circuit that is cited in plaintiff's own

brief indicates (see Pl.'s Opp'n at 23), there is no requirement

that an agency specify the advice asked for and provided.

Rather, an agency must show that the withheld information

pertains to confidential communications between attorney and

client and relates to a legal matter for which the client has

sought the attorney's advice.  See Mead Data Cent. v. U.S. Dep't

of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).  Indeed,

---

[9] Finally, it should be noted that many of the draft
documents still at issue (118 out of 150) were also protected
from disclosure pursuant to the attorney-client privilege.

-15-

were an agency forced to divulge the specific nature of the advice "sought and given," there would be a serious risk of destroying the very confidentiality the privilege is meant to protect.

Thus, defendant's <u>Vaughn</u> Index in this case -- as well as the Eckert Declaration, which attests that documents were withheld under the attorney-client privilege because they contained confidential communications for the purposes of seeking legal advice (<u>see</u> Eckert Decl. ¶ 34) -- provide ample justification for defendant's invocation of this privilege.[10] Finally, as the Second Mantoan Declaration specifically explains, the "clearance requests" that plaintiff points to in its brief (<u>see</u> Pl.'s Opp'n at 17) were also appropriately withheld pursuant to this privilege.  (<u>See</u> Second Mantoan Decl. ¶ 5.)

III.   Defendant Has Released All Final
       Documents in its Possession and Has
       <u>Conducted Appropriate Searches for Others</u>

Plaintiff also contends that a number of "final documents" should exist, and, as "final documents," should have been

_____

[10] Plaintiff further complains that defendant has not "evidence[d]" the confidentiality of these communications. (Pl.'s Opp'n at 23.)  The Eckert Declaration, however, specifically states that the communications were confidential. (<u>See</u> Eckert Decl. ¶ 34.)  Beyond this attestation, it is not clear exactly how defendant could further prove confidentiality without either violating the very confidentiality it appropriately seeks to protect or requiring defendant to prove a negative -- i.e. that the documents in question had not been divulged beyond the scope of the attorney-client relationship in question.

-16-

released but were not. (Pl.'s Opp'n at 24-27.) In an effort to
address these very assertions, declarant Mantoan undertook an
additional search for any such "final records," the results of
which are described in her second declaration. (See Second
Mantoan Decl. ¶¶ 6-14.) In two instances, Ms. Mantoan was able
to locate actual final documents, which are attached to her
declaration. (See id. ¶¶ 7-8 and Exs. a-b.) In one case, she
was unable to find the final document in question within HHS's
files, but obtained it from SSA (see id. ¶ 9 & Ex. c), thereby
going well beyond what is required of an agency under the FOIA.
See 45 C.F.R. § 5.2 (2006) (noting right of access to
"information in the possession of the Department"); Yeager v.
DEA, 678 F.2d 315, 321 (D.C. Cir. 1982) (noting that an agency
need not "obtain or regain possession" of a record in responding
to a FOIA request); Cleary, Gottlieb, Steen & Hamilton v. HHS,
844 F. Supp. 770, 779 (D.D.C. 1993) (citing Yeager).[11] In two
other cases, defendant has been unable to locate the final
documents specified. (See Mantoan Decl. ¶ 14.)

The search undertaken by Ms. Mantoan -- which, as described
in her second declaration, included all locations in which it was
reasonable to believe responsive records might exist (see id.
¶ 6) -- was entirely consistent with the standards observed in

_____

[11] This document was also already released to plaintiff by
SSA and is the final version of two of the draft documents
withheld by SSA. (See Second Burrows Decl. ¶ 5.)

-17-

this Circuit regarding an agency's duty to search.  See, e.g.,
Meeropol v. Meese, 790 F.2d 942, 956 (D.C. Cir. 1986) (holding
that search is required to be adequate, not perfect).  In a
number of cases, declarant Mantoan has even identified and
attached as exhibits documents that might represent the final
versions of withheld draft documents, but where the linkage to
the withheld drafts is far from clear.  (See Mantoan Decl. ¶ 10.)

Finally, in several instances Ms. Mantoan has attested to
the fact that withheld draft documents did not yield final
documents representing agency positions or decisions.  (See id.
¶¶ 11-13.)[12]  Just as agency deliberations do not always yield
agency decisions, see Sears, 421 U.S. at 151-52, draft documents
do not always yield final versions.  As declarant Mantoan has
attested, this is the case for several of the documents that
plaintiff believes should exist.  (See Mantoan Decl. ¶¶ 11-13.)
Because no final versions of these documents actually do exist,
there was no withholding, much less an unjustified withholding.

