DEPARTMENT OF HEALTH AND HUMAN SERVICES
OFFICE OF THE GENERAL COUNSEL
General Law Division
Room 4760 Cohen Building
330 Independence Ave., S.W.
Washington, D.C. 20201

Facsimile Transmission Sheet

TO: Michael J. Sherman, Esq.        FROM:   Patricia Mantoan
    U.S. Dept. of Justice

                                     Phone: (202) 619-0177

                                     Fax:   (202) 619-2922

Total Pages                          Fax Number: 202-514-1009

⟩] plus cover                        Date:    10/27/2006

    Center for Medicare Advocacy, Inc. v. HHS, Civil no.
    05-02266

Attached is Exhibit A for the supplemental declaration.

The attached information is **CONFIDENTIAL** and is intended only for the use of the addressee(s)
identified above. If the reader of this message is not the intended recipient(s) or the employee or agent
responsible for delivering the message to the intended recipient(s), please note that any dissemination,
distribution or copying of the communication is strictly prohibited. Anyone who receives this
communication in error should notify us immediately by telephone (202-619-0150) and return the
original message to us at the address above via U.S. Mail. Thank you.

Fax sent by : 2026192923 OGC-GLD 10-27-06 12:31 Pg: 2/28
Case 1:05-cv-02266-RBW    Document 25-6    Filed 10/31/2006    Page 2 of 28

United States Department of Health and Human Services: Office of Medicare Hearings an... Page 1 of 7



United States Department of
## Health & Human Services

Home: OMHA

## Office of Medicare Hearings and Appeals

### What You Need To Know To Request a Medicare Hearing Before an Administrative Law Judge

- What You Need To Know To Request a Hearing
- When To Request a Hearing
- How To Request a Hearing
- Development of Your Case
- Your Right to Representation
- Appointing a Representative
- Fees for Appointed Representative
- Time Limits for Appealing to the OMHA ALJ
- When and Where the Hearing Is Held
- Why You Should Have Your Hearing by Videoteleconference (VTC)
- How is a VTC Hearing Different?
- How is a VTC Hearing Scheduled?

- Steps in the Hearing Process
- If You Do Not Wish To Appear or Cannot Appear at the Hearing
- You Should Go to a Scheduled Hearing
- When We Can Pay Travel Expenses
- Tips to Shorten the Hearing Process
- How Long the Process Takes
- Average Time for Your Hearing
- Scheduling of Your Hearing
- After Your Hearing
- Medicare Appeals Review
- Tips for a Timely Review Process

**What You Need To Know To Request a Hearing**

If dissatisfied with an initial determination, an appellant or his or her representative may request a redetermination of that decision or determination, the first level of appeal, with the Affiliated Contractor (or Fiscal Intermediary or Carrier). A person at the Affiliated Contractor (or Fiscal Intermediary or Carrier) not involved in the initial determination will conduct an independent review of the initial determination, including a review of the evidence, findings and additional evidence submitted by parties or obtained by the Affiliated Contractor.

The second level of appeal is called a "reconsideration" and it is completed by a Qualified Independent Contractor or QIC. Similar to the first level of appeal, the QIC will conduct an independent, on-the-record review of your case. The QIC has not had any involvement in the initial determination or redetermination. The QIC will send the appellant or their representative a letter explaining how they made the reconsideration.

If an appellant disagrees with the QIC's reconsideration, he or she has the right to request a hearing before an Administrative Law Judge (ALJ), the third level of appeal. Appellants, or their representatives, dissatisfied with a reconsideration generally must file written requests for an ALJ hearing within 60 days from receipt of the notice of reconsideration. In addition, the appeal must be above $110 (in Fiscal Year 2006) in order for the ALJ to hear the case. Information on how to file an appeal is contained in the Notice of Reconsideration received from the QIC. The address for the correct field office is also contained in that Notice. Addresses and contact information for all of the OMHA field offices can be found at http://www.hhs.gov/omha/offices.html.

In the fourth level of appeal, if the appellant or his or her representative disagrees with the decision of

*Exhibit d*

10/17/2006

the ALJ, a request for review may be filed with the Medicare Appeals Council (MAC).

Finally, at the fifth level of appeal, under certain circumstances, the appellant or his or her representative may appeal the MAC's decision to the appropriate Federal District Court.

Please follow the instructions below when filing your Request for a Medicare Hearing before an ALJ.

- If your reconsideration determination was issued by a Qualified Independent Contractor please use form CMS-20034A/B [PDF - 38 KB].
- If your reconsideration or fair hearing determination was issued by a Fiscal Intermediary, Carrier, or Quality Improvement Organization please use form CMS-5011A/B [PDF - 41 KB].
- If you wish to appoint a representative to act on your behalf in exercising your right to an initial determination or appeal, please use form CMS-1696 [PDF - 10 KB].

All CMS forms can be found at http://www.cms.hhs.gov/forms/.

### When To Request a Hearing
The hearing process generally begins after a QIC has issued a reconsideration. If you are dissatisfied with the reconsideration issued by a QIC, you or your representative may request a hearing before an ALJ. The ALJ will make an independent decision based on the evidence submitted and that the ALJ obtains, including any testimony that you provide at the hearing.

### How To Request a Hearing
To request a hearing, please follow the instructions in the reconsideration notice from the QIC. The reconsideration notice from the QIC will contain information concerning which OMHA field office to contact to request an ALJ hearing. If you have additional questions, please contact the OMHA field office and they will answer your questions.

### Development of Your Case
As soon as your request for hearing is received by an OMHA field office, our staff sets up a computer file to keep track of your case.

The OMHA field office staff makes sure that we have all the materials used in processing your claim and all the medical and other evidence that may be available from other sources. If any of this material appears to be missing, we will request it.

### Your Right to Representation
You may want a lawyer, friend, or other qualified person to represent you. If you decide to have a representative, you need to tell us by filling out a special form (CMS 1696 - Appointment of Representative). If you have a representative, you may have to pay his or her fees.

### Appointing a Representative
An appointed representative may act on behalf of an individual or entity in exercising his or her right to an initial determination or appeal. The Appointment of Representative form (CMS 1696) must be used. An appointment of representation must:

- Be in writing and signed and dated by both the party and individual agreeing to be the representative;
- Provide a statement appointing the representative to act on behalf of the party, and in the case of a beneficiary, authorizing the adjudicator to release identifiable health information to the appointed representative;
- Include a written explanation of the purpose and scope of the representation;

- Contain both the party's and appointed representative's name, phone number, and address;
- Identify the beneficiary's Medicare health insurance claim number;
- Include the appointed representative's professional status or relationship to the party;
- Be filed with the entity processing the party's initial determination or appeal. Unless revoked, an appointment is considered valid for 1 year from the date that the Appointment of Representative form is signed. Once the form is filed with the person or entity handling the initial determination or appeal, the representation is valid for the duration of the individual's appeal.

