UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CENTER FOR MEDICARE ADVOCACY, INC.    )
)
Plaintiff,    )
)
v.    )    Civil Action No.   05-2266 (RBW)
)
UNITED STATES DEPARTMENT OF    )
HEALTH AND HUMAN SERVICES,    )
)
Defendant.    )
_____)

MEMORANDUM OPINION

The plaintiff filed this lawsuit on November 23, 2005, against the defendant pursuant to

the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2000).  Complaint ("Compl.").

Specifically, the plaintiff asserts that it requested from the defendant pursuant to the FOIA "[a]ll

articles, reports, studies, memoranda, letters and writings of any kind concerning video-

conferencing . . . that have been or are being reviewed and/or used in designing and/or

establishing the Medicare administrative law judge hearings by [video-conferencing] that are

described at 42 C.F.R. §§ 405.1036, et seq." Id. ¶ 4.  Further, the plaintiff contends that the

"[d]efendant failed to comply with the timeliness requirement for responding to [the] plaintiff's

request for information." Id. ¶ 7.  The plaintiff requests that the defendant's failure to produce

the documents be declared "unlawful" and that the defendant be ordered "to make the requested

records available to [the] plaintiff." Id. at 3.  Currently before the Court are the Memorandum of

Points and Authorities in Support of Plaintiff's Motion for Injunction ("Pl.'s Mot.") and the

1

Defendant's Cross-Motion for Summary Judgment ("Def.'s Cross-Mot.").[1]  For the reasons set

forth below, both parties' motions are granted in part and denied in part.

## I. Background

The plaintiff, the Center for Medicare Advocacy, Inc., "is a non-profit corporation that

educates and advocates for medicare beneficiaries across the nation."  Compl. ¶ 3.  The plaintiff

has offices in Connecticut, Arizona, and here in Washington, D.C.  Id.  In a letter dated August

25, 2005, the plaintiff requested pursuant to the FOIA, 5 U.S.C. § 552, that the defendant, the

Department of Health and Human Services (HHS), provide to it all documents pertaining to the

design and establishment of Medicare administrative law judge hearings conducted with the use

of video-conferencing technology.  Pl.'s Mot., Exhibit ("Ex.") A (Letter from Sally Hart, Counsel

for Center for Medicare Advocacy, Inc., to Freedom of Information Officer Centers for Medicare

& Medicaid Services, dated August 25, 2005) ("Hart Aug. 25, 2005 Letter"); Defendant's

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Injunction and in

Support of Defendant's Cross-Motion for Summary Judgment ("Def.'s Cross-Mot. Mem."),

(Declaration of Robert Eckert, Director, Freedom of Information/Privacy Acts Division, Office

of the Assistant Secretary for Public Affairs, Department of Health and  Human Services)

("Eckert Decl.") ¶ 4, Ex. 1 (Hart Aug. 25, 2005 Letter).   The plaintiff further requested that the

defendant waive any applicable fees associated with its request, and asked that the defendant

---

[1] Also submitted in connection with the parties' motions are (1) the Plaintiff's Statement of Material Facts
and Exhibits in Support of Motion for Injunction; (2) the Defendant's Statement of Material Fact as to Which There
is No Genuine Issue, Pursuant to Local Rule 7(k); (3) the Defendant's Memorandum of Points and Authorities in
Opposition to Plaintiff's Motion for Injunction and in Support of Defendant's Cross-Motion for Summary Judgment
("Def.'s Cross-Mot. Mem."); (4) the Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment and
Reply in Support of Plaintiff's Motion for Injunction ("Pl.'s Opp'n"); and (5) the Defendant's Memorandum of
Points and Authorities in Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment
("Def.'s Reply").

process the plaintiff's request on an expedited basis.  Pl.'s Mot., Ex. A (Hart Aug. 25, 2005

Letter); Def.'s Cross-Mot. Mem., Eckert Decl., Ex. 1 (Hart Aug. 25, 2005 Letter).

By letter dated October 3, 2005, the defendant acknowledged receipt of the plaintiff's

document request.  Pl.'s Mot., Ex. B (Letter from Michael Marquis, Director of Freedom of

Information Group, Department of Health & Human Services, Centers for Medicare & Medicaid

Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated October 3, 2005 )

("Marquis Oct. 3, 2005 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 4, Ex. 2 (Marquis Oct.

3, 2005 Letter).  The defendant also requested that the plaintiff provide further information

concerning its request for a fee waiver so as to enable the defendant to make a determination on

this request. Pl.'s Mot., Ex. B (Marquis Oct. 3, 2005 Letter); Def.'s Cross-Mot. Mem., Eckert

Decl., Ex. 2 (Marquis Oct. 3, 2005 Letter).

Having not received the requested documents from the defendant or an indication that the

fee for producing the documents had been waived, the plaintiff informed the defendant by letter

that it was construing the non-responsiveness as a denial of its requests.  Pl.'s Mot., Ex. C

(Letter from Sally Hart, Counsel for Center for Medicare Advocacy, Inc., to Michael Marquis,

Director of Freedom of Information Group, Department of Health & Human Services, Centers

for Medicare & Medicaid Services, dated October 31, 2005 ) ("Hart Oct. 31, 2005 Letter");

Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 6, Ex. 3 (Hart Oct. 31, 2005 Letter).   The plaintiff also

informed the defendant in its letter that it was administratively appealing both the defendant's

failure to produce the requested documents and its denial of the plaintiff's fee waiver request.

Pl.'s Mot., Ex. C (Hart Oct. 31, 2005 Letter).  The defendant acknowledged receipt of the

plaintiff's October 31, 2005 appeal by letter on November 16, 2005.  Pl.'s Mot., Ex. D (Letter

3

from Michael Marquis, Director of Freedom of Information Group, Department of Health & Human Services, Centers for Medicare & Medicaid Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated November 16, 2005 ) ("Marquis Nov. 16, 2005 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 7, Ex. 4 (Marquis Nov. 16, 2005 Letter).

The plaintiff commenced this judicial action on November 23, 2005. See Compl. Subsequently, by letter dated December 27, 2005, the defendant informed the plaintiff that its requests had been referred to Robert Eckert, Director of HHS's Freedom of Information/Privacy Acts Division, Office of the Assistant Secretary for Public Affairs. Pl.'s Mot., Ex. E (Letter from Michael Marquis, Director of Freedom of Information Group, Department of Health & Human Services, Centers for Medicare & Medicaid Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated December 27, 2005 ) ("Marquis Dec. 27, 2005 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 10, Ex. 5 (Marquis Dec. 27, 2005 Letter). This letter further informed the plaintiff that Mr. Eckert's office would respond both to the plaintiff's request for records and to its request for a fee waiver. Pl.'s Mot., Ex. E (Letter from Michael Marquis, Director of Freedom of Information Group, Department of Health & Human Services, Centers for Medicare & Medicaid Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated December 27, 2005 ) ("Marquis Dec. 27, 2005 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 10 (indicating that the Centers for Medicare & Medicaid Services Freedom of Information Group advised the plaintiff by letter that Mr. Eckert's office would respond to the plaintiff's fee waiver request), Ex. 5 (Marquis Dec. 27, 2005 Letter).