IV.  Plaintiff Has Failed to Satisfy
the Requirements for a Fee Waiver
Under 5 U.S.C. § 552(a)(4)(A)(iii)

Lastly, plaintiff asserts that its request for a fee waiver
was improperly denied primarily because defendant should have
considered it in light of the fact that the request "sought

---

[12] See also Second Burrows Decl. ¶ 6 (referencing draft
document for which no final version was produced).

-18-

meaningful information," rather than on the basis of what was actually released to plaintiff.  (Pl.'s Opp'n at 30 (emphasis added).)  This of course misses the fundamental point that a request for a fee waiver should be judged on the basis of the records actually disclosed, and not on the basis of what merely was requested.  <u>See</u> 5 U.S.C. § 552(a)(4)(A)(iii).  This point has been borne out by a large body of authority in this Court.  <u>See, e.g.</u>, <u>Klein v. Toupin</u>, Civil No. 05-647, 2006 U.S. Dist. LEXIS 32478, at *12 (D.D.C. May 24, 2006) (referencing requirement that <u>disclosure</u> benefit general public) (emphasis added); <u>VoteHemp, Inc. v. DEA</u>, 237 F. Supp. 2d 55, 62 (D.D.C. 2002) (recognizing need to evaluate benefit to public of disclosure); <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) (taking account of rule that disclosure must benefit general public); <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 122 F. Supp. 2d 5, 9-10 (D.D.C. 2000) (same); <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, No. 99-2315, 2000 WL 33724693, at *5 (D.D.C. Aug. 17, 2000) (same).[13]

_____

[13] A smaller number of cases in this Court have held that fee waiver requests should be based on the request, not on the disclosed documents.  <u>See</u> <u>S. Utah Wilderness Alliance</u>, 402 F. Supp. 2d 82, 90 (D.D.C. 2005); <u>Judicial Watch, Inc. v. U.S. Dep't of Transp.</u>, No. 02-566, 2005 WL 1606915, at *4 (D.D.C. July 7, 2005); <u>Judicial Watch v. U.S. Dep't of Energy</u>, 310 F. Supp. 2d 271, 295 (D.D.C. 2004); <u>see also</u> <u>Project on Military Procurement v. Dep't of the Navy</u>, 710 F. Supp. 362, 367 n.11 (D.D.C. 1989) (judging fee waiver request on basis of requested documents, but acknowledging that the "agency may be correct in its assertion
                                                      (continued...)

-19-

Indeed, the very language of the FOIA, which speaks of granting fee waivers where "disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding," 5 U.S.C. § 552(a)(4)(A)(iii), requires such an analysis.  To hold otherwise would suggest that the general public is somehow benefitted from documents it may never see.  See, e.g., McClain v. U.S. Dep't of Justice, No. 97-0385, 1999 WL 759505, at *3 (N.D. Ill. Sept. 1, 1999) (denying fee waiver request where requester's only planned dissemination was to groups that had not shown interest in documents plaintiff had requested).

Indeed, the fact that the FOIA and corresponding agency regulations require that those seeking a fee waiver prove their ability to disseminate the records that are received -- see id.; 45 C.F.R. § 5.45(b)(3) (2006); Judicial Watch v. Rossotti, 326 F.3d 1309, 1314 (D.C. Cir. 2003) (holding that FOIA "requires" requester to demonstrate" exactly how and to whom it will disseminate"); Fitzgibbon v. USAID, 724 F. Supp. 1048, 1050 (D.D.C. 1989) (noting dissemination requirement) -- also supports the statutory rule that fee waiver requests should be evaluated solely on the basis of disclosed records.  A requester can disseminate only what it actually receives.

---

[13](...continued)
that the appropriateness of a fee waiver will depend, in part, upon the applicability of the FOIA exemptions").

-20-

In the instant action, all of the records that defendant and SSA have withheld, including those no longer sought by plaintiff (see Pl.'s Opp'n at 6 n.4), were withheld pursuant to the deliberative process privilege.[14]  As discussed previously, a primary justification for this privilege is to prevent confusion in the general public caused by release of documents that do not reflect final agency positions or justifications for agency actions.  Plaintiff thus asks this Court for a ruling that it should receive a public interest fee waiver largely for requesting documents whose dissemination would in fact detract from the public understanding.[15]

Defendant respectfully submits that both this Court and the agency should evaluate plaintiff's fee waiver request on the

---

[14] As noted, some were withheld also pursuant to the attorney-client privilege.

[15] Plaintiff no longer challenges defendant's characterization of a large number of the documents as being exempt under the deliberative process privilege.  (See Pl.'s Opp'n at 6 n.4.)  Thus, irrespective of the Court's ruling on the remaining documents, a ruling in accordance with plaintiff's claim for a fee waiver based on the subject of its request, and not on the documents to be disclosed, would necessarily involve granting a waiver in part for documents which, if released, would confuse the public.  It also bears mention that while in the instant action defendant has released over 1000 pages of records, plaintiff's argument, if carried to its logical conclusion, suggests that a requester would be entitled to a waiver of search fees even in a situation where a defendant agency was found to have appropriately withheld all responsive records, thereby granting a requester a fee waiver even though it would literally be disseminating nothing to the public.  Surely the FOIA does not intend such an incongruous result.