**Fees for Appointed Representatives**
An appointed representative for a beneficiary who wishes to charge a fee for services rendered in connection with an appeal at the ALJ level must obtain approval of the fee from the ALJ.

No award of attorney's or any other representative's fees or any costs in connection with an appeal may be made against the Medicare trust funds.

A provider or supplier that furnished the items or services to a beneficiary that are the subject of the appeal may represent that beneficiary in an appeal under this subpart, but the provider or supplier may not charge the beneficiary any fee associated with the representation. In addition, the provider or supplier may not represent the beneficiary on the issues described in section 1879(a)(2) of the Act, unless the provider or supplier waives the right to payment from the beneficiary for the services or items involved in the appeal.

For more information on fee agreements, including the reasonableness of representative fees, please contact your Office of Medicare Hearings and Appeals field office.

**Time Limits for Appealing to the OMHA ALJ**
You or your representative may file a written request for appeal of a reconsideration within 60 days from receipt of the notice of reconsideration with the entity specified in the reconsideration notice. If you do not file an appeal within 60 days, the ALJ may dismiss your appeal. This means that you may not be eligible for the next step in the appeal process and that you may also lose your right to any further administrative or judicial review.

If you file an appeal after the 60-day deadline, you must explain the reason you are late and request that we extend the time limit. The OMHA field office staff can explain further and help you file a written request to extend the time limit.

**When and Where the Hearing Is Held**
Generally, once the appeal is received by the OMHA field office, a hearing will be scheduled. The OMHA field office will attempt to schedule all hearings promptly. There are four field offices nationwide and hundreds of videoteleconference (VTC) sites where hearings may be held. This extensive network assists us in providing you with ready access to hearings, even in remote locations. It also lessens the likelihood that you may need to travel far for your hearing.

Before your hearing, we will send you a notice telling you the date, time, and place of the hearing. The ALJs hold hearings through VTC, over the telephone, or in person. The ALJs will hold most hearings by VTC or over the telephone unless the ALJ determines that there are special or extraordinary circumstances. As an alternative, an appellant may request an in-person hearing, which may be granted if good cause is shown.

**Why You Should Have Your Hearing by Videoteleconference (VTC)**
Often an appearance by VTC can be scheduled faster than an in-person appearance and that means less waiting time for your hearing. Also, a VTC hearing location may be closer to your home and that might make it easier for you to have witnesses or other people accompany you.

A VTC hearing allows you and the other hearing participants to see and hear each other through large color television screens. The ALJ remains in his or her location, and you go to a site that is generally more convenient to where you live. A technician is there to make sure the equipment works smoothly, but the technician does not listen in on the hearing. No one except your representative or someone else you might choose, witnesses at the hearing, or others that the ALJ considers necessary and proper will be allowed to listen in or view the hearing. You will be able to see, hear and talk to the ALJ at the hearing.

We realize that not everyone is familiar with how VTC works. The OMHA field office staff will be glad to answer any questions you might have concerning VTC hearings.

### How Is a VTC Hearing Different?

The ALJ can see you and speak with you and anyone who comes to the hearing with you, such as your representative or any witnesses. You can see the ALJ and anyone who is with the ALJ — or anyone at another VTC site, such as a medical or non-medical expert. Transmission of the hearing is secure, and your privacy is protected. We do not videotape hearings, but we do make audio recordings -- as we do for all hearings.

### How Is a VTC Hearing Scheduled?

If we are using VTC equipment in your area, we will contact you to schedule a VTC hearing for you at a convenient time. The ALJ will consider any preference you may have expressed for or against appearing by VTC when setting the time and place of your hearing. You will have an opportunity to object to the set time or place. If you have any questions or want more information, please contact your OMHA field office when you receive your acknowledgment of your request for a hearing.

A hearing clerk in the OMHA field office will have a list of the VTC sites located nearest to your home, and will work with you in selecting a site for the hearing.

### Steps in the Hearing Process

*Before the hearing:*

- You and your representative, if you have one, may look at the evidence in your case file and under certain circumstances, you may be able to submit new evidence.
- **It is very important that you submit any new evidence within 10 days of receiving the Notice of Hearing.**

*At the hearing:*

- The ALJ explains the issues in your case and may question you and any witnesses you bring to the hearing.
- The ALJ may ask other witnesses, such as a doctor or other experts, to come to the hearing.
- You and the witnesses answer questions under oath. The hearing is informal, but we do make audio recordings.

*After the hearing:*

- The ALJ issues a written decision after considering all the evidence.
- The ALJ sends you and your representative, if you have one, a copy of the decision.

### If You Do Not Wish To Appear or Cannot Appear at the Hearing
If you do not wish to appear in person at the hearing, you must let us know in writing when you request

the hearing or before the hearing date. You may state your reasons, and ask the ALJ to make a decision based on the evidence in your file.

The ALJ may decide that your presence at the hearing will be helpful, especially if only you can best explain certain facts. If so, the ALJ may require your presence.

### You Should Go to a Scheduled Hearing
If you wish to appear at a hearing and the ALJ schedules a hearing, you and your representative, if you have one, should attend. **It is very important that you attend a scheduled hearing. If for any reason** you cannot attend, contact the ALJ as soon as possible **before the hearing** and state the reason.

The ALJ will reschedule the hearing that you do not attend if you have provided a good reason for not going. **If you do not go to a scheduled hearing and the ALJ decides that you do not have a good reason for not going, your request for hearing may be dismissed.**

### When We Can Pay Travel Expenses
If it is determined that you must travel more than 75 miles from your home or office to attend a VTC hearing, we may be able to pay certain costs. Here are the general policies that apply:

- We may be able to pay your transportation expenses such as the cost of a taxi, bus ticket or expenses for driving your car, or travel by rail in some cases. An ALJ may not authorize payment for transportation by airplane.

- The ALJ may also approve payment of similar travel expenses for your representative and any witnesses the ALJ determines are needed at the hearing.

- You must submit a written request for payment of travel expenses to the ALJ at the time of the hearing or as soon as possible after the hearing. List what you spent and include supporting receipts. If you requested a change in the scheduled location of the hearing to a location farther from your residence, we cannot pay for any **additional** travel expenses beyond the original location of the hearing.

Please contact our OMHA field office staff to answer any questions you might have concerning payment of travel expenses.

### Tips to Shorten the Hearing Process
**Help Us Process Your Hearing As Quickly As Possible.** There are a number of things you can do to speed up the processing of your request for a hearing.