On January 18, 2006, the defendant filed its Answer to the plaintiff's Complaint. By letter dated January 19, 2006, the defendant mailed the plaintiff its first interim response to the

4

plaintiff's requests. Pl.'s Mot., Ex. F (Letter from Robert Eckert, Director of Freedom of

Information Privacy Acts Division, Department of Health & Human Services, to Sally Hart,

Counsel for Center for Medicare Advocacy, Inc., dated January 19, 2006) ("Eckert Jan. 19, 2006

Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 11, Ex. 6 ("Eckert Jan. 19, 2006 Letter"). In

this letter, the defendant informed the plaintiff that, as of the date of the letter, it had reviewed

thirty-seven pages of responsive records and had determined that thirty-three pages could be

released in full and that an additional page could be partially released. Pl.'s Mot., Ex. F (Eckert

Jan. 19, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 11, Ex. 6 (Eckert Jan. 19, 2006

Letter). The remaining portion of the redacted page was withheld pursuant to Exemption 5 of the

FOIA, 5 U.S.C. § 552(b)(5), as were the other three pages of records that were withheld in their

entirety. Pl.'s Mot., Ex. F (Eckert Jan. 19, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl.

¶ 11, Ex. 6 (Eckert Jan. 19, 2006 Letter). The defendant further informed the plaintiff that it had

determined that of the records it had reviewed, ten pages in full and portions of an additional

page contained information originating with the Social Security Administration ("SSA"). Pl.'s

Mot., Ex. F (Eckert Jan. 19, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 11, Ex. 6

(Eckert Jan. 19, 2006 Letter). The defendant therefore advised the plaintiff that these records

were being referred to the SSA for processing and its direct response to the plaintiff. Pl.'s Mot.,

Ex. F (Eckert Jan. 19, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 11, Ex. 6 (Eckert

Jan. 19, 2006 Letter). The defendant's letter also informed the plaintiff that it was denying the

plaintiff's requests for a total fee waiver and for expedited processing. Id. The plaintiff again

appealed the fee waiver denial by letter dated February 21, 2006. Pl.'s Mot., Ex. G (Letter from

Patricia Nemore, Counsel for Center for Medicare Advocacy, Inc., to the Deputy Assistant

Secretary for Public Affairs (Media), Department of Health & Human Services, dated February 21, 2006) ("Nemore Feb. 21, 2006 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 12, Ex. 7 (Letter from Patricia Nemore, Counsel for Center for Medicare Advocacy, Inc., to the Deputy Assistant Secretary for Public Affairs (Media), Department of Health & Human Services, dated February 21, 2006) (Nemore Feb. 21, 2006 Letter).[2]

  In a letter dated March 2, 2006, the SSA informed the plaintiff that it was withholding in full, pursuant to Exemption 5 of the FOIA, the ten pages and one partial page referred to it by the defendant.   Pl.'s Mot., Ex. H (Letter to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., from Joyce Schaul, Freedom of Information Officer, Social Security Administration, dated March 2, 2006) ("Schaul March 2, 2006 Letter"); Def.'s Cross-Mot. Mem., Declaration of Ethel Burrows, Social Insurance Specialist in the Office of Pubic Disclosure of the Social Security Administration ("Burrows Decl."), Ex. iii (Schaul March 2, 2006 Letter). Subsequently, the plaintiff administratively appealed the SSA's decision to withhold the documents.  Pl.'s Mot., Ex. I (Letter from Sally Hart, Counsel for Center for Medicare Advocacy, Inc., to the Executive Director, Office of Public Disclosure, Social Security Administration, dated March 8, 2006) ("Hart Mar. 8, 2006 Letter"); Def.'s Cross-Mot. Mem., Burrows Decl. ¶ 13, Ex. iv (Letter from Sally Hart, Counsel for Center for Medicare Advocacy, Inc., to the Executive Director, Office of Public Disclosure, Social Security Administration dated March 8, 2006) ("Hart Mar. 8, 2006 Letter"). On the same day, March 8, 2006, the defendant made its second interim response to the plaintiff's document request.  Pl.'s Mot., Ex. J (Letter from Department of Health & Human

_____

[2] Eckert inaccurately indicates that the letter is dated February 17, rather than February 21. Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 12.

Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated March 8, 2006)

("HHS Mar. 8, 2006 Letter"); Def.'s Cross-Mot. Mem., Eckert Decl., Ex. 8 (Letter from

Department of Health & Human Services to Sally Hart, Counsel for Center for Medicare

Advocacy, Inc., dated March 8, 2006) ("HHS Mar. 8, 2006 Letter"). This response resulting in

the defendant releasing to the plaintiff an additional 250 pages in full and the withholding of an

additional 7159 pages were withheld pursuant to Exemption 5 of the FOIA.  Pl.'s Mot., Ex. J

(HHS Mar. 8, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl., Ex. 8 (HHS Mar. 8, 2006

Letter).

The defendant advised the plaintiff in a letter dated March 20, 2006, that it had received

the plaintiff's appeal of the denial of its August 25, 2005  fee waiver request.  Pl.'s Mot., Ex. K

(Letter from Robert Eckert, Director of Freedom of Information/Privacy Acts Division Office of

Public Affairs, Department of Health & Human Services, to Sally Hart, Counsel for Center for

Medicare Advocacy, Inc., dated March 20, 2006) ("Eckert Mar. 20, 2006 Letter"); Def.'s Cross-

Mot. Mem., Eckert Decl. ¶ 14, Ex. 9 (Letter from Robert Eckert, Director of Freedom of

Information/Privacy Acts Division Office of Public Affairs, Department of Health & Human

Services, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated March 20, 2006)

("Eckert Mar. 20, 2006 Letter").  The defendant's letter further informed the plaintiff that it had

identified an additional 425 pages of responsive records that would be released to the plaintiff.

Pl.'s Mot., Ex. K (Eckert Mar. 20, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 14,  Ex.

9 (Eckert Mar. 20, 2006 Letter). When combined with the 284 pages previously released by the

defendant on January 19 and March 8, 2006, the defendant's fee for processing the plaintiff's

document request totaled $60.90, based on a ten cents per page charge, excluding any charge for

the initial 100 pages. Pl.'s Mot., Ex. K (Eckert Mar. 20, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 14, Ex. 9 (Eckert Mar. 20, 2006 Letter). The defendant stated that the plaintiff would have to agree to pay the processing fee before the defendant would conduct any further processing of the document request. Pl.'s Mot., Ex. K (Eckert Mar. 20, 2006 Letter); Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 14, Ex. 9 (Eckert Mar. 20, 2006 Letter).