-21-

basis of the disclosed records.  On this point, defendant
reasserts the arguments made in its previous filing, that
plaintiff's further dissemination of records already provided to
the public by defendant through government Web sites and the
Federal Register would not contribute significantly to public
understanding of government operations, for reasons discussed
presently.

     With regard to the documents that it has actually received,
plaintiff argues that its further dissemination of these
materials will make a significant contribution to the public
understanding, in particular because of the "newness" of the
records it seeks.  (Pl.'s Opp'n at 31.)  To be sure, plaintiff is
correct that the records it seeks are of relatively recent
vintage.  But this simply ignores the fact that the vast majority
of these new records have already been made available to the
public by defendant.  (See Eckert Decl. ¶ 18.)  Further
dissemination by plaintiff, therefore, would not contribute
significantly to the public understanding.  See, e.g., Judicial
Watch v. Dep't of Justice, 365 F.3d 1108, 1127 (D.C. Cir. 2004)
(denying fee waiver for documents already in public domain where
requester had failed to show how further release of these
documents would contribute significantly to the public
understanding); VoteHemp, 237 F. Supp. 2d at 60 (denying fee
waiver where requester had failed to show how its dissemination

-22-

would contribute to public understanding beyond that already
provided through prior agency disclosures).  Plaintiff's only
response on this point is its weak claim that "even though the
new regulations had been published in the Federal Register,
public knowledge about the basic changes . . . was minimal."
(Pl.'s Opp'n at 30.)  Even were this relevant, however,[16] there
is simply no supporting evidence for this assertion.

Finally, plaintiff challenges defendant's conclusion that
because some of the disclosed records do not describe federal
government activity, further dissemination of these records would
not inform the public concerning operations of the federal
government.  In so doing, plaintiff relies on Institute for
Wildlife Protection v. United States Department of Fish &
Wildlife Service, 290 F. Supp. 2d 1226, 1230 (D. Or. 2003).
Plaintiff correctly notes that in that case, the agency
defendant's regulations concerning FOIA fee waivers specifically

---

[16] Along these lines, plaintiff argues that this Court's
recent decision in Prison Legal News v. Lappin, 436 F. Supp. 2d
17 (D.D.C. 2006), weighs in favor of a fee waiver.  In Prison
Legal News, however, it was clear that this Court was concerned
with the extent to which the government could be said to have
truly disseminated the records in question in a meaningful way.
See id. at 24.  Even accepting this Court's conclusion for the
moment, it is unchallenged that the relevant facts on this point
are vastly different in the instant action and that the
government has already disseminated the records in question (see
Eckert Decl. ¶ 19).  As the Judicial Watch and VoteHemp rulings
establish, this means that further dissemination by plaintiff
would not make a significant contribution to the public
understanding.

-23-

stated that "records developed outside of the government and
submitted to or obtained by the Department may relate to the
operations and activities of the government."  43 C.F.R.
§ 2.21(a)(2)(i) (2006).  (Pl.'s Opp'n at 33, citing 43 C.F.R.
§ 2.21(a)(2)(i).)  However, plaintiff fails to mention that
defendant's fee waiver regulations contain no such provision.
Thus, the facts and ruling of Inst. for Wildlife Prot. are
inapposite here.  In this regard, defendant respectfully
reiterates that the documents in question -- pamphlets and
brochures submitted by private contractors seeking to do business
with defendant -- will contribute little, if anything, to public
understanding of agency activities, as they do not in any direct
or substantial way concern the activities of the federal
government.  See, e.g., Judicial Watch v. Reno, No. 00-0723, 2001
WL 1902811, at *10 (D.D.C. March 30, 2001) (ruling that while
responses by government agency to citizen letters are likely to
shed light on government activity, letters themselves did not).

-24-

<u>Conclusion</u>

For the foregoing reasons, and based upon the entire record herein, defendant respectfully requests that its motion for summary judgment be granted and that plaintiff's motion be denied.

                              Respectfully submitted,


                              _____
                              JEFFREY A. TAYLOR
                              (DC Bar #498610)
                              United States Attorney


                              _____
                              RUDOLPH CONTRERAS
                              (DC Bar No. 434122)
                              Assistant United States Attorney


                                         /s/
                              _____
Dated:  October 31, 2006      MICHAEL J. SHERMAN
                              Attorney-Advisor
                              Office of Information and Privacy
                              United States Department of Justice
                              1425 New York Ave., NW, Suite 11050
                              Washington, DC  20530-0001
                              (202) 616-5501