- If you wish to appoint a representative, do so as early as possible. Your representative will want time to review your file and prepare for the hearing. If you wait until the date of the hearing or shortly before, your hearing may have to be postponed to provide the representative with the necessary preparation time. Rescheduling a hearing adds a substantial amount of time to the processing of your hearing request.

- **Make sure that any new or updated evidence you want considered has been submitted either with the Request for the ALJ hearing, or within 10 days of receiving the Notice of the ALJ hearing** by either you or your representative (the earlier the better). This evidence may result in an early favorable decision for you, eliminating the need for a hearing. If a hearing is necessary, the early submission of this evidence will eliminate the delays caused because additional evidence has not yet been received.

- Notify us of any changes in your address immediately.

## How Long the Process Takes
We receive many requests for information about the hearing process from appellants and/or their representatives. Most of the time, these requests relate to how soon the hearing will be scheduled and how long it may take an ALJ to make a decision in his or her case. The information below may answer some of your questions.

## Average Time for Your Hearing
For Medicare Part A and Part B claims appeals cases that come from QIC reconsiderations, the ALJs generally must complete their review and render a decision within a 90-day timeframe. However, each case is unique and under certain circumstances some cases may take more or less time to complete than others.

## Scheduling of Your Hearing
Generally, our ALJs set their hearing schedules a few weeks ahead of time. Your hearing may take longer to schedule if we need to schedule a medical or non-medical expert to testify, or if your attorney or other representative cannot be present on the date we select.

- You will receive a written notice of hearing at least 20 days before your hearing is scheduled.
- OMHA field office staff will work with you to arrange details associated with going to a VTC site to participate in the hearing.
- If you choose to participate and cannot participate in the scheduled hearing for some reason, you must contact the ALJ as soon as possible to request a postponement. Only the ALJ can decide whether your hearing can be rescheduled.
- You should plan to arrive at the VTC hearing site at least ½ hour before the scheduled time of your hearing.

## After Your Hearing
- After the ALJ holds your hearing, he or she may decide that additional evidence must be obtained is needed.
- After the ALJ is satisfied that all the relevant evidence is in the record, he or she will prepare the decision in your case.

## Medicare Appeals Review
For more information on the Medicare Appeals Council, please see its website located at http://www.hhs.gov/dab/2005.html.

## Tips for a Timely Review Process
- Make sure you request review within 60 days after you receive the OMHA ALJ hearing decision. If you are unable to meet this deadline, explain your reasons for missing it in your request.

- We request that you do not make automatic, multiple requests for the status of your request for review.

Please consult the Secretary's regulations at 42CFR Part 405, Subpart 1, for a full and accurate description of the appeal process.

Last revised: March 14, 2006

HHS Home | Questions? | Contact HHS | Site Feedback | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services · 200 Independence Avenue, S.W. · Washington, D.C. 20201

*United States, Department of*
# Health & Human Services

Home: OMHA

## Office of Medicare Hearings and Appeals

## What You Need to Know to File an Appeal

- When and How Can I Appeal?
- How Many Appeal Levels Are There?
- What Is a Reconsideration?
- Asking for a Hearing

- Medicare Appeals Council Review
- Filing Suit in Federal Court
- Can Someone Help Me?

### When and How Can I Appeal?
If you wish to appeal, you must make your request in writing within 60 days from the date you receive the reconsideration decision from the Qualified Independent Contractor (QIC). We assume you receive the letter five days after the date on the letter, unless you can show us you received it later. In addition, your appeal must be above a certain dollar amount that will be adjusted annually in order for you to request an ALJ hearing. Call your OMHA field office if you need help with your appeal.

### How Many Appeal Levels Are There?
Generally, there are five levels of appeal after you receive your initial determination. They are:

- Redetermination by an Affiliated Contractor (or Fiscal Intermediary or Carrier)
- Reconsideration by a Qualified Independent Contractor (QIC);
- A Hearing by an Administrative Law Judge;
- Review by the Medicare Appeals Council; and
- Review by a Federal District Court.

When OMHA sends you a letter about a decision on your appeal, we will tell you how to appeal the ALJ decision.

### What Is a Reconsideration?
Reconsideration is a complete review of your claim by a Qualified Independent Contractor that did not take part in the initial determination or redetermination.

The Qualified Independent Contractor will look at the initial determination and re-determination, including all the evidence submitted when the initial determination or redetermination was made, plus any new evidence.

### Asking for a Hearing
If you disagree with the reconsideration decision, you may ask for a hearing. An ALJ who had no part in the initial determination, redetermination, or the reconsideration of your case will conduct the hearing. The ALJ will notify you of the time and place of the hearing.

In general, hearings will be conducted by videoteleconference (VTC) or telephone, unless the ALJ determines that VTC is not available, or special or extraordinary circumstances exist, or you request an

in-person hearing and your request is granted for good cause.

During the hearing, the ALJ will question you and any witnesses you bring to the hearing. Other witnesses, such as medical and non-medical experts, also may provide information at the hearing.

After the hearing, we will send you a letter and a copy of the ALJ's decision for your case.

**Medicare Appeals Council Review**
For more information on the Medicare Appeals Council, please see its website located at: http://www.hhs.gov/dab/mod2005.html

**Filing Suit in Federal Court**
If you disagree with the Medicare Appeals Council decision or if the Medicare Appeals Council decides not to review your case, you may be able to file a lawsuit in a federal district court. The Medicare Appeals Council notice of decision or letter denying review of an ALJ decision will give general information about filing a court complaint. It is not appropriate, however, for the Medicare Appeals Council to offer advice or assistance concerning whether, and how, an appellant may seek court review.

**Can Someone Help Me?**
Yes. Many people handle their own Medicare appeals, but you can choose a lawyer, a friend or someone else to help you. Someone you authorize or appoint to help you is called your "representative." We will work with your representative just as we would work with you.

Your representative can act for you and will receive a copy of any decisions we make about your appeal. For more information, see Your Right to Representation

Please consult the Secretary's regulations at 42CFR Part 405, Subpart 1, for a full and accurate description of the appeal process.

Last revised: March 14, 2005

HHS Home | Questions? | Contact HHS | Site Feedback | Site Map | Accessibility | Privacy Policy | Freedom of Information Act | Disclaimers

The White House | FirstGov

U.S. Department of Health & Human Services · 200 Independence Avenue, S.W. · Washington, D.C. 20201

http://www.hhs.gov/omha/appeal.html                                      10/17/2006



THE MEDICARE APPEALS PROCESS

## Medicare Learning Network

Medicare Learning Network

---

ALJ hearings are generally held by video-teleconference (VTC) or by telephone. If you do not want a VTC or telephone hearing, you may ask for an in-person hearing. An appellant must demonstrate good cause for requesting an in-person hearing. The ALJ will determine whether an in-person hearing is warranted on a case-by-case basis. Appellants may also ask the ALJ to make a decision without a hearing (on-the-record). Hearing preparation procedures are set by the ALJ. CMS or its contractors may become a party to, or participate in, an ALJ hearing after providing notice to the ALJ and all parties to the hearing.