By letter dated April 7, 2006, the plaintiff informed the defendant that it was appealing the withholding of the documents reference in the defendant's second interim document response. Def.'s Cross- Mot. Mem., Eckert Decl. ¶ 15, Ex. 10 (Letter from Sally Hart, Counsel for Center for Medicare Advocacy, Inc., to Deputy Assistant Secretary for Public Affairs (Media), United States Department of Health and Human Services, dated April 7, 2006) ("Hart Apr. 7, 2006 Letter"); Pl.'s Mot., Ex. L (Letter from Sally Hart, Counsel for Center for Medicare Advocacy, Inc., to Deputy Assistant Secretary for Public Affairs (Media), United States Department of Health and Human Services dated April 7, 2006) ("Hart Apr. 7, 2006 Letter"). On April 13, 2006, the plaintiff filed its Motion for Injunction, seeking the release of all responsive documents, a Vaughn[3] Index describing the withheld documents, a fee waiver, and attorney fees. See Pl.'s Mot. at 10. By letter dated April 17, 2006, the SSA denied the plaintiff's administrative appeal of its withholding of the documents it had received from the defendant in its initial referral to the SSA. Def.'s Cross-Mot. Mem., Burrows Decl. ¶ 14, Ex. v (Letter from Jonathan Cantor, Executive Director, Office of Public Disclosure, Social Security Administration, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated April 17, 2006) ("Cantor Apr. 17, 2006 Letter").

---

[3] Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975).

By letter dated May 15, 2006, the defendant again denied the plaintiff's administrative appeal of its denial of the plaintiff's fee waiver request.   Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 16,  Ex. 11 (Letter from Christina Pearson, Deputy Assistant Secretary for Public Affairs (Media), to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated May 15, 2006) ("Pearson May 15, 2006 Letter"). This administrative appeal decision outlined the standards the defendant uses in adjudicating fee waiver requests, which includes evaluating (1) whether the requested documents pertain to activities of the federal government; (2) whether disclosure would reveal meaningful information about government operations that is not already public knowledge; (3) will the disclosure advance knowledge to the public at large, as opposed to just a narrow segment of the public; and (4) whether the contribution to public knowledge will be significant.  Def.'s Cross-Mot. Mem., Eckert Decl.  ¶ 17, Ex. 11(Pearson May 15, 2006 Letter). It then explained how in several ways the plaintiff had failed to satisfy these standards.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 18-21, Ex. 11 (Pearson May 15, 2006 Letter).  For example, some of the responsive records were determined not to concern government operations or activities.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 18, Ex. 11 (Pearson May 15, 2006 Letter).  It further noted that because the vast majority of records released to the plaintiff at this point were already publicly available, the plaintiff had not shown how further dissemination of the documents to it would significantly benefit the public.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 19, Ex. 11 (Pearson May 15, 2006 Letter).  Finally, the defendant's letter explained that because some of the responsive records concerned mere internal HHS administrative matters, those records likewise would not enlighten the public in a significant way about the operations or activities of the government.  Def.'s Cross-Mot. Mem.,  Eckert Decl. ¶ 20, Ex. 11 (Pearson May

15, 2006 Letter ). Because the defendant determined that the plaintiff had failed to satisfy factors (1), (2), and (4), of the standards listed above, the plaintiff's request for a fee waiver was denied. Def.'s Cross-Mot Mem., Eckert Decl. ¶ 21, Ex. 11 (Pearson May 15, 2006 Letter).[4]

In an e-mail dated June 29, 2006, the plaintiff agreed to pay the applicable processing fees if the defendant's fee waiver denial was ultimately upheld by the Court.  Def.'s Cross-Mot., Eckert Decl. ¶ 13, Ex. 13  (E-mail from Gill Deford, Counsel for Center for Medicare Advocacy, Inc., to Frances Wharton, dated June 29, 2006) ("Deford June 29, 2006 E-mail"). On July 10, 2006, the defendant made a further interim release of responsive documents to the plaintiff. Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 23-24, Ex. 14 (Letter from Robert Eckert, Director of Freedom Of Information/Privacy Acts Division Office of Public Affairs, to Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated July 10, 2006) ("Eckert July 10, 2006 Letter"). This resulted in the release in full of 319 additional documents. Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 24,  Ex. 14 (Eckert July 10, 2006 Letter). The defendant withheld a portion of one document pursuant to FOIA Exemption 6.[5]  Def.'s Cross-Mot. Mem.,  Eckert Decl. ¶ 24, Ex. 14 (July 10, 2006 Letter).   It also withheld  portions of two pages and ninety-nine pages in full pursuant to Exemption 5 of the FOIA.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 23-24, Ex. 14 (July 10, 2006 Letter). Additionally, the defendant informed the plaintiff that it had referred 251

---

[4] The defendant's letter also explained that because the plaintiff had failed to meet the public interest factor of the fee waiver test, it was unnecessary for the defendant to evaluate whether the plaintiff had any commercial interest in the release of the records.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 21 n.1, Ex. 11 (Pearson May 15, 2006 Letter).

[5] The <u>Vaughn</u> index indicates that the document withheld pursuant to FOIA Exemption 6 to protect the name of a private citizen who had commented on a proposed regulation is not being challenged by the plaintiff. Def.'s Cross-Mot. Mem., Vaughn Index of Withheld Documents for First Interim Release, dated January 19, 2006, July 10 and 12, 2006, at 185.

more pages of responsive documents that had originated with SSA to that agency for processing

and its direct response to the plaintiff. Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 23-24, Ex. 14

(July 10, 2006 Letter). The defendant further informed the plaintiff that based upon this new

release of documents, the plaintiff now owed the defendant $359.70 in fees. Def.'s Cross-Mot.

Mem., Eckert Decl. ¶¶ 23-24, Ex. 14 (July 10, 2006 Letter). Finally, this letter corrected

inadvertent mistakes in the page counts associated with the defendant's prior releases of

documents to the plaintiff. Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 23-24, Ex. 14 (July 10, 2006

Letter).

On July 12, 2006, the defendant completed its processing of the documents responsive to

the plaintiff's request. Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 25, Ex. 15 (Letter from Robert

Eckert, Director of Freedom of Information/Privacy Acts Division Office of Public Affairs, to

Sally Hart, Counsel for Center for Medicare Advocacy, Inc., dated July 12, 2006) ("July 12, 2006

Letter"). This resulted in the release of an additional ten pages in full to the plaintiff and another

459 pages were withheld pursuant to FOIA Exemption 5. Id. Because of the limited number of

additional pages released, the defendant informed the plaintiff that no additional fees would be

assessed. Id. Then, on July 13, 2006, the SSA informed the plaintiff of the results of the

processing that it had undertaken of the second set of documents referred to it by the defendant.

Def.'s Cross-Mot. Mem., Burrows Decl. ¶ 10, Ex. vii (Letter from Willie Polk, Freedom of

Information Officer, Social Security Administration, to Sally Hart, Counsel for Center for

Medicare Advocacy, dated July 13, 2006) ("Polk July 13, 2006 Letter"). The SSA released in

full to the plaintiff 70 pages of documents, released in part three pages of documents, and

withheld in full 178 pages of documents. Id. The completely and partially withheld documents

were withheld pursuant to Exemptions 5 and 6 of the FOIA. Id.