The ALJ will generally issue a decision within 90 days of receipt of the hearing request. This time-frame may be extended for a variety of reasons including, but not limited to, the case being escalated from the reconsideration level, the submission of additional evidence not included with the hearing request, the request for an in-person hearing, the appellant's failure to send notice of the hearing request to other parties, and the initiation of discovery if CMS is a party. If the ALJ does not issue a decision within the applicable timeframe, you may ask the ALJ to escalate the case to the Appeals Council level.

*Note: The amount in controversy required to request an ALJ hearing is increased annually by the percentage increase in the medical care component of the consumer price index for all urban consumers. The amount in controversy threshold for 2006 is $110.

## Fourth Level of Appeal: Appeals Council Review

If a party to the ALJ hearing is dissatisfied with the ALJ's decision, the party may request a review by the Appeals Council. There are no requirements regarding the amount of money in controversy. The request for Appeals Council review must be submitted in writing within 60 days of receipt of the ALJ's decision, and must specify the issues and findings that are being contested. (Refer to the ALJ decision for details regarding the procedures to follow when filing a request for Appeals Council review.)

In general, the Appeals Council will issue a decision within 90 days of receipt of a request for review. That timeframe may be extended for various reasons, including but not limited to, the case being escalated from an ALJ hearing. If the Appeals Council does not issue a decision within the applicable time frame, you may ask the Appeals Council to escalate the case to the Judicial Review level.

### Fifth Level of Appeal: Judicial Review in U.S. District Court

### For More Information

### Medicare Learning Network

This brochure provides an overview of the five levels of the Medicare Part A and Part B administrative appeals process available to providers, physicians and other suppliers who provide services and supplies to Medicare beneficiaries, as well as details on where to obtain more information about this appeals process.

**Background**

Section 521 of the Medicare, Medicaid, and SCHIP Benefits Improvement and Protection Act of 2000 (BIPA) included provisions aimed at improving the Medicare fee-for-service appeals process. Part of these provisions mandate that all second-level appeals (for both Part A and Part B), also known as reconsiderations, be conducted by Qualified Independent Contractors (QICs).

The reconsiderations that will be conducted by the QICs will replace the Hearing Officer Hearing process for Medicare Part B claims and establish a new second level of appeal for Medicare Part A claims.

**Medicare Contractors**

The Centers for Medicare & Medicaid Services (CMS) contracts with private insurance companies (called carriers for Part B and fiscal intermediaries (FIs) for Part A) to perform many processing functions on behalf of Medicare, including local claims processing and the first level appeals adjudication functions.

NOTE: Medicare Contracting Reform (MCR) Update
Section 911 of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003 (MMA) created numerous contracting reforms. A key aspect of these reforms is that Medicare will begin integrating FIs and carriers into a new single authentic called Medicare Administrative Contractors (MACs). Beginning October 1, 2005, and over the next several years, FIs and carriers will be consolidated into MACs. By October 2011, all existing FIs and carriers will be transitioned into MACs. Providers may access the most current MCR information to determine the impact of these changes at http://www.cms.hhs.gov/MedicareContractingReform/ on the CMS website.

**Appealing Medicare Decisions**

- Once an initial claim determination is made, providers, participating physicians and other suppliers have the right to appeal.

- Physicians and other suppliers who do not take assignment on claims have limited appeal rights.

- Beneficiaries may transfer their appeal rights to non-participating physicians, or other suppliers who provide the items or services and do not otherwise have appeal rights. Form CMS-20031 must be completed and signed by the beneficiary and the non-participating physician or supplier to transfer the beneficiary's appeal rights.

- All appeal requests must be made in writing.

**Five Levels in the Appeals Process**

Medicare offers five levels in the Part A and Part B appeals process. The levels, listed in order, are:

- Redetermination by the FI or the carrier
- Reconsideration by a QIC
- Hearing by an Administrative Law Judge (ALJ)
- Review by the Medicare Appeals Council within the Departmental Appeals Board, (hereinafter "the Appeals Council")
- Judicial review in U.S. District Court

**First Level Appeal: Redetermination**

A redetermination is an examination of a claim by the FI or carrier personnel who are different from the personnel who made the initial determination. The appellant (the individual filing the appeal) has 120 days from the date of receipt of the initial claim determination to file an appeal. A minimum monetary threshold is not required to request a redetermination.

**Requesting a Redetermination**

A request for a redetermination may be filed on Form CMS-20027 available at www.cms.hhs.gov/forms. A written request not made on Form CMS-20027 must include:

- Beneficiary name
- Medicare Health Insurance Claim (HIC) number
- Specific service and/or item(s) for which a redetermination is being requested
- Specific date(s) of service
- Name and signature of the party or the authorized or appointed representative of the party

The appellant should attach any supporting documentation to their redetermination request. Contractors will generally issue a decision (either a letter or a revised remittance advice) within 60 days of receipt of the redetermination request.

Note: Contractors can no longer correct minor errors and omissions on claims through the appeals process. Such adjustments are now handled as claim adjustments. See the following MRN Matters article located at http://www.cms.hhs.gov/MLNMattersArticles/downloads/SE0429.pdf on the CMS website.

**Second Level of Appeal: Reconsideration**

A party to the redetermination may request a reconsideration if dissatisfied with the redetermination. A QIC will conduct an independent review of medical necessity issues by a panel of physicians or other health care professionals. The Part A QICs began processing reconsiderations on May 1, 2005. The Part B QICs began conducting reconsiderations on January 1, 2006 for redeterminations issued by carriers on or after January 1, 2006. Redeterminations issued prior to January 1, 2006 have appeal rights to the carrier hearing officer. A minimum monetary threshold is not required to request a reconsideration.