In its subsequent preparation of the Vaughn Index, the defendant's legal counsel determined that some of the records the defendant had previously withheld from the plaintiff could be released. Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 30. As a result of this assessment, the defendant made three supplemental releases to the plaintiff, resulting in the release of an additional 65 pages. Id. All of the documents or partial documents the defendant continued to withhold following the completion of the Vaughn index have been withheld under Exemption 5 of the FOIA. Id. ¶ 31.

Among the responsive documents located by the defendant and not released to the plaintiff were draft reports prepared by the Government Accountability Office ("GAO"), which is "an agent of the legislative branch." Def.'s Cross-Mot. Mem., Declaration of Patricia Mantoan, Attorney, General Law Division, Office of the General Counsel in the United States Department of Health and Human Services ¶ 4. In cover letters that accompanied these draft reports when they were presented to the defendant, the GAO specifically instructed the defendant that the drafts remained the property of the GAO, their contents were not to be shared or released for any purposes, and that upon request by the GAO all electronic copies of the documents were to destroyed and any hard copies of drafts were to be returned to the GAO. Id., Ex. a (Letter from the United States Government Accountability Office to Leslie Aronovitz, Director, Health Care-Program Administration and Integrity Issues, dated August 27, 2004). In addition to its refusal to produce these draft reports, the defendant and the SSA have withheld documents pursuant to the deliberative process privilege of Exemption 5 of the FOIA. Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 31-33; Burrows Decl. ¶¶ 13-14. These documents consist of drafts, proposals,

recommendations, and requests for advice concerning the transfer of the Medicare appeals

hearing from the SSA to the defendant and the use of video-conferencing technology to conduct

the hearings. Def.'s Cross-Mot. Mem., Eckert Decl. ¶¶ 32-33; Burrows Decl. ¶¶ 13-14.  The

defendant contends that these documents are either internal HHS documents, are documents

exchanged between the defendant and other Executive Branch agencies, are draft responses to

GAO or to congressional members, are documents containing advice and recommendations

about draft HHS comments on GAO reports concerning the transfer of the Medicare appeals

function from SSA to HHS, or are documents exchanged between the defendant and a contractor

who upon request had provided its expert opinion on the feasibility of using video-conferencing

technology to conduct the Medicare appeals hearings.  Def.'s Cross-Mot. Mem., Eckert Decl.

¶ 32.  All of the records withheld by the SSA are either internal SSA documents or documents

exchanged between the SSA and the defendant and were withheld pursuant to the deliberative

process privilege of Exemption 5 of the FOIA.  Id.  The defendant also withheld documents

pursuant to Exemption 5 of the FOIA based upon the attorney-client privilege because they

allegedly reflect the exchange of confidential communications between  agency-clients and their

attorneys.  Id. ¶ 34.

        In summary, the defendant released to the plaintiff 1102 pages in full and four pages in

part, while withholding in full 7720 pages.  Defendant's Statement of Material Facts as to Which

There is No Genuine Issue, Pursuant to Local Rule 7(h) ¶ 26. In addition, the SSA released to the

plaintiff fifty-seven pages in full, fifteen pages in part, and withheld in full 149 pages.  Id.  Both

the defendant and SSA represent that every withheld document was reviewed to assess whether

any non-exempt information could be segregated from non-disclosable material and released to

plaintiff.  Def.'s Cross-Mot. Mem.,  Eckert Decl. ¶ 34, Burrows Decl. ¶ 11.

## II. Standard of Review

Courts will grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). When ruling on a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must therefore draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (quotation marks omitted), and "conclusory allegations unsupported by factual data will not create a triable issue of fact," Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation marks and citations omitted). If a court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

"[The] FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the records are covered by the statute's exemptions." Students Against Genocide v. Dep't of State, 257 F.3d 828, 833 (D.C. Cir. 2001) (citation omitted). Courts will grant summary judgment to the government in a FOIA case only if the agency can prove "that it has

fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester." Friends of Blackwater v. U.S. Dep't of Interior, 391 F. Supp. 2d 115, 119 (D.D.C. 2005) (internal quotation marks and citations omitted). Thus, in a lawsuit brought to compel the production of documents under the FOIA, "an agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates that each document that falls within the class requested either has been produced . . . or is wholly[, or partially,] exempt [from disclosure]." Students Against Genocide, 257 F.3d at 833 (internal quotation marks and citation omitted).

### III. LEGAL ANALYSIS

The defendant contends that (1) "all of [the] SSA's withholdings that [the] plaintiff is challenging were made pursuant to Exemption 5, applying the deliberative process privilege," Def.'s Cross-Mot. Mem. at 9, (2) "all of defendant HHS's withholding that [the] plaintiff is challenging were [also] made pursuant to the deliberative process privilege," id., and (3) "most of the documents withheld by defendant HHS contain information withheld under the attorney-client privilege," id.  Further, the defendant asserts that "it is clear that [the] plaintiff's request for a fee waiver, as laid out in the administrative record before the Court, suffers from several critical flaws: many of the responsive records do not pertain to operations or activities of the federal government, and many of those that do are already publicly and readily available, meaning that their further release by the defendant (or any other government agency) will not significantly add to the public's knowledge of government activities, or are of a sufficiently trivial nature so as to not meet the 'public interest' test."  Id. at 24.  In response, the plaintiff argues that (1) "HHS has failed to meet its burden of showing that the disputed records fall

within FOIA Exemption 5," Pl.'s Opp'n. at 9, (2) "[t]he facts also show that HHS failed to properly account for several responsive documents which must be disclosed to the plaintiff," id., and (3) it "has met its burden of showing with reasonable specificity how its FOIA request satisfies the statutory requirements to qualify for a fee waiver," id. The plaintiff further asserts that "because [the] [d]efendant has failed to meet its burden of demonstrating that the attorney-client and deliberative privileges apply where they have been claimed, it is not entitled to summary judgment as a matter of law and should be ordered to produce responsive records to the [plaintiff] forwith." Id. at 23. The plaintiff has moved for summary judgment and requests a permanent injunction compelling the defendant to produce "206 . . . documents [in their entirety], and portions of three additional documents that have been identified by [the defendant] and the SSA in the Vaughn indexes." Id. at 6-7. " The plaintiff also seeks summary judgment with respect to thirteen documents which the defendant has failed to properly account for in its Vaughn index."[6] Id. For the reasons set forth below, the plaintiff's motion for a permanent injunction is denied in part and granted in part and the defendant's cross-motion for summary judgment is denied in part and granted in part.