**Requesting a Reconsideration**

A written reconsideration request must be filed within 180 days of receipt of the redetermination. To request a reconsideration, follow the instructions on your Medicare Redetermination Notice (MRN). A request for a reconsideration may be made on Form CMS-20033. This form will be mailed with the MRN. If the form is not used, the written request must contain all of the following information:

- Beneficiary name
- Medicare Health Insurance Claim (HIC) number
- Specific service(s) and/or item(s) for which the reconsideration is requested
- Specific date(s) of service
- Name and signature of the party or the authorized or appointed representative of the party
- Name of the contractor that made the redetermination

The request should clearly explain why you disagree with the redetermination. A copy of the MRN, and any other useful documentation should be sent with the reconsideration request to the QIC identified in the MRN. Documentation that is submitted after the reconsideration request has been filed may result in an extension of the timeframe a QIC has to complete its decision. Further, any evidence noted in the redetermination as missing and any other evidence relevant to the appeal must be submitted prior to the issuance of the reconsideration decision. Evidence not submitted at the reconsideration level may be excluded from consideration at subsequent levels of appeal unless you show good cause for submitting the evidence late.

**Reconsideration Decision Notification**

Reconsiderations are conducted on-the-record and, in most cases, the QIC will send its decision to all parties within 60 days of receipt of the request for reconsideration. The decision will contain detailed information on further appeals rights if the decision is not fully favorable. If the QIC cannot complete its decision in the applicable timeframe, it will inform the appellant of their right to escalate the case to an ALJ.

**Third Level of Appeal: Administrative Law Judge Hearing**

If at least $110* remains in controversy following the QIC's decision, a party to the reconsideration may request an ALJ hearing within 60 days of receipt of the reconsideration. (Refer to the reconsideration decision letter for details regarding the procedures for requesting an ALJ hearing.) Appellants must also send notice of the ALJ hearing request to all parties to the QIC reconsideration and verify this on the hearing request form or in the written request.

# CHAPTER 7

## INQUIRIES, OVERPAYMENTS, AND APPEALS



This chapter discusses inquiries, overpayments, and appeals.

## Inquiries

Medicare providers and suppliers may submit inquiries about claims, coverage, and reimbursement guidelines to Medicare Contractors either by telephone or in writing. Customer Service Representatives (CSR) are available to handle telephone inquiries continuously during normal business hours for all time zones of the geographic area serviced, Monday through Friday. To find Medicare Contractor contact information, visit *www.cms.hhs.gov/apps/contacts* on the Centers for Medicare & Medicaid Services (CMS) website.

Contractors also use automated self-help tools such as Interactive Voice Response (IVR) services, which may be available up to 24 hours a day. IVR services provide information about the following topics:

- Normal business hours;
- CSR service hours of operation;
- General Medicare Program;
- General appeal rights and the actions required to exercise appeal rights;
- Claims in process and claims completed; and
- Definitions of the 100 most frequently used Remittance Advice Remark Codes and/or Claim Adjustment Reason Codes, which appear on the Remittance Advice (RA) (as determined by each Contractor).

## Overpayments

Overpayments are funds that a provider, supplier, or beneficiary has received in excess of amounts due and payable under Medicare statutes and regulations. Once a determination of an overpayment has been made, the amount of the overpayment becomes a debt owed to the Federal government. Federal law requires CMS to seek recovery of overpayments, regardless of how an overpayment is identified or caused.

Overpayments are often paid due to the following:

- Duplicate submission of the same service or claim;
- Payment to the incorrect payee;
- Payment for excluded or medically unnecessary services; or
- Payment made as the primary insurer when Medicare should have paid as the secondary insurer.

If Medicare pays more than the correct amount in error, providers and suppliers should make voluntary refunds as soon as possible, without waiting for notification. A notification called a demand letter is sent when an overpayment occurs, which states:

- The service(s) at issue;
- Why the overpayment occurred; and
- The amount being requested.

Refunds are sent to the Medicare Contractor and must include the following information:

- The Provider Identification Number (PIN) and the PIN of the provider who should actually be paid, if applicable;
- The Medicare Health Insurance Claim (HIC) number;
- The date of service;
- The amount overpaid;
- A brief description regarding the reason for the refund;
- A copy of the RA; and
- A check for the overpaid amount.

If the overpayment is not paid in full within 30 days of the date of the first demand letter, interest begins to accrue on day 31. When the Federal government accepts a voluntary refund, it does not affect or limit its right or the right of its agencies or agents to pursue any appropriate criminal, civil, or administrative remedies that arise from or related to applicable claims.

If a provider or supplier disagrees with the overpayment, he or she has the right to appeal the decision. Recoupment will cease if:

- The first recoupment action occurred after December 8, 2003; or
- A first level appeal has been received.

To find additional information about overpayments, see the Medicare Claims Processing Manual (Pub. 100-04) located at *www.cms.hhs.gov/Manuals/IOM/list.asp#TopOfPage* on the CMS website.

### Fee-for-Service Appeals

An appeal is an independent review of an initial determination made by a Medicare Contractor. Generally, a party to the initial determination is entitled to an appeal if he or she is dissatisfied with the determination and files a timely appeal request that contains the necessary information needed to process the request.

A party to an initial determination may be:

- A beneficiary who files a request for payment or has a request for payment filed on his or her behalf by a provider;
- A supplier who has accepted assignment for items or services furnished to a beneficiary that are at issue in the request for payment; or
- A provider of services who files a request for payment for items or services furnished to a beneficiary.

A party to a higher level appeal may be:

- The parties to an initial determination, except when a beneficiary has assigned his or her appeal rights;
- A State agency pursuant to the *Code of Federal Regulations (CFR)* at 42 CFR 405.908 (to access the *CFR*, visit *www.gpoaccess.gov/cfr/index.html* on the Web);
- A provider or supplier who accepts assignment of appeal rights for items or services furnished to a beneficiary; or
- A nonparticipating physician or supplier who does not accept assignment for items or services furnished to a beneficiary and may be obligated to make a refund pursuant to §§1834(a)(18), 1834(j)(4), or 1842(l) of the Social Security Act.

A provider or supplier who is not already a party to an appeal may appeal an initial determination for services furnished to a beneficiary if the beneficiary subsequently dies leaving no other party available to appeal the determination.

A party may appoint a representative if he or she wants assistance with their appeal. A physician or supplier may act as a beneficiary's appointed representative. A party may appoint a representative to act on his or her behalf by completing Form CMS-1696, Appointment of Representative (AOR), which is available at *www.cms.hhs.gov/CMSForms/CMSFormslist.asp#TopOfPage* on the CMS website. A party may also appoint a representative through a submission that meets the following requirements:

- It is in writing and is signed and dated by both the party and the individual who is agreeing to be the representative;
- It includes a statement appointing the representative to act on behalf of the party and if the party is a beneficiary, authorizing the adjudicator to release identifiable health information to the appointed representative;
- It includes a written explanation of the purpose and scope of the representation;
- It contains the name, telephone number, and address of both the party and the appointed representative;
- If the party is a beneficiary, the beneficiary's Medicare HIC number;

- It indicates the appointed representative's professional status or relationship to the party; and
- It is filed with the entity that is processing the party's initial determination or appeal.