## A. EXEMPTION 5 OF THE FOIA

---

[6] After examining the Vaughn indices and the supporting declarations filed by the defendant in conjunction with its cross-motion for summary judgment, the plaintiff indicates in its Opposition to Defendant's Cross-Motion for Summary Judgment and Reply in Support of Plaintiff's Motion for Injunction that it is not pursuing disclosure of the following documents as listed by their Vaughn index numbers: HHS Docs 1-2, 13-18, 33, 41-46, 51-52, 55, 58-69, 63, 72, 87, 89-90, 97-99, 109-110, 112-113, 124, 143-145, 148-149, 158-159, 161-165, 174, 181, 186-193, 194 (partial), 195, 198, 202, 203, 207-208, 201, 221 (partial), 226-230, 237, 241-244, 246, 248, 251, 254, 258, 264-265, 269, 274-280, 282, 283, 288, 291, 293, and SSA Docs 2-5, 7-9, 14. Pl's Opp'n at 6 n. 4. The plaintiff further states that it is also no longer seeking production of the GAO documents (HHS Docs 33, 186, and 109) addressed in Section III of the defendant's cross motion for summary judgment. Id. However, it remains in dispute whether the following documents must be produced: HHS Docs. 3-12, 19-21, 22 (partial), 23-31, 34-40, 47-50, 53-54, 56-57, 61-62, 64-71, 73-86, 88, 91-96, 100-108, 111, 114-123, 125-142, 146-147, 150-157, 160, 166-173, 175-180, 182-185, 194 (partial), 196-197, 199-201, 204-206, 209, 211-220, 221 (partial), 222-225, 231-236, 238-240, 245, 252-253, 255-257, 259-263, 266-268, 270-273, 281, 284-287, 289-290 and SSA Docs. 1, 6, 10-13.

Exemption 5 of the FOIA provides that the "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552(b)(5). "To qualify [for non-disclosure under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." U.S. Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). The threshold issue that must therefore be addressed when Exemption 5 is asserted is whether the records in question qualify as "inter-agency or intra-agency memorand[a]." Judicial Watch, Inc. v. U.S. Dep't of Commerce, 90 F. Supp. 2d 9, 13 (D.D.C. 2000).

"With respect to the secondary consideration under Exemption 5-whether such materials would not be 'available by law in litigation with the agency,'" id., "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery. . . ." Burka v. U.S. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996). Thus, if a document requested pursuant to the FOIA would normally be subject to disclosure in the civil discovery context, it must also be disclosed under the FOIA. Id. Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. Id. Moreover, "to justify nondisclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." Id. at 517. Thus, courts have incorporated three traditional civil discovery privileges into Exemption 5: (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.

NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 148-49 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862, 866 (D.C. Cir.1980). Only the first two privileges are asserted by the defendant in the instant action.

### (1) THE DELIBERATIVE PROCESS PRIVILEGE

The plaintiff contends that "a close review of the [Vaughn] indices reveals numerous instances in which [the] defendant has not provided sufficient specificity to allow an 'adequate adversary testing' of the claimed exemption." Pl's Opp'n. at 11. Specifically, the plaintiff asserts that "[a] large portion of the responsive records in this case are labeled as drafts by the government," id. at 12, and "the defendant here did not indicate whether any of the designated 'draft' documents were adopted or used in the agency's interactions with the public. . . . ," id. at 13.[7]

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations that are part of a process by which [governmental] decisions and policies are formulated." Klamath, 532 U.S. at 8. The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public. Defenders of Wildlife v. U.S. Dep't of Agric., 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (citations omitted). Thus, when a court reviews whether an agency properly

---

[7] The plaintiff challenges the withholding of the following responsive records that are or contain documents which the agency labeled as drafts: HHS Docs. 4, 7-8, 10-12, 19-21, 23-29, 31, 34-39, 47, 50, 52-53, 57, 62, 64-67, 69-71, 73-75, 86, 91, 93, 95-96, 107-108, 114-123, 125-130, 136-142, 146-147, 150-157, 160, 166-170, 175-176, 178-180, 182-185, 194, 199-200, 204-206, 209, 211-225, 231-235, 238-240, 252-253, 255-257, 259-263, 266-268, 270, 284-287, 290; SSA Docs. 1, 10-13. Pl.'s Opp'n at 12.

withheld documents under the deliberative process privilege, the critical question to ask is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Formaldehyde Inst. v. Dep't of Health and Human Servs., 889 F.2d 1118, 1122 (D.C. Cir. 1989) (quoting Dudman Commc'ns Corp. v. Dep't of the Air Force, 815 F.2d 1565, 1568 (D.C. Cir. 1987); see also Sears, 421 U.S. at 151 (noting that the main purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions").

To be exempt from disclosure under the deliberative process privilege, the agency must show that the challenged document was both (1) predecisional and (2) deliberative. Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision', rather than to support a decision already made." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). The preparation of the document must therefore be "[a]ntecedent to the adoption of an agency policy." Jordan v. U.S. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978). However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States, 617 F.2d at 866. Examples of documents that qualify as predecisional include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency ." Id.

"To fall within the deliberative process privilege, materials must bear on the formulation

or exercise of agency policy-oriented judgment." Petroleum Info. Corp., 976 F.2d at 1435. The

information may be "a direct part of the deliberative process in that it makes recommendations or

expresses opinions on legal or policy matters." Vaughn v. Rosen, 523 F.2d 1136, 1144 (D.C.

Cir. 1975). The information may also concern "factual summaries that were written to assist [in]

the making of a discretionary decision." Mapother v. U.S. Dep't of Justice, 3 F.3d 1533, 1539

(D.C. Cir. 1993). Most importantly, the document must reflect the "give-and-take of the

consultative process." Senate of Puerto Rico v. U.S. Dep't of Justice, 823 F.2d 574, 585 (D.C.

Cir. 1987). For example, in determining whether the deliberative process privilege should apply

to a particular document, courts often consider "the 'nature of the decisionmaking authority

vested in the officer or person issuing the disputed document', and the relative positions in the

agency's 'chain of command' occupied by the document's author and recipient." Animal Legal

Def. Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 300 (D.D.C.1999) (quoting Senate

of Puerto Rico, 823 F.2d at 586). Although there are many cases in this Circuit which discuss the

deliberative process privilege, these cases "are of limited help . . . because the deliberative

process privilege is so dependent upon the individual document and the role it plays in the

administrative process." Coastal States, 617 F.2d at 867.

Here, the plaintiff challenges the adequacy of the explanations provided for the non-

production of Vaughn index numbers HHS 35, 36, 37, and 39, on the grounds that they are

"vague, overly broad and fail[] to identify the intended use of this material in the agency's

decision-making process." Pl.'s Opp'n at 13.  The plaintiff also challenges the stated reasons for

withholding (1) HHS documents 50, 52, 53, 137, 138, 286, and 289, on the basis  that "[n]o

indication is given as to the intended purpose of the questions and answers, whether the drafts were formally or informally adopted, or used in dealing with the public," id. at 14, (2) HHS documents 4, 7-8, 235, which pertain to the Veterans Health Administration Executive Decision Memorandum about HHS's use of the Department of Veteran Affairs's video-teleconferencing facilities, on the ground that "as the memorandum does not overtly call for or assist in a further agency decision . . . it is not predecisional," id. at 16, (3) HHS documents 66, 68, 69, 85, and 194 and SSA document 12 "because they are not predecisional, as they do not assist the decisionmaker in formulating policy . . . ," id. at 15, and (4) HHS documents 57, 101, and 177, on the ground that they are "not deliberative, as they constitute formulaic and objective recitals of factual information which do not, in and of themselves, assist in the policymaking," id. at 17. The plaintiff also contends that "[the] [d]efendant likewise fails to justify how drafts of the Office of Medicare Hearings and Appeals (OMHA) Hearings play a role in the decison-making process." Id.