A representative may submit arguments, evidence, or other materials on behalf of the party. The representative, the party, or both may participate in all levels of the appeals process. Once both the party and the representative have signed the AOR Form, the appointment is valid for one year from the date of the last signature for the purpose of filing future appeals unless it has been revoked.

As noted above, a beneficiary may also assign (transfer) his or her appeal rights to a physician or supplier who is not a party to the initial determination and who furnished the items or services at issue in the appeal. A beneficiary must assign appeal rights using the form CMS-20031, Transfer of Appeal Rights, available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS website. A physician or supplier who accepts assignment of appeal rights must waive the right to collect payment from the beneficiary for the items or services at issue in the appeal, with the exception of deductible and coinsurance amounts and when a valid Advance Beneficiary Notice is in effect.

After an initial claim determination is made, the appeals process is as follows:
- Redetermination by Medicare Contractor;
- Reconsideration by Qualified Independent Contractor (QIC);
- Hearing by Administrative Law Judge (ALJ);
- De Novo Review by Medicare Appeals Council (MAC); and
- Judicial Review.

First Level of Appeal – Redetermination by Medicare Contractor
A party who is dissatisfied with the initial determination may request that a Medicare Contractor conduct a redetermination. The redetermination, which is an independent review of the initial determination, is conducted by an employee of the Contractor who was not involved in making the initial determination. A request for a redetermination must be filed within 120 calendar days of the date the notice of initial claim determination is received. If good cause is shown, the period for filing the appeal request may be extended. At this level of appeal, there is no amount in controversy (AIC) requirement. When filing the request for redetermination, parties should also submit all relevant documentation to support their assertion that the initial claim determination was incorrect.

Parties must request redeterminations in writing by either completing Form CMS-20027, Medicare Redetermination Request, which is available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS website or by submitting a written request that includes the following:

- Beneficiary's name;
- Beneficiary's Medicare HIC number;
- Which items or services are at issue and the corresponding date(s) of service; and
- Name and signature of the party or representative of the party.

In most cases, the Contractor will issue a written redetermination notice to all parties to the appeal within 60 days of receipt of the redetermination request. If the reconsideration results in the issuance of a supplemental payment to a provider or supplier, the Contractor must also issue an electronic or paper RA.

Second Level of Appeal – Reconsideration by QIC
A party dissatisfied with the redetermination decision may request a reconsideration by a QIC. For all redeterminations issued on or after January 1, 2006, the reconsideration by the QIC replaces the Hearing Officer Hearing previously conducted by Medicare Part B Contractors. Appeals of redeterminations issued prior to January 1, 2006 will be conducted by hearing officers.

A party must file a written request for a reconsideration with the entity specified in the redetermination notice within 180 calendar days of the date the redetermination decision is received. If good cause is shown, the QIC may extend the period for filing the request. At this level of appeal, there is no AIC requirement. A party may file a written request for reconsideration by either completing Form CMS-20033, Medicare Reconsideration Request, which is available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS website or by submitting a written request that includes the following:

- Beneficiary's name;
- Beneficiary's Medicare HIC number;
- Which items or services are at issue and the corresponding date(s) of service;
- Name and signature of the party or representative of the party; and
- Name of the Contractor that made the redetermination.

For appeals of redeterminations issued prior to January 1, 2006, parties may file a written request for a Hearing Officer Hearing by either completing Form CMS-1965, Request for Hearing, which is available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS

website or by submitting a written request that includes the information described above. Hearing officers generally issue decision letters within 120 days of receipt of the hearing request.

In most cases, the QIC will issue written notice of its reconsideration decision to all parties within 60 calendar days of receipt of the request for reconsideration. In some situations (e.g., submission of additional evidence after the reconsideration request is filed), the time limit will be extended beyond 60 days. If the QIC is unable to issue a reconsideration within the applicable time limit, the QIC will notify the appellant (the party who filed the appeal request). The appellant may then file a written request with the QIC to escalate the appeal to the Administrative Law Judge (ALJ) level. Within five days of receiving the request to escalate, the QIC will either issue a reconsideration or acknowledge the escalation request and forward the request and case file to the appropriate ALJ office. If the reconsideration results in the issuance of a supplemental payment to a provider or supplier, the Contractor must also issue an electronic or paper RA. All evidence requested by the Contractor in the redetermination decision must be submitted at the QIC reconsideration level of appeal. Failure to submit requested information at the QIC reconsideration level may lead to exclusion of such evidence at subsequent levels of appeal.

Third Level of Appeal – Hearing by ALJ
If a party is dissatisfied with the reconsideration decision (or Part B hearing officer decision) or if the adjudication period for the QIC to complete its consideration has elapsed, he or she can request a hearing before an ALJ with the Department of Health and Human Services (HHS) Office of Medicare Hearings and Appeals. There is an AIC requirement, which will be adjusted annually in accordance with the percentage increase in the medical care component of the Consumer Price Index (CPI). The ALJ hearing may be conducted in person, via video teleconferencing (VTC) technology, or by telephone. The ALJ may also issue a decision on the record without the appearance of any parties if the decision is fully favorable to the appellant. In person hearings may be granted upon a finding of good cause. An ALJ may also determine that an in person hearing should be conducted if VTC technology is unavailable or special or unusual circumstances exist.

A party must file a written request for an ALJ hearing with the entity specified in the QIC reconsideration notice (or Part B hearing officer decision letter) within 60 calendar days of receipt of the QIC reconsideration notice or Part B hearing officer decision letter. If a request for an ALJ hearing is not filed timely, the period for filing the request may be extended by the ALJ if good cause is shown.

During the transition from Part B hearing officer decisions to QIC reconsiderations, there will be two different forms that may be used to request an ALJ hearing. If a party is filing a request for an ALJ hearing to appeal a QIC reconsideration, he or she may either complete Form CMS-20034A/B, Request For Medicare Hearing By An Administrative Law Judge, which is available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS website or submit a written request that includes the following information:

- Name, address, and Medicare HIC number of the beneficiary whose claim is being appealed;
- Name and address of the appellant, when the appellant is not the beneficiary;
- Name and address of any designated representatives;
- Document control number assigned to the appeal by the QIC, if any;
- Dates of service for the items or services at issue;
- Reasons the appellant disagrees with the QIC's reconsideration (or Part B hearing officer decision); and
- Statement of any additional evidence to be submitted and the date it will be submitted.