The defendant invokes the exemption of 5 U.S.C. § 552(b)(5) as grounds for not disclosing these documents. Def.'s Reply. 3-7. The defendant indicates in its Vaughn index that: (1) documents 35-36, 39 contain advice, recommendations, and suggestions shared between the attorneys in its General Counsel's office and a Department of Justice attorney who represents the defendant in litigation, Def.'s Cross-Mot. Mem., (Vaughn Index of Withheld Documents for First Interim Release, dated January 19, 2006) ("HHS Vaughn Index") at 32-35; (2) documents 37 and 39 contain advice, recommendations, and suggestions shared between attorneys in the defendant's General Counsel's office regarding draft questions and answers about conducting Medicare appeals hearings with the use of video-conferencing, id. at 34-35; (3) documents 50,

52-53 contain advice, recommendations, suggestions, and confidential attorney-client

communications regarding a "draft myths and realities document" submitted to the defendant's

General Counsel's office for legal review, id. at 42, 44-45; (4) documents 66, 68-69, 85, 137,

138, 194, 286 contain advice, recommendations, and suggestions regarding a "draft myths and

realities document," which included the author's recommendation of what the final document

should indicate, id. at 56, 58, 70, 85, 110-11,156, 216; (5) documents 101, 289 contains advice,

recommendations, and suggestions regarding suggested responses to possible questions about the

proposed interim final rule or draft regulations along with comments, id. at 81, 217; and (6)

documents 4, 7-8, 57, 177, 235 contain advice, recommendations, suggestions, and confidential

attorney-client communications regarding legal advice provided to the defendant, the defendant's

attorney's mark-ups of a draft executive decision memorandum and draft memorandum of

understanding submitted to the defendant's General Counsel's office for legal review, id. at 4, 7-

8, 49, 145, 235.   Further, Robert Eckert, the Director of the defendant's Freedom of

Information/Privacy Act Division, specifically attests to the predecisional and deliberative nature

of the withheld documents and declarants Patricia Mantoan and Ethel Burrows represent in their

declarations that the draft documents at issue were not adopted by the defendant or the SSA.

Def.'s Cross-Mot. Mem., Eckert Decl. ¶ ¶ 32-33; Def.'s Reply, Supplemental Declaration of

Patricia M. Mantoan ¶ 4, Supplemental Declaration of Ethel Burrows ¶ 14-15.

Based on the descriptions provided by the defendant, the Court concludes that  HHS

documents 4, 7-8, 35, 36, 37, 39, 50, 52, 53, 57, 66, 68, 69, 85 101, 137, 138, 177, 197, 235, 286,

289 and SSA document 12  are protected from disclosure under the FOIA's deliberative process

exemption.  As noted above, the deliberative process privilege protects from disclosure

"documents reflecting advisory opinions, recommendations, and deliberations that are part of a process by which [governmental] decisions and policies are formulated."  Klamath, 532 U.S.  at 2.  Indeed, the very purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and avoid public confusion by not exposing facts considered for adopting agency policy when those factors are not the actual reason for the policy's adoption.  Defenders of Wildlife, 311 F. Supp. 2d at 57.  The descriptions of the aforementioned documents clearly establish that these documents promote these objectives.  Accordingly, HHS documents 4, 7-8, 35, 36, 37, 39, 50, 52, 53, 57, 66, 68, 69, 85 101, 137, 138, 177, 197, 235, 286, 289 and SSA document 12 are exempt from disclosure under the deliberative process privilege of Exemption 5.

### (2) THE ATTORNEY-CLIENT PRIVILEGE

The plaintiff contends that "for the vast majority of the withheld documents which [the] defendant has invoked the attorney-client privilege, [the] defendant's Vaughn entries fail to clearly and specifically identify the legal advice sought and given."  Pl.'s Opp'n at 23.  In opposition, the defendant responds that "there is no requirement that an agency specify the advice asked for and provided.  Rather, an agency must show that the withheld information pertains to confidential communications between attorney and client and relates to a legal matter for which the client has sought the attorney's advice."[8]  Def.'s Reply at 14.

The attorney-client "privilege has a proper role to play in exemption five cases . . . ."  In re

---

[8] The defendant has asserted the attorney-client privilege for 118 documents of the 150 documents challenged by the plaintiff.  Def.'s Reply at 14 n. 9.

Lindsey, 158 F.3d 1263, 1269 (D.C. Cir. 1998). Aside from the protections provided by the attorney-client privilege in the private sector, "the privilege also functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector." Id. "Thus, 'when the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, and needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors,' Exemption 5 applies." Id. (quoting Coastal States, 617 F.2d at 863).

To invoke the attorney-client privilege, an agency must show that the document "(1) involves 'confidential communications between an attorney and [his or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" Judicial Watch, Inc. v. U.S. Postal Serv. (Judicial Watch I), 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (quoting Mead Data Cent., Inc. v. U.S. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977)). However, the attorney-client privilege does not permit an agency "to withhold a document merely because it is a communication between the agency and its lawyers." Id. Rather, the agency must show that the information provided to its lawyers was intended to be confidential "and was not known by or disclosed to any third party." Id. (quoting Mead Data, 566 F.2d at 254).

Here, the defendant has identified in its Vaughn index that the challenged documents for which the privilege is asserted consist of confidential attorney-client communications and relate to a legal matter for which the defendant sought professional advice. A Vaughn index must "adequately describe each withheld document, state which exemption the agency claims for each withheld document, and explain the exemption's relevance." Johnson v. Executive Office for

U.S. Attorneys, 310 F.3d 771, 774 (D.C. Cir. 2002). A Vaughn index "must be sufficiently

detailed" so as to permit the FOIA requester and the court to review the applicability of the

claimed FOIA exemptions on a document by document basis. Judicial Watch I, 297 F. Supp. 2d

at 270. In other words, the Vaughn index "must correlate facts in or about each withheld

document with the elements of the [asserted] privilege." Id. at 260. An agency may submit other

materials to supplement its Vaughn index, such as declarations, that aid the determination of

whether the claimed exemptions are properly invoked. Id. at 257. And, the defendant has

provided an affidavit from Robert Eckert, wherein he attests that some material withheld under

Exemption 5 was also protected by the attorney-client privilege "because they contained

confidential communications between agency attorneys and their agency clients for the purpose

of seeking legal advice or rendering legal advice about the transfer of the Medicare appeals

function from [the] SSA to the HHS, the proposed use of [video-conferencing], and various draft

documents, such as draft regulations, draft hearings manuals, draft memoranda of understanding,

drafting talking points, and draft reports to Congress." Def.'s Cross-Mot. Mem., Eckert Decl. ¶

34 (identifying the following HHS documents as withheld under Exemption 5 because such

documents are protected by the attorney-client privilege: 1-2, 4-5, 7-12, 19-36, 38, 40-41, 47-51,

53-60, 62-71, 74-77, 82-86, 88-89, 91, 93, 95-103, 107-108, 111-112, 114-125, 127-129, 132-

144, 146-170, 174-185, 188-209, 211-225, 231-232, 235, 239-240, 243, and 258). In addition,

the defendant has identified the source and recipient of the communications, which is critical to

the Court's assessment of whether the communications are between an attorney and a client.