If a party is filing a request for an ALJ hearing to appeal a hearing officer decision, he or she may either complete Form CMS-5011A/B, Request For Medicare Hearing By An Administrative Law Judge, which is available at *www.cms.hhs.gov/CMSForms/CMSForms/list.asp#TopOfPage* on the CMS website or submit a written request that includes the information noted in the paragraph above regarding how to request an ALJ hearing to appeal a QIC reconsideration.

When an appellant requests an ALJ hearing following a QIC reconsideration, the appellant must also send a copy of the request for hearing to the other parties to the appeal. The ALJ's 90-day timeframe to issue a decision does not start until all parties to the QIC reconsideration receive notice of the requested ALJ hearing.

Generally, at the ALJ level, CMS and/or CMS Contractors may elect to either participate in the hearing or become a party to the hearing. If CMS and/or CMS Contractors choose to participate or become a party to the hearing, it will notify the ALJ and all parties within 10 days after receiving the notice of hearing. Participating in the hearing or as a party may include submitting position papers or providing testimony to clarify factual or policy issues, but does not include calling or cross-examining witnesses or being called as a witness. In addition, discovery is allowed only when CMS becomes a party to an ALJ hearing.

In most cases, the ALJ will issue a decision within 90 days of receipt of the request for hearing. The time limit may be extended (for example, if a party issues a discovery request in cases where CMS is a party). If the case before the ALJ was escalated from the QIC, the ALJ must issue a decision in 180 days (unless the time limit was extended for the reasons noted above). If the decision results in the issuance of a supplemental payment to a provider or supplier, the Contractor must also issue an electronic or paper RA. If an ALJ case is still pending at the close of the applicable adjudication timeframe, the appellant may file a written request with the ALJ and the MAC to escalate the appeal to the MAC. The appellant must notify all parties to the ALJ hearing about the escalation request. Failure to send notice to all parties will toll or stop the adjudication timeframes for the MAC to conduct its review.

### Fourth Level of Appeal – De Novo Review by MAC
The appellant or any other party to the ALJ hearing may request MAC review of the ALJ's decision or dismissal. The request for MAC review must be filed within 60 calendar days of receipt of the ALJ hearing decision or dismissal. If good cause is shown, the period for filing the request may be extended. At this level of appeal, there is no AIC requirement.

The party must file a written request for MAC review by either completing Form DAB-101, Request for Review of Administrative Law Judge Medicare Decision/Dismissal, which is available at *www.hhs.gov/dab/DAB101.pdf* on the HHS website or submitting a written request that includes the following:
- Beneficiary's name;
- Beneficiary's Medicare HIC number;
- Specific items or services for which review is requested;
- Dates of service for the items or services at issue;
- Date of the ALJ's final action (if any) or the hearing office in which the party's request for hearing is pending; and
- Name and signature of the party or representative of the party.

The request for MAC review must also identify the parts of the ALJ action with which the party requesting review disagrees and explain why he or she disagrees with the ALJ's decision, dismissal, or other determination being appealed. The MAC will generally limit its review to the issues raised by the appellant and will conduct a *de novo* or new review of such issues.

The appellant must also send a copy of the request for review to the other parties to the ALJ decision or dismissal. The time limit for issuance of the MAC decision (discussed below) does not commence until all parties are properly notified.

Generally, the party requesting the MAC review does not have a right to a hearing before the MAC. The MAC will consider all of the evidence in the administrative record and either adopt, modify, or reverse the ALJ decision or remand the case to the ALJ for further proceedings. However, depending on how the appeal came before the MAC, there may be opportunities for parties to submit additional evidence. Parties to MAC review may request the opportunity to file briefs or other written statements discussing the facts and laws relevant to the case. A party may also request to appear before the MAC to present oral argument. The MAC may also dismiss a review request if the party making the request asks to withdraw the request for MAC review, does not have a right to request MAC review, or in certain circumstances where the beneficiary whose claim is being appealed dies.

In most cases, the MAC decision, dismissal, or remand order will be mailed within 90 calendar days of submission of the request. If the decision results in the issuance of a supplemental payment to a provider or supplier, the Medicare Contractor must also issue an electronic or paper RA. If the case was escalated to the MAC because the ALJ could not issue a timely decision, the MAC will have 180 days to mail its decision. These timeframes may be extended under certain circumstances (for example, if a party filing a request for review fails to provide copies of the request for review to other parties to the ALJ decision or dismissal). If the MAC fails to issue a decision, dismissal, or remand order within the applicable time period, the appellant may submit a request for escalation to Federal District Court. The MAC will either complete the case within five days of receipt of the escalation request or within five days following the end of the applicable adjudication timeframe. If the MAC is unable to complete the case, it will issue a notice to the appellant that acknowledges the escalation request and confirms its inability to issue a decision, dismissal, or remand order within the applicable timeframe. A party may then file a civil action in Federal District Court within 60 days after the date it receives notice from the MAC. In certain instances, if good cause is shows, the period for filing the request may be extended. Escalation is not available with regard to a request to review an ALJ dismissal.

<u>Fifth Level of Appeal – Judicial Review</u>
A party to a MAC decision or an appellant who requests an escalation of a MAC review may obtain judicial review if the case meets the AIC requirement. For actions filed on or after January 1, 2006, the AIC will be $1,090. The AIC amount is adjusted annually in accordance with the percentage increase in the medical care component of the CPI.

Any civil action for judicial review must be filed in the District Court of the U.S. for the judicial district in which the party resides or where such individual, institution, or agency has its principal place of business. If the party does not reside within

any judicial district or if the individual, institution, or agency does not have its principal place of business within any such judicial district, the civil action must be filed in the District Court of the U.S. for the District of Columbia. The Secretary of HHS is the proper defendant in any request for judicial review of a MAC decision or a case escalated to Federal District Court.

Complaints filed in Federal District Court against the Secretary of HHS should also be sent to:
Department of Health and Human Services
General Counsel
200 Independence Avenue, S.W.
Washington, D.C. 20201

The District Court may either reach a final decision or remand the case to the MAC or ALJ for further proceedings. Written notification regarding the District Court's decision is sent to all the parties.

### Liability and Appeal Decisions
Liability regarding appeal decisions is as follows:
- When an original claim determination for both assigned and nonassigned claims is upheld on a review and the provider or supplier knew or could have been expected to know that payment for the service might be denied or reduced, he or she is held liable and must refund any monies collected from the beneficiary within 30 days of the review decision.
- When an original claim determination for an assigned claim is upheld on a review and the provider or supplier and beneficiary could not have been expected to know that payment for the service might be denied or reduced, payment is made to the provider or supplier.
- When an original claim determination for a nonassigned claim is upheld on a review and it is found that the provider or supplier could not have been expected to know that payment for the service might be denied or reduced, he or she is notified that payment may be collected from the beneficiary. A letter is sent to the beneficiary indicating that he or she is responsible for payment.