Here, the defendant has invoked the attorney-client privilege as to documents identified in the

Vaughn index that constitute communications between the defendant, other agencies that are

clients of the defendant, and attorneys in the defendant's General Counsel's office. Accordingly, the Court finds that these disputed documents are protected from disclosure by the attorney-client privilege.[9]

## B.    THE PLAINTIFF'S FEE WAIVER REQUEST

The defendant contends that the plaintiff's fee waiver justification fails to satisfy the first, second, and fourth prongs of the "public interest" fee waiver test. Def.'s Cross-Mot. Mem. at 19-20. Specifically, the defendant asserts that: (1) "[a]s to the first factor, many of the records released by [the] defendant while responsive, do not, in fact, describe federal government activity, but instead are brochures and pamphlets submitted by private parties seeking to do business with the federal government," id. at 21; (2) "as to the second and fourth portions of the fee waiver test, as defendant's May 15, 2006 letter pointed out, a substantial portion of the released records - - over 90% of what had been released - - consists of materials already readily available on the Internet or in the Federal Register," id. at 22; and (3) "some of the responsive records, though technically responsive to [the] plaintiff's request, contained no substantive connection to the overall subject of [the] plaintiff's request, and instead dealt with mere administrative matters of no significance to the underlying subject of [the] plaintiff's request," id. at 23. In opposition, the plaintiff responds that: (1) "it has met its burden of identifying with

---

[9] The plaintiff challenges the withholding of several of these responsive documents on the grounds that the documents contain no dates. Specifically, the plaintiff challenges on this basis the defendant's withholding of HHS documents 137-142, 147, 150-157, 160, 169, 182-185, 197, 201, 204-205, 209, 219, 236, 253, 256-257, 259-263, 266-268, 27-273, 287, 289, and SSA document 4. This challenge is without merit. Although the documents are undated, the defendant has adequately described each of these withheld documents, stated that they are exempted from disclosure by the attorney-client privilege, and explained the exemption's relevance. Further, the defendant has indicated that the documents contain confidential client-communications under circumstances where the defendant has sought legal advice from its agency attorneys about several draft documents and the use of video-conferencing to conduct the Medicare appeal hearings.

reasonable specificity the operations or activities of HHS that are implicated by its FOIA

request," Pl.'s Opp'n. at 29; (2) "the requested items clearly and directly concern activities and

operations undertaken by the government in developing the new [video-conferencing] hearing

system," id. at 30; (3) its " FOIA request[] . . . sought meaningful information, which was not

readily accessible to the public, clarifying how the government had operated to develop [video-

conferencing administrative law judge] hearings," id.; (4) it " specified in its fee waiver request

that it would 'use the information requested concerning [video-conferencing] hearings to further

the interests of Medicare beneficiaries and their advocates who will be required to use the new

hearing process,'" id. at 30; (5) "the request identifies specific ways in which the organization

'educates and advocates on behalf of Medicare beneficiaries nationwide,'" id. at 31; and (6) "the

information's contribution to public understanding would be significant," id.

      Generally, the FOIA requires those who make document requests to pay for the search

and duplication costs for the disclosed documents. Larson v. CIA, 843 F.2d 1481, 1482 (D.C.

Cir.1988) (citing Kissinger v. Reporters Comm. for Freedom of the Press, 445 U.S. 136, 153

(1980)). However, in certain situations those costs may be reduced or waived completely.

Judicial Watch, Inc. v. U.S. Dep't of Justice, 185 F. Supp. 2d 54, 58 (D.D.C. 2002); see 5 U.S.C.

§ 552(a)(4)(A)(ii)(II) (authorizing fee reductions for requests from educational or noncommercial

scientific institutions involved in scholarly or scientific research, or from representatives of the

news media); 5 U.S.C. § 552(a)(4)(A)(iii) (authorizing fee waivers or reductions for requests that

are in the public interest). The public interest fee waiver provision of the FOIA provides that

"[d]ocuments shall be furnished without any charge or at a charge reduced below the fees

established [by the FOIA] if disclosure of the information is in the public interest because it is

likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

The burden of satisfying the "public interest standard" is on the requester.  Larson, 843 F.2d at 1483 (citing McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1284-85 (9th Cir. 1987)). Courts employ a two part test to determine whether the requester has satisfied this burden. Id.  First, the requester must demonstrate "that the disclosure of the information [is] 'likely to contribute significantly to public understanding of the operations or activities of the government.'" Id. (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).   Second, the requester must establish that it does "not have a commercial interest in the disclosure of the information sought." Id. (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).

The defendant has promulgated a regulation setting out the four criteria it uses to determine whether a party making a FOIA request has satisfied the public interest fee waiver or reduction provision of the statute. See 45 C.F.R. § 5.45(b) (2000). Under this regulation, "[t]he disclosure passes the [public interest] test only if it furthers the specific public interest of being likely to contribute significantly to public understanding of government operations or activities, regardless of any other public interest it may further." Id.

> In analyzing this question, [the defendant] consider[s] the following factors:
> (1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?
> (2) Would disclosure of the records reveal any meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?
> (3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons? . . . .
> (4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

Id.  Since the defendant is challenging only the plaintiff's satisfaction of factors one, two, and

four of its test for assessing a fee waiver request, the Court will address only those factors.

In reviewing the defendant's decision on the plaintiff fee waiver request, the Court is

limited to the administrative record that was before the agency at the time of its decision.  5

U.S.C. § 552 (a)(4)(A)(vii).  The Court agrees with the plaintiff that this record shows that it has

satisfied its burden of establishing that it is entitled to a fee waiver under 5 U.S.C. § 552

(a)(4)(A)(iii).

The most pertinent information that was part of the administrative record before the

agency at the time of its final fee waiver denial were the plaintiff's letter of October 31, 2005,

which outlined its claim that it satisfies the applicable standard for a fee waiver,  and the

defendant's letter of May 15, 2006, upholding its initial denial of the fee waiver.[10]  Upon review

of the administrative record, the Court is convinced that the plaintiff has satisfied the first prong

of 45 C.F.R. § 5.45(b)(1) by demonstrating that the subject of the requested records concerns the

"operations or activities of the Federal government."  45 C.F.R. § 5.45(b)(1).  The plaintiff's

request seeks "[a]ll articles, reports, studies, memoranda, letters and writings of any kind

concerning videoconferencing (VTC) that have been or are being reviewed and/or used in

designing and/or establishing the Medicare administrative law judge hearings by VTC . . . ."

Def.'s Cross-Mot., Eckert Decl., Ex. 1 (Hart Aug. 25, 2005 Letter). The request is specific and

the information sought concerns activities and operations undertaken by the government in

---

[10] The plaintiff filed an administrative appeal of the defendant's fee waiver denial in a letter dated February 17, 2006.  Def.'s Cross-Mot. Mem., Eckert Decl. ¶ 12 (inaccurately stating that the letter is dated February 21, rather than February 17), Ex. 7 (February 17, 2006 Letter).  This letter restated the plaintiff's grounds for a fee waiver expressed previously in its October 31, 2005 letter.

developing the new video-conferencing hearing system.

This conclusion is not altered by the fact that some of the released documents were brochures and pamphlets submitted by private parties seeking to do business with the federal government.  Although the defendant takes the opposing position, it acknowledges that the brochures and pamphlets submitted to it from outside companies were reviewed by the agency in its consideration of whether to implement video-conferencing.  Def.'s Cross-Mot., Eckert Decl., Ex.11 (Letter from Christian Pearson, Deputy Assistant Secretary for Public Affairs (Media), to Sally Hart, Center for Medicare Advocacy, Inc., dated May 15, 2006) ("Pearson May 15, 2006 Letter") at 3.  In fact, the defendant admits that such documents "come[] from the companies soliciting business with the federal government or materials downloaded from the [i]nternet in connection with the [agency's] review of [whether it should implement video-conferencing]."  Id. The material can therefore provide insight on the options and factors under consideration by the agency as it designed and implemented the new hearings system.  Accordingly, they concern the activities of the federal government.

The plaintiff has also satisfied the second and fourth factors of the defendant's fee waiver test.  Part of the reason the defendant denied the plaintiff's fee waiver request was based on the position that the plaintiff did not "demonstrate[] how [its] proposed dissemination of material already in the public domain would reveal any meaningful information about government activities that is not already public knowledge."  Def.'s Cross-Mot. Mem. at 2.  Specifically, the defendant asserted that the plaintiff did not "explain[] in any matter how release to [the plaintiff] of publicly available information would add anything to the public understanding, nor show[] how [its] redistribution of that same information would contribute to that understanding in a

significant way." Id. The Court disagrees with the defendant's assessment.

The plaintiff's fee waiver request should have been evaluated based on the potential

contribution the requested information would have on the public's understanding, and not on the

fact that some of the documents were publicly available. "[A] fee waiver request should be

evaluated based on the face of the request and the reasons given by the requestor in support of the

waiver, 'not on the possibility that the records may ultimately be determined to be exempt from

disclosure.'" Judicial Watch, Inc. v. U.S. Dep't of Transp., 2005 WL 1606915, *4 (D.D.C. 2005)

(citing Judicial Watch, Inc. v. U.S. Dep't of Energy, 310 F. Supp. 2d 271, 295 (D.D.C. 2004)

(quoting Carney v. U.S. Dep't of Justice, 19 F.3d 807, 815 (2d Cir. 1994) (internal quotation

marks omitted).  Similarly, "[t]he mere fact that material is in the public domain does not justify

denying a fee waiver; only material that has met a threshold level of public dissemination will not

further 'public understanding.'" Prison Legal News v. Lappin, 436 F. Supp. 2d 17, 24 (D.D.C.

2006) (quoting Campbell v. Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1998)).  Although the

defendant contends that some of the documents released to the plaintiff consist of published

regulations, a report to Congress, a statute, and a Government Accountability Report, which are

readily accessible to the public through the internet,  Def.'s Cross-Mot. Mem., Ex. 11 (Pearson

May 15, 2006 Letter), "[t]here is a significant difference between locating the requested

information . . . on the internet, as opposed to having access to the information in a single

document." Prison Legal News, 436 F. Supp. 2d at 25. Since the plaintiff prepares written

material and provides training for Medicare beneficiaries, advocates and attorneys, comments on

proposed Medicare legislation and regulations, represents beneficiaries in the administrative

appeals process, and brings individual and class action lawsuits on behalf of beneficiaries, Pl.'s

Mot., Ex. C (Hart October 31, 2005 Letter) & Def.'s Cross-Mot. Mem., Ex. 3 (Hart October 31,

2005 Letter), the plaintiff can make the information more accessible to members of the public

who cannot readily locate a particular regulation, provision or report on a government website.

In any event, "proof of the ability to disseminate the released information to a broad cross-section

of the public is not required." Judicial Watch, Inc. v. Department of Justice, 365 F.3d 1108,

1126 (D.C. Cir. 2004).

The plaintiff has also established that it does not have a commercial interest in the

disclosure of the disclosed information. The plaintiff noted in its fee waiver request that it is a

well known not-for profit-organization that educates and advocates on behalf of Medicare

beneficiaries nationwide. Pl.'s Mot., Ex. C (Hart October 31, 2005 Letter); Def.'s Cross-Mot.

Mem., Eckert Decl., Ex. 3 (Hart October 31, 2005 Letter). "When disclosure 'is in the public

interest because it is likely to contribute significantly to public understanding of the operations or

activities of the government and is not primarily in the commercial interest of the requester,' the

agency must reduce fees further or eliminate them altogether." Hall v. C.I.A., 437 F.3d 94, 97

(D.C. Cir. 2006) (citing § 552(a)(4)(A)(iii)). Since the plaintiff's request demonstrates with

reasonable specificity that disclosure was in the public interest and not for a commercial interest

of the plaintiff, the defendant should have granted the plaintiff's fee waiver request.

Accordingly, the defendant's denial of the plaintiff's public interest fee waiver request is

reversed and its summary judgment motion on this issue is denied.

### IV. CONCLUSION

For the foregoing reasons, the plaintiff's motion for a permanent injunction is denied in

part and granted in part and the defendant's cross-motion for summary judgment is also denied in

part and granted in part.  Specifically, the plaintiff's motion for permanent injunction is granted

as to it's fee waiver request and denied as to its request for a permanent injunction requiring the

defendant to produce all the challenged documents.  On the other hand, the defendant's cross-

motion for summary judgment is granted as to all the challenged documents that were withheld

pursuant to Exemption 5 of the FOIA, 5 U.S.C. § 552(b)(5), and denied as to its denial of the

plaintiff's request for a public interest  fee waiver.[11]

       **SO ORDERED.**

                      _____

                      REGGIE B. WALTON
                      United States District Judge

---

[11] An amended order consistent with this Memorandum Opinion is being issued contemporaneously herewith.