- When the beneficiary is not responsible for the payment of a service, the provider or supplier must refund any monies collected from the beneficiary. If the refund is not made within the specified time limits, the following actions may occur:
  - o For an assigned claim, the beneficiary may submit a request to Medicare for indemnification from payment. A letter is sent to the provider or supplier indicating that a refund must be made to the beneficiary within 15 days for the amount actually paid, including any amounts applied to deductibles, coinsurance, and copayments. If the refund is not made within 15 days, Medicare will pay the beneficiary and request a refund from the provider or supplier.
  - o For a nonassigned claim, the beneficiary may notify Medicare that the provider or supplier did not refund the amount due. A letter is sent to the provider or supplier indicating that a refund is due to the beneficiary within 15 days. If a refund is not made within 15 days, the provider or supplier may be subject to Civil Monetary Penalties and sanctions.

## Reopening

A reopening is a remedial action taken to change a final determination or decision that resulted in either an overpayment or underpayment, even though the determination or decision was correct based on the evidence of record. A reopening allows the correction of minor errors or omissions without initiating a formal appeal. If a claim is denied because a Contractor did not receive requested documentation during medical review and the party later requests a redetermination, the Contractor must process the request as a reopening. A Contractor must also process clerical errors (including human and mechanical errors on the part of the party or Contractor) such as mathematical or computational mistakes, inaccurate data entry, or denials of claims as duplicates. A reopening is, in general, not conducted until a party's appeal rights have been exhausted. A Contractor, QIC, ALJ, or MAC's decision on whether to reopen is final and not subject to appeal. A reopening may be requested by a party or initiated by a Contractor, QIC, ALJ, or MAC.

The timeframes and requirements for requesting or initiating a reopening will depend on the level at which the reopening is requested (initial determination level or one of the appeals levels) and who is initiating the reopening (a party, Contractor, QIC, ALJ, or MAC). When any determination or decision is reopened and revised, a Contractor, QIC, ALJ, or MAC must mail its revised determination or decision to the parties. If the reopening action results in an adverse revised determination or decision, the Contractor shall mail a letter that states the rationale for the reopening, the applicable revision, and any right to appeal.

To find additional information about appeals, see the Medicare Claims Processing Manual (Pub. 10-4) at *www.cms.hhs.gov/Manuals/IOM/list.asp#TopOfPage* on the CMS website.

DEPARTMENT OF HEALTH & HUMAN SERVICES
Centers for Medicare & Medicaid Services
Room 303-D
200 Independence Avenue, SW
Washington, DC 20201



**Public Affairs Office**

# MEDICARE FACT SHEET

FOR IMMEDIATE RELEASE                    Contact: CMS Press Office
March 1, 2005                                         (202) 690-6145

### IMPLEMENTING A NEW MEDICARE CLAIMS APPEALS PROCESS

**Background**:  In Section 521 of the Medicare, Medicaid and SCHIP
Benefits Improvement and Protection Act of 2000 (BIPA), Congress
required a major restructuring to improve the process that Medicare
beneficiaries can use to appeal claims denials.  The law includes a series of
structural and procedural changes to the appeals process, including:

- Uniform appeal procedures for both Part A and Part B claims;
- Reduced decision-making time frames for most administrative
  appeals levels, as well as the right to escalate a case that is not
  decided on time to the next appeal level;
- The establishment of new entities, Qualified Independent
  Contractors (QICs), to conduct reconsiderations of claims denials
  made by fiscal intermediaries, carriers, and quality improvement
  organizations;
- Use of QIC review panels, which include medical professionals, to
  reconsider all cases involving medical necessity issues; and
- A requirement for appeals-specific data collection by CMS.

On December 8, 2003, following publication of the proposed rule, the
Medicare Prescription Drug, Improvement, and Modernization Act of 2003
(MMA) (Pub. L. 108-173) was enacted.  The MMA includes a number of
provisions that affect the Medicare claim appeals process.  Most notably the
new law includes:

- Revised redetermination and reconsideration decision-making time
  frames;
- A reduction in the minimum required number of QICs from 12 to 4;
- A requirement to transfer the ALJ function from SSA to HHS no
  earlier than July 1, 2005, but not later than October 1, 2005;

- Revised requirements for appeals decision notices;
- A requirement for providers and suppliers to present any evidence for an appeal no later than the QIC reconsideration level, unless there is good cause that prevented the timely introduction of the evidence; and
- The establishment of a process for the correction of minor errors or omissions without pursuing an appeal.

Several of these changes were already part of CMS' proposed rule. To the extent that the new statutory requirements have required revisions or additions to our proposed regulations to ensure that they conform to the MMA, we have incorporated the needed changes into the interim final rule, and discussed them in the appropriate section of the preamble.

Since the enactment of BIPA and MMA, CMS has been working aggressively to implement the substantial changes required by the law. For example, changes we have already implemented include:

- Development of a case-specific appeals data base;
- Award of contracts to the new required appeals entities—Qualified Independent Contractors (QICs); and
- Implementation of new improved notice requirements for current Medicare contractors.

Today, CMS published an interim final rule that will enable us to complete implementation of the new appeals process.

### Implementation

The statutory appeals provisions dramatically reduce the time frames for adjudicating fee-for-service Medicare claims appeals – a process that now can exceed 1,000 days must be reduced to 300 days. This change requires a substantial overhaul of the appeals process – a complicated restructuring involving all levels of the Medicare appeals process. CMS has worked aggressively to implement these mandatory changes, culminating in this regulation.

Today, CMS is publishing an interim final rule that establishes new regulations for implementing the new appeals process for claims denials required by section 521 of BIPA and the MMA. This final rule sets forth in one location all regulations covering administrative appeals of Medicare Part A and Part B claims, including for the first time Medicare-specific procedures for carrying out ALJ hearings. The interim final rule sets forth regulations to implement all structural and procedural changes to the existing appeals process. Implementation of these new procedures will take place in two stages. First, beginning on May 1, 2005, all first level appeals

("redeterminations") carried out by fiscal intermediaries (generally Part A appeals) will be subject to QIC reconsiderations. These appeals generally involve Medicare Part A services, such as services furnished by hospitals, skilled nursing facilities, and home health agencies. Then, beginning January 1, 2006, appeals of redeterminations carried out by Medicare carriers (Part B appeals, involving physician services and durable medical equipment items, for example) will be subject to QIC reconsiderations. The new ALJ rules will be in effect for all appeals that come through the QICs. Thus, in 2006, the new Medicare appeals process will take effect for all Part A and B Medicare claims.